**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

In re MoneyGram International, Inc.
Securities Litigation

Civ. No. 08-883 (DSD/JJG)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL SUPPPLEMENTAL INITIAL DISCLOSURES AND DISCOVERY RESPONSES**

## INTRODUCTION

Lead Plaintiff Oklahoma Teachers Retirement System ("OTRS") has demonstrated a repeated practice of basing class action securities fraud complaint allegations on statements from purported "confidential witnesses," and then burying their names among hundreds listed in initial disclosures and interrogatory responses in order to mask their identities. Though that exact practice, including OTRS's argument that such information is privileged and/or work product, was recently rejected by the Northern District of California in the *In re Connetics Corporation Securities Litigation* case, OTRS has done so again here and has now forced MoneyGram International, Inc. and the individual Defendants[1] to bring this motion. Here, as it was compelled to do in the *Connetics* case, OTRS must supplement its discovery responses to identify the confidential witnesses upon whom it has so heavily relied in this matter and describe what information they allegedly know about this case.

---

[1] All Defendants are collectively referred to herein as "MoneyGram" simply for ease of reference.

In addition, OTRS must supplement its initial disclosures and responses to MoneyGram's Interrogatories to provide a description of *what* specific information is known by each individual/entity who OTRS described as possessing relevant knowledge. OTRS listed more than 100 entities and individuals in its initial disclosures and interrogatory responses, but instead of providing any meaningful description of what information each may possess, it offered nothing more than a copy and paste summary that each "has knowledge of the matters set forth in the Complaint (as well as matters that may not be known by Lead Plaintiff until discovery is completed) regarding, but not limited to, MoneyGram's conduct, his personal conduct, the conduct of MoneyGram's officers and directors, the conduct of its present and former employees, and the Company's involvement and dealings with third parties." OTRS's game of hide the ball runs counter to the purpose of the discovery rules. As a result, MoneyGram respectfully requests that the Court grant this motion to compel.

## BACKGROUND

On October 3, 2008, OTRS filed a Consolidated Class Action Complaint against MoneyGram, alleging securities fraud under federal securities laws. (Compl. (ECF Doc. No. 70.)) The Complaint relies extensively on the allegations of six so-called "confidential witnesses." (*See* Compl. ¶¶ 333–88.) In fact, apart from MoneyGram's own public filings and press releases, OTRS relied almost exclusively on the confidential witnesses in the Complaint to allege securities fraud. The Complaint attributes many direct and quoted statements to these confidential witnesses. (*See*, *e.g.*, Compl. ¶¶ 347, 350, 355, 365, 368, 372, 374, 380, 385, 388.)

MoneyGram moved to dismiss the Complaint on the grounds that it failed to meet the PSLRA's heightened pleading standards and otherwise failed to state a claim for securities fraud. (ECF Doc. No. 74.) The Court denied MoneyGram's motion on May 20, 2009, relying in part on the allegations of these purported confidential witnesses. (*See*, *e.g.*, Order at 46–47, 64–65 (ECF Doc. No. 89.)) With the automatic discovery stay under the PSLRA lifted, the Parties participated in a Rule 26(f) Conference, exchanged initial disclosures, and served and responded to discovery requests.

## I. OTRS REFUSED TO IDENFITY CONFIDENTIAL WITNESSES.

MoneyGram served a series of interrogatories on OTRS on July 2, 2009, including Interrogatory No. 3 that specifically directed OTRS to "[i]dentify each confidential source referred to in the Complaint." (Affidavit of Bret A. Puls ("Puls Aff.") ¶ 3, Ex. B.) OTRS objected on the basis of attorney work product and referred MoneyGram back to its initial disclosures, which provided no information from which MoneyGram can determine who the confidential witnesses are among a list of more than 100 names. (*Id.*) Interrogatory No. 4 further requested: "[w]ith respect to each confidential source referred to in the Complaint, identify all facts provided to you by the confidential source." (*Id.*) OTRS objected on the basis of attorney work product and then regurgitated allegations from the Complaint without describing the identity of the confidential witness or providing any information that source has that may not have appeared in the Complaint. (*Id.*)

## II. OTRS HAS FAILED TO PROVIDE ANY MEANINGFUL DESCRIPTION OF WHAT PARTICULAR INFORMATION IS KNOWN BY THE WITNESSES OTRS OFFERS AS RELEVANT TO THIS MATTER.

OTRS's initial disclosures, served on July 10, 2009, identify over 100 individuals and entities OTRS claims are likely to have discoverable information OTRS may use to support its claims, approximately seventy of which are MoneyGram's current and former employees. (Puls Aff. Ex. A.)  OTRS failed, however, to describe the particular knowledge each individual and entity has or does not have. Instead, OTRS copied and pasted the identical, rote, and meaningless, description for each individual and entity:

> . . . As such, he has knowledge of the matters set forth in the Complaint (as well as matters that may not be known by Lead Plaintiff until discovery is completed) regarding, but not limited to, MoneyGram's conduct, his personal conduct, the conduct of MoneyGram's officers and directors, the conduct of its present and former employees, and the Company's involvement and dealings with third parties.

(*Id.*)

Similarly, Defendants' Interrogatory No. 1 asked OTRS to "[i]dentify each person known or believed by you to have personal knowledge of any of the facts at issue or involved in the captioned lawsuit or any of the events underlying the allegations in the Complaint and for each separately state the facts and observations within each such person's knowledge."  (Puls Aff. Ex. B.)  OTRS objected to this Interrogatory on the basis that it seeks information protected by the attorney-client and/or work product privileges, as well as a number of other objections.  (*Id.*)  OTRS then again proceeded to copy and paste the entirety of its initial disclosures in response to Interrogatory No. 1. (*Id.*)  Without additional detail, MoneyGram would potentially be forced to take as many

4

as 100 depositions in order to discover which individuals actually have knowledge regarding OTRS's specific claims and what that specific knowledge may be. Without doing so, MoneyGram would not be able to prepare its defense.

### III. MONEYGRAM'S ATTEMPTS TO RESOLVE THE DISCOVERY DISPUTE.

Counsel for MoneyGram sent OTRS's counsel a letter on August 10, 2009, informing OTRS that MoneyGram believes its initial disclosures and interrogatory responses are deficient and the bases for MoneyGram's position. (Puls Aff. Ex. C.) Thereafter, counsel engaged in a telephone meet-and-confer conference on or about August 13, 2009. (Puls Aff. ¶ 5.) OTRS outright refused to identify its purported confidential witnesses or more fully describe what information each purportedly knows. (*Id*.) During the call, OTRS's counsel did not provide any legal basis or authority for their position that MoneyGram's requests seek privileged information. (*Id*.) With respect to the content of the description of information held by the more than 100 witnesses disclosed by OTRS, counsel for OTRS initially indicated during the August 13, 2009 call that OTRS would revisit the issue and potentially serve supplemental responses. (Puls Aff. ¶ 6.) After the passage of nearly a month with no supplementation, counsel for MoneyGram wrote to confirm that MoneyGram intended to move to compel. (Puls Aff. ¶ 6, Ex. D.) Thus, despite efforts, counsel were not able to resolve the dispute. MoneyGram consequently brings this Motion.

## **ARGUMENT**

Federal Rule of Civil Procedure 37(a)(3)(A) authorizes a motion to compel initial disclosures: "If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Evasive or incomplete disclosures are treated as a failure to disclose under Rule 37(a)(4). *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, No. 08-0721, 2009 WL 2514082, at *3 (D.D.C. Aug. 18, 2009). Rule 37(a)(3)(B) similarly authorizes a motion to compel full responses to interrogatories. Here, OTRS has completely failed to provide meaningful initial disclosures and meaningful responses to Defendants' Interrogatories Nos. 1, 3, and 4. As a result, Defendants have been forced to compel full disclosures under Rule 37.

## I.   LEGAL STANDARDS.

### A.   Discovery Standard under Federal Rule of Civil Procedure 26.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including . . . the identity and location of persons having knowledge of any discoverable matter." Discovery tools "serve as devices to narrow and clarify issues, to unearth facts or information pertaining to the existence and whereabouts of relevant facts, and to determine the adverse party's version of relevant facts and the purpose which they can serve." *Mead Corp. v. Riverwood Natural Resources Corp.*, 145 F.R.D. 512, 516 (D. Minn. 1992) (cited in *In re Select Comfort Corp. Sec. Litig.*, No. 99-

884, Slip Op. at 4–5 (D. Minn. Nov. 13, 2001)).[2]  Indeed, the purpose of the discovery rules is to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).

      **B.**      **Standard Governing the Attorney Work Product Doctrine.**

The attorney work product doctrine was established in *Hickman v. Taylor*, 329 U.S. 495 (1947) and is now expressed in Federal Rule of Civil Procedure 26(b)(3).  As to raw information, a party is entitled to discovery upon a showing of substantial need and an inability to secure the substantial equivalent through alternate means without undue hardship.  Fed.R.Civ.P. 26(b)(3); *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997). Rule 26(b)(3) provides special protection for an attorney's work product containing mental impressions, conclusions, opinions, or theories. *Pittman*, 129 F.3d at 988.  The party asserting the privilege bears the burden of demonstrating its applicability. *Bouschor v. United States*, 316 F.2d 451, 456 (8th Cir. 1963).

**II.**      **OTRS MUST DISCLOSE THE IDENTITIES OF THE CONFIDENTIAL WITNESSES AND DISCLOSE THE INFORMATION THEY ALLEGEDLY KNOW.**

Interrogatory No. 3 requires OTRS to identify the confidential witnesses referred to and relied upon in the Complaint.  Interrogatory No. 4 requires disclosure of the facts within the witnesses' knowledge that OTRS is aware of (even if OTRS did not choose to include that information in the Complaint).  Nothing about this information is privileged or work product, and it is of obvious high relevance to the claims and defenses in this

---

[2] All unpublished decisions are attached to the Affidavit of Bret A. Puls as Exhibit E.

case. Yet OTRS objected on the basis of privilege and refers MoneyGram back to its initial disclosures and paragraphs of the Complaint. OTRS has, itself, waged this battle and lost before in *In re Connetics Corporation Securities Litigation*, No. 07-02940, 2009 WL 1126508 (N.D. Cal. April 27, 2009). It should full well know that its objections have no basis.

### A. The Identity of Confidential Witnesses Is Not Work Product.

Plaintiffs in securities fraud cases routinely rely on confidential witnesses in their complaints, and some argue that they should not be forced to reveal the identity of those witnesses because it would reveal counsel's mental impressions. But as OTRS itself learned when it made the identical argument in *In re Connetics Corporation Securities Litigation*, the identities of confidential witnesses in a case like this are not protectable because the issue "is not *if* the [confidential witnesses'] identities will ever be discovered, but rather *when* they will be discovered." 2009 WL 1126508, at *1. In the *Connetics* case, and as it has now done here, OTRS included the identities of its confidential witnesses among 200 individuals in its initial disclosures, many of which were defendant's current and former employees. *Id.* OTRS refused to identify the confidential witnesses within that list under a claim of work product. The *Connetics* court flatly rejected OTRS's argument and found the information is not work product:

> [C]ounsel for plaintiff have made no secret of their mental impressions. They reveal which witness statements they evaluated as being important by attributing statements to particular witnesses in the SAC. . . . Plaintiff does not argue that revealing this information at this stage would prejudice it by affecting its trial strategy. While plaintiff is correct that defendants will eventually be able to determine the identities of the confidential witnesses

8

>from among the 88 disclosed names, they do not explain the benefit of proceeding in this inefficient way.

*Id.* at *2. The court's decision in *Connetics* is consistent with precedent in this district. *See In re Select Comfort Corp. Sec. Litig.*, No. 99-884, Slip Op. at 7–9 (Nov. 13, 2001) (rejecting plaintiffs' argument that the identity of "former company employees" relied on is work product and compelling disclosure of their identities).[3]

This Court should similarly reject OTRS's argument for the same reasons. OTRS would not be required to reveal legal strategy it has not already revealed. Just as in *Connetics*, OTRS has included the witnesses' statements in the Complaint and has buried the witnesses' names in the long list of witnesses provided in its initial disclosures. *See also Harmonic*, 245 F.R.D. at 428–29 (identities not work product where plaintiff included witnesses within list of seventy-seven names in initial disclosures and included witnesses' statements in complaint). MoneyGram "already knows the nature of [OTRS's] claim and the mere identification of persons who know facts bearing on that

---

[3] In fact, the weight of federal authority agrees with the Northern District of California's decision in *Connetics*. *See In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424, 427 (N.D. Cal. Sept. 13, 2007); *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 61 (E.D.N.Y. 2007); *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 631, 635-36 (N.D. Ga. 2002); *Am. Floral*, 107 F.R.D. at 261; *Cason-Merenda v. Detroit Med. Ctr.*, No. 06-15601, 2008 WL 659647, at *4-5 (E.D. Mich. Mar. 7, 2008); *In re Faro Techs. Sec. Litig.*, No. 05-1810, 2008 WL 205318, at *2 (M.D. Fla. Jan. 23, 2008); *S. Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 06-1818, 2007 WL 4557100, at *2-3 (N.D. Ill. Dec. 21, 2007); *Brody v. Zix Corp.*, No. 04-1931, 2007 WL 1544638, at *1-2 (N.D. Tex. May 25, 2007); *Mazur v. Lampert*, No. 04-61159, 2007 WL 917271, at *4 (S.D. Fla. Mar. 25, 2007); *Norflet v. John Hancock Fin. Servs., Inc.*, No. 04-1099, 2007 WL 433332, at *2-3 (D. Conn. Feb. 5, 2007); *Thompson v. Jiffy Lube Int'l, Inc.*, No. 05-1203, 2006 WL 2037395, at *2 (D. Kan. July 18, 2006); *Miller v. Ventro Corp.*, No. 01-01287, 2004 WL 868202, at *1-2 (N.D. Cal. April 21, 2004); *In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 1999 WL 354527, at *2 (E.D. Pa. May 26, 1999).

claim tells [MoneyGram] nothing new about the mental processes of [OTRS's] lawyers." *Am. Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n*, 107 F.R.D. 258, 261 (N.D. Ill. 1985).[4]

OTRS can point to no strategic or tactical position that will be compromised by its disclosure of their identities at this stage, particularly given OTRS' extensive reliance on the witnesses to support its allegations. *See Harmonic*, 245 F.R.D. at 427–28 ("the issue is not *if* the witnesses will ever be discovered, but *when*"). Thus, the policies which underpin the work product doctrine simply are not implicated here. *Hickman*, 329 U.S. at 510–11.

The only effect of not disclosing the identities is to force MoneyGram to expend resources on interviewing and taking the depositions of as many as 100 witnesses in order to obtain the information. "[R]equiring such a dilatory exercise runs counter to the 'just, speedy, and inexpensive determination' directed by the Federal Rules of Civil Procedure.'" *Harmonic*, 245 F.R.D. at 428. If OTRS is not required to disclose their identities, MoneyGram may be forced to interview and depose dozens of current and former employees to determine who they are. Under these circumstances, MoneyGram has demonstrated both substantial need and undue hardship that does not run afoul of the

---

[4] Even if the Court finds that the identity of confidential witnesses is work product under the circumstances of this case, it deserves only minimal protection that is far outweighed by MoneyGram's substantial need for the information. OTRS relies extensively on the confidential witnesses in the Complaint. In fact, apart from MoneyGram's own public filings, there is little else OTRS relies on besides the confidential witnesses. The Court relied in part on the confidential witness allegations in denying MoneyGram's motion to dismiss the Complaint. (*See*, *e.g.*, Order at 46–47, 64–65 (ECF Doc. No. 89.))

work product doctrine's intended protection. *See In re St. Paul Travelers Sec. Litig. II*, No. 04-4697, 2007 WL 1424673, at *1 (D. Minn. May 10, 2007) (holding that identities must be disclosed if plaintiffs decided to rely on witnesses in the future);[5] *see also In re Marsh & McLellan Cos. Sec. Litig.*, No. 04-8144, 2008 WL 2941215, at *3–4 (S.D.N.Y. July 30, 2008) (substantial need and undue burden outweighed minimal work product protection); *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, No. 01-20418, 2005 WL 1459555, at *4–5 (N.D. Cal. Jun. 21, 2005) (same); *Priceline.com Inc. Sec. Litig.*, No. 00-01884, 2005 WL 1366450, at *4 (D. Conn. Jun. 7, 2005) (same); *Miller*, 2004 WL 868202, at *2 (same).

>  B. **The Facts Known by the Confidential Witnesses Is Not Work Product.**

OTRS has no basis to withhold the facts it knows to be within each witness's knowledge. *See Faro*, 2008 WL 205318, at *1–2 (compelling response to interrogatory over work product objection that asked plaintiff to identify witnesses relied on in complaint and a detailed summary of that person's knowledge); *Cason-Merenda*, 2008 WL 659647, at *1–4 (compelling response to interrogatory over work product objection that asked plaintiff to identify each person who participated in investigation of the facts

---

[5] While OTRS may attempt to rely on *St. Paul Travelers*, that case support's MoneyGram's position. Magistrate Judge Noel found that the identity of confidential witnesses is work product. *Id.* at *1. On appeal, Judge Tunheim held that Magistrate Judge Noel's decision need not be reversed under the highly deferential "contrary to law" standard, due the existence of federal cases going both ways on the issue. *Id.* Thus, Judge Tunheim did not decide the issue. In any event, Judge Tunheim held that the identities must be disclosed if plaintiff decided to rely on them. *Id.*

underlying the complaint and all facts and evidence collected). Therefore, the Court should overrule OTRS's work product objections.

### III. OTRS SHOULD BE REQUIRED TO PROVIDE MEANINGFUL DESCRIPTIONS OF WITNESS KNOWLEDGE IN ITS INITIAL DISCLOSURES AND RESPONSE TO INTERROGATORY NO. 1.

In its initial disclosures and its response to Interrogatory No. 1, OTRS identifies over 100 entities and individuals as witnesses with knowledge relevant to this case, but utterly fails to describe *what* information each possesses. OTRS's evasive, repeated, and useless description for each entity or person actively prevents MoneyGram from differentiating among the potential witnesses listed and precludes MoneyGram from focusing its discovery efforts in any meaningful way. OTRS's disclosures are a classic case of hide the ball, the very situation Rule 26(a) was implemented to prevent.

A "major purpose" of Rule 26(a) "is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information, and the rule should be applied in a manner to achieve those objectives." Fed. R. Civ. P. 26(a), Advisory Committee's Note (1993 amendments). The 1993 Advisory Committee Notes make it clear that the purpose of these disclosures is to "assist other parties in deciding which depositions will actually be needed." *Id.*; *Guantanamera Cigar Co.*, 2009 WL 2514082, at *3. Rule 26(g) requires that all signed disclosures be based on "belief formed after a reasonable inquiry" and be "complete and correct as of the time [they] are made." Fed. R. Civ. P. 26(g)(1).

Rule 26(a)(1) requires, in particular, disclosure of "the subjects of the information" possessed by each individual identified. "[T]he Rule 26(a)(1)(A) disclosure

should provide enough information that would allow the opposing party to help focus the discovery that is needed and to determine whether a deposition of a particular person identified as a potential witness might be necessary." *Lipari v. U.S. Bankcorp, N.A.*, No. 07-2146, 2008 WL 2874373, at *2 (D. Kan. July 22, 2008) (finding initial disclosures inadequate that listed general topics such as "antitrust" and "FBI");[6] *see also Sender v. Mann*, 225 F.R.D. 645, 650–51 (D. Colo. 2004) (holding that disclosures should give opposing party more than "a laundry list of undifferentiated witnesses" and finding disclosures deficient where plaintiff identified brokers and investors as "having knowledge regarding the sale of promissory notes and the amounts owed to them pursuant to such notes" or in some instances, having knowledge of "other schemes attempted or contemplated by [Defendants]").

Likewise, "discovery, via Interrogatories, [] serve[s] a proper function in avoiding unfruitful depositions, in inexpensively narrowing the areas of discovery, in minimizing delay, and in narrowing the issues for Trial." *In re Potash Antitrust Litig.*, 161 F.R.D. 405, 409 (D. Minn. 1995). Interrogatories are superior "in effectively ferreting out information that could be ascertained by the more invasive and costly means of a deposition—at least as a classic instrument of first-wave discovery." *Id*. OTRS's failure without justification to adequately respond to MoneyGram's Interrogatories runs counter to the very purpose Interrogatories serve.

---

[6] Compliance with this requirement is not excused because most of the identified individuals "come from the defendants." *Id*. at *3.

Defendants' Interrogatory No. 1 expressly requested OTRS to identify each person known to have information relevant to the facts at issue in this litigation and the allegations in the Complaint, as well as what facts are within each person's knowledge. OTRS objected on a number of bases, including the attorney work product and attorney-client privileges. Then, rather than provide the required response, OTRS simply copied its inadequate initial disclosures, which provide no more than a repeated generalized and vague description of each person's knowledge.

"Interrogatories seeking information as to the persons with information that substantiates a plaintiff's claim are common, routine requests." *Select Comfort Corp.*, Slip Op. at 5.  Indeed, MoneyGram simply seeks to discover all relevant facts underlying the allegations in the Complaint—the most basic of information. Interrogatory No. 1 is directly in line with the purpose of interrogatories, which is to avoid unnecessary depositions and to narrow the areas of discovery.

*Tinley v. Poly-Triplex Techs., Inc.*, No. 07-01136, 2008 WL 732590 (D. Colo. Mar. 18, 2008) involved a highly similar request and response.  Plaintiff requested more specific information regarding the individuals listed in defendant's initial disclosures. *Id*. at *2.  In defendants' response, the summary of the information possessed by the individuals listed was "often couched in generalizations such as, '. . . has information concerning certain matters alleged in the pleadings, including Tinley's business practices." *Id*. The court found defendants' response to be inadequate:

> The plaintiff is entitled to a more complete factual summary of the individual's alleged knowledge about the issues relevant to this case and the basis for such knowledge.  The plaintiff is entitled to enough basic

> information to allow him to determine, for instance, why the individual is placed on the defendants' list of initial disclosure in the first instance. If the defendants more fully describe the information possessed by the person listed, the plaintiff can more readily cull his list of necessary potential interviews or depositions and therefore save time and expense in trial preparation. Given that the defendants chose to include the person in their initial disclosures, the defendants are already knowledgeable about, at least, the general nature of the prospective witness's potential testimonial knowledge.

*Id.* As a result, the court ordered defendants to "describe with specificity which matters alleged in the pleadings about which the person has information and how those matters relate to the case, to the parties, or to potential admissible evidence." *Id.* at *3. The Court should similarly order OTRS to provide this level of detail.

OTRS's objection based on privilege does not prevent the Court from compelling an adequate response. In *In re Select Comfort Corporation Securities Litigation*, defendants propounded the identical interrogatory. Slip Op. at 3. Like OTRS, plaintiffs argued that the attorney work product doctrine protected them from having to disclose the facts known by each person identified. *Id.* at 5. The Court rejected plaintiffs' argument, because a party cannot "avoid disclosing basic information such as that sought by Interrogatory No. 2 by voluntarily declaring that this information was gathered by its attorneys." *Id.* at 6. "Plaintiff[] may not shield, as work-product, information which underlies [its] allegations and claims." *Id.* (citing *In re Grand Casinos, Inc. Sec. Litig.*, 181 F.R.D. 615, 622 (D. Minn. 1998); *Marvin Lumber v. PPG Indus. Inc.*, 168 F.R.D. 641, 646 (D. Minn. 1996) (plaintiffs may not shield the results of their investigation merely because it was performed by their attorneys)). Like the courts in *Select Comfort*

15

and *Tinley*, the Court should reject OTRS's objections and order it to provide a detailed and adequate response to Interrogatory No. 1.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Compel Supplemental Initial Disclosures and Discovery Responses.

Dated:  September 22, 2009        **OPPENHEIMER WOLFF & DONNELLY LLP**

By:  s/ Meghan M. Anzelc
   Michael J. Bleck              # 8862
   Bret A. Puls                  # 305157
   Meghan M. Anzelc              #386534
   Dennis Hansen                 #386734
   Mark Schneebeck               #348922

3300 Plaza VII Building
45 South Seventh Street
Minneapolis, MN  55402
Telephone:  (612) 607-7000
Facsimile:  (612) 607-7100

**ATTORNEYS FOR DEFENDANTS**