UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re MoneyGram International, Inc.            Civ. No. 08-883 (DSD/JJG)
Securities Litigation,

**O R D E R**

JEANNE J. GRAHAM, United States Magistrate Judge

This matter came before the undersigned on October 6, 2009 on Lead Plaintiff's Motion to Determine Sufficiency of Defendants' Answers to First Set of Requests for Admission and Interrogatories (Doc. No. 111) and Defendants' Motion to Compel Supplemental Initial Disclosures and Discovery Responses (Doc. No. 119). Bradley Beckworth, Jeffrey Angelovich, Brad Seidel, and Jeffrey Bores appeared on behalf of Lead Plaintiff Oklahoma Teachers' Retirement System. Bret Puls and Meghan Anzelc appeared on behalf of Defendants MoneyGram International, Inc., Philip Milne, David Parrin, Jean Benson, Douglas Rock, Monte Ford, Donald Kiernan, Othon Ruiz Montemayor, and Albert Teplin. For the reasons set forth below, the motions are granted in part and denied in part.

**I.    BACKGROUND**

This case is a putative class action brought under the Private Securities Litigation Reform Act. The Lead Plaintiff and proposed class representative is Oklahoma Teachers' Retirement System ("OTRS"). Defendant MoneyGram International, Inc. ("MoneyGram") is a publicly-traded company, and the individual Defendants are current and former corporate officers of MoneyGram. On behalf of a group of investors, OTRS alleges that Defendants publicly

disseminated false and misleading statements which induced investors to purchase MoneyGram securities at artificially inflated prices. After MoneyGram announced more than one billion dollars in losses in January 2008, its stock price crashed and has never recovered.

OTRS brought suit against Defendants in March 2008. The case was consolidated with several others in July 2008, and OTRS was named Lead Plaintiff. OTRS subsequently filed a consolidated Amended Complaint, which Defendants moved to dismiss. After that motion was largely denied, OTRS filed a motion for class certification. That motion is scheduled to be heard by the District Court on February 5, 2010.

## II.   OTRS'S MOTION

In preparation for its class certification motion, OTRS served eighteen requests for admission and thirteen interrogatories relating to certification issues. The requests for admission sought admissions or denials of statements such as "Admit that the Proposed Class is so numerous that joinder of all Class Members would be impracticable" and "Admit that there is at least one question of law common to the Proposed Class." (Beckworth Decl. Ex. A at 2-3, Sept. 8, 2009.) The thirteen interrogatories corresponded to the requests for admission. For each request denied, OTRS asked Defendants to provide "the basis for your contention" that the statement was not true. (*E.g.*, *id.* at 3.)

Defendants objected to Requests for Admission 2-13 and 15-18 as "improper and requir[ing] no response under Fed. R. Civ. P. 36 because [they] seek[] affirmation of a legal conclusion and/or a legal determination within the sole province of the court. To the extent a response is required: denied." (*E.g.*, *id.*) Defendants objected to the interrogatories as relating to improper requests for admission.

OTRS now asks the Court to overrule Defendants' objections to Requests for Admission

2-13 and 15-18 and Interrogatories 1-13. OTRS also asks the Court to compel Defendants to provide full and complete answers to Interrogatories 1-13.

> A.     **Requests for Admission**

Pursuant to Federal Rule of Civil Procedure 36, a party may ask another party to admit the truth of any relevant matter relating to "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1). "The quintessential function of Requests for Admissions is to allow the narrowing of issues, to permit facilitation in presenting cases to the factfinder and, at a minimum, to provide notification as to those facts, or opinions, that remain in dispute." *Lakehead Pipe Line Co. v. Am. Home Assurance Co.*, 177 F.R.D. 454, 457-58 (D. Minn. 1997). Thus, "requests for admission are not to be employed as a means 'to establish facts which are obviously in dispute or to answer questions of law.'" *Id.* at 458 (citation omitted). "For example, it would be inappropriate for a party to demand that the opposing party ratify legal conclusions that the requesting party has simply attached to operative facts." *Disability Rights Council v. Wash. Metro. Area*, 234 F.R.D. 1, 3 (D.D.C. 2006) (citing *Lakehead Pipe Line*, 177 F.R.D. at 458).

Here, Requests for Admission 2-13, 15, 17, and 18 essentially ask Defendants to ratify the legal conclusions of OTRS on topics pertaining to class certification. The requests contain very few—if any—facts, and do not apply any law to the specific facts of this case. Accordingly, Defendants' objections to Requests for Admission 2-13, 15, 17, and 18 are sustained.

In comparison, Request for Admission 16 asks Defendants to admit or deny that "MoneyGram's publicly traded securities were actively traded in an efficient market on the New York Stock Exchange during the Class Period." (Beckworth Decl. Ex. A at 7, Sept. 8, 2009.) This is an appropriately worded request; it incorporates specific facts of the case and does not

ask Defendants to endorse OTRS's legal conclusion. The Court therefore overrules Defendants' objection to Request for Admission 16.

Even if the Court were to assume that all of the contested objections were improper, however, Defendants also denied each request for admission. Thus, OTRS has received notification of the facts and opinions, and even the legal issues, remaining in dispute, and the purpose of Rule 26 has been fulfilled. Defendants need not respond further to the requests for admission.

      **B.**      **Interrogatories**

Interrogatories 1-13 correspond directly to Requests for Admission 5-13 and 15-18, asking Defendants to provide the bases for their contentions that the statements in the requests are not true. Defendants argue that if their objections to the requests for admission are sustained, then they are excused from responding to the accompanying interrogatories. But the answer is not so plain.

Notwithstanding the correlation of Interrogatories 1-13 with the improper requests for admission, those interrogatories, standing alone, are appropriately-worded contention interrogatories. They seek the evidence on which Defendants base their legal contentions on class certification issues. Such discovery devices are authorized by Federal Rule of Civil Procedure 33. *See McCarthy v. Paine Webber Group, Inc.*, 168 F.R.D. 448, 450 (D. Conn. 1996).

The Court is aware that requiring Defendants to respond to the interrogatories at this time risks revealing the relative strengths and weaknesses of their positions on class certification before their opposition memorandum is due. The Court is further mindful that discovery on class certification issues is not complete. To assuage these concerns, the Court permits Defendants

until November 13, 2009, one week before their memorandum is due, to respond to the interrogatories. The Court also reminds the parties that Defendants need not provide a narrative including every evidentiary detail in order to provide a sufficient answer. *See Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007).

## III. DEFENDANTS' MOTION

Defendants move the Court to compel OTRS (1) to identify six confidential witnesses referenced in the Amended Complaint, (2) to describe the information known to each of those witnesses, and (3) to supplement its initial disclosures to describe the specific information known to each individual or entity.

### A. The Names of Confidential Witnesses

The Amended Complaint relies extensively on information obtained from six confidential witnesses, described by OTRS as former members of MoneyGram's investment, accounting, and information technology departments. For example, paragraph 333 states:

> Throughout the Class Period, MoneyGram's Portfolio was managed, monitored and valued by the Officer Defendants, the Investment Committee Defendants and the ten members of MoneyGram's Investment Department. The majority of MoneyGram's Investment Portfolio consisted of ABS. By the start of the Class Period, external market conditions were beginning to eviscerate the market for ABS—a fact commonly known in the marketplace and later acknowledged by MoneyGram. From January 24, 2007 until September 11, 2007, Defendants knew, but concealed, that 29.3% of the Investment Portfolio was directly exposed to the subprime/Alt-A crisis. This fact placed Defendants' entire business in the crosshairs of the general market collapse. *Information obtained from Lead Plaintiff's confidential sources*—members of MoneyGram's Investment Department, Systems Accounting Department, and Information Technology Department—establishes that these facts were well known to Defendants. *The information from these confidential sources*, when taken in isolation or viewed collectively, further establishes that MoneyGram and the Officer and Investment Committee Defendants were aware of and/or directly involved in the accounting violations described herein.

(Am. Compl. ¶ 333) (emphases added).

Seeking to learn the identities of the confidential sources, Defendants propounded Interrogatory 3, which asked OTRS to identify each confidential witness mentioned in the Amended Complaint. OTRS objected on the basis of attorney work product and referred MoneyGram to the 100 names it had provided in its initial disclosures.

Typically, a party may discover information "regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The identities of the confidential witnesses and the information known to them are clearly relevant to OTRS's claims, as evidenced by OTRS's heavy reliance on information from the witnesses in pleading its factual allegations. *See, e.g.*, *Lefkoe v. Jos. A. Bank Clothiers*, Civ. No. WMN-06-1892, 2009 WL 3003247, at *10 (D. Md. May 1, 2009) ("This Court is persuaded by the reasoning of the majority of courts addressing this issue that where a plaintiff highlights particular witnesses' roles within the complaint, a discoverable matter is generated"). The question, then, is whether the information constitutes attorney work product, and if so, whether it should nonetheless be disclosed.

The attorney work product doctrine is an exception to the otherwise liberal rule of discovery. "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). The party asserting the privilege bears the burden to show its applicability. *Bouschor v. United States*, 316 F.2d 451, 456 (8th Cir. 1963) (citations omitted).

OTRS recently waged a similar battle, and lost, in the Northern District of California. In *In re Connetics Corp. Securities Litigation*, No. C 07-02940 SI, 2009 WL 1126508 (N.D. Cal. Apr. 27, 2009), OTRS attributed many factual allegations in its complaint to twelve confidential

6

witnesses. *Id.* at *1. When OTRS refused to identify the witnesses in response to an interrogatory, the defendants moved to compel, and OTRS claimed the names were protected attorney work product. *Id.* Recognizing a split among district courts nationwide, the *Connetics* court sided with cases holding that a confidential witness's identity is not protected work product. *Id.* "Because the information will inevitably be disclosed and the earlier disclosure does not compromise [p]laintiffs' strategic or tactical position, there is no basis for finding work product protection." *In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424, 428 (N.D. Cal. 2007) (quoted in *Connetics*, 2009 WL 1126508, at *1).

Defendants have identified one case in this District that is consistent with *Connetics* and *Harmonic*: *In re Select Comfort Corp. Securities Litigation*, Civ. No. 99-884, slip opinion (D. Minn. Nov. 13, 2001) (Mason, Mag. J.). In *Select Comfort*, the plaintiffs based several allegations in the complaint on information they had obtained from unidentified sources. *Id.* at 7-8. The defendants subsequently served interrogatories requesting the identities of the sources, as well as "all documents you have received from each" individual. *Id.* at 8 & n.1. Rejecting the plaintiffs' argument that the identities of the confidential witnesses were protected work product, the court reasoned, "[i]f we were to credit Plaintiffs' argument, a party could avoid providing the names of witnesses by simply stating that the witness had been interviewed." *Id.* at 8-9.[1]

This Court concludes that the names of the six confidential witnesses are not attorney work product. Providing the names of the witnesses will not require OTRS to reveal any mental

---

[1] There is also a case in this District, cited by OTRS, holding that identities of confidential witnesses are attorney work product. *In re St. Paul Travelers Sec. Litig. II*, Civ. No. 04-4697, slip op. at 1 (D. Minn. Mar. 28, 2007) (Noel, Mag. J.). In the appeal of that case, the district court noted the existence of authority on both sides of the debate, before affirming the decision as not contrary to law. *In re St. Paul Travelers Sec. Litig. II*, Civ. No. 04-4697, 2007 WL 1424673, at *1 (D. Minn. May 10, 2007) (Tunheim, J.). Neither *Select Comfort* nor *St. Paul Travelers* is binding precedent; whether the identities of the confidential witnesses are attorney work product must be based on the particular facts and circumstances of this case.

impressions or legal strategies that are not already known. *See In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 631, 634-36 (N.D. Ga. 2002) (disclosure of witnesses' identities would not reveal counsel's litigation strategy); *In re Aetna Inc. Sec. Litig.*, No. Civ. A. MDL 1219, 1999 WL 354527, at *3 (E.D. Pa. May 26, 1999) ("The disclosure of the names and addresses of those individuals interviewed by Plaintiffs' counsel will not reveal the 'mental impressions, conclusions, opinions, or legal theories of [Plaintiffs'] attorneys.'").

Furthermore, as OTRS concedes, it is only a matter of time before Defendants learn the identities of the confidential sources. Rather than name them now, however, OTRS proposes that Defendants depose the individuals named in OTRS's initial disclosures. OTRS also devotes seven pages of its memorandum to describing how Defendants could reduce the list of possibilities from 100 to 27. But there is no need for Defendants to engage in such inefficient exercises. The only effect of withholding the names at this time is to force Defendants to expend resources on taking numerous depositions during the time in which they are also preparing their memorandum opposing class certification.[2] Because the names will be disclosed eventually, and earlier disclosure will not jeopardize OTRS's tactical position, the names are not attorney work product. *See Harmonic*, 245 F.R.D. at 428.

Taking the analysis one step further and assuming the names are protected work product, they are merely ordinary work product. *See Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) ("Ordinary work product includes raw factual information."). Defendants therefore may discover the confidential sources' identities by showing (1) a substantial need for the information and (2) undue hardship if they have to obtain it by other means. *See PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002) (citing Fed. R. Civ. P.

---

[2]  Discovery is not bifurcated in this case; the parties are conducting discovery on class certification and merits simultaneously.

26(b)(3)). Both prongs are met here. First, there is a substantial need for Defendants to obtain information from witnesses who provided critical facts founding OTRS's claims, and they cannot do so without the witnesses' names. It is of no consequence that OTRS now avows it will not rely on these witnesses at trial. OTRS placed great import on their statements in drafting the Amended Complaint and opposing Defendants' motion to dismiss, and Defendants should have an opportunity to explore these once-critical sources. Second, if OTRS is not compelled to disclose the witnesses' identities at this time, Defendants will have to depose numerous witnesses in order to obtain this basic information. Considering the ease with which OTRS could produce the information now, the prospect of multiple depositions presents an undue hardship.

To conclude, OTRS must identify the confidential witnesses within seven days of the date of this Order. In recognition of the public interest of encouraging individuals to come forward with evidence of securities fraud, the Court will, for the time being, permit OTRS to provide the names under an "Attorneys' Eyes Only" designation.

### B. Facts Provided by the Confidential Witnesses

Defendants' Interrogatory 4 asks OTRS to state the facts within each confidential witness's knowledge, of which OTRS is aware. The Court finds that this request, unlike Interrogatory 3, implicates the attorney work product doctrine. Disclosure of the particular facts OTRS's counsel chose to obtain from each witness would reveal counsel's mental impressions and litigation strategy. The only way OTRS can answer this interrogatory is to have its lawyers revisit their notes or interview summaries and extract the facts. This intrudes too far into the realm of work product protection.

Facts obtained from confidential witnesses are ordinary work product, *In re Retek Inc. Securities Litigation,* Civ. No. 02-4209, slip op. at 7-8 (D. Minn. Feb. 6, 2006) (Nelson, Mag. J.),

and thus obtainable upon showings of substantial need and undue hardship. Defendants have not made either showing here. They cannot show a substantial need because once they know the names of the confidential witnesses, they can easily match each witness to the corresponding allegations in the Amended Complaint. Defendants can also obtain facts directly from each of the witnesses. Neither matching names to allegations nor deposing six people is an undue hardship.

### C.   Specific Knowledge of Each Person Identified in the Initial Disclosures

OTRS identified over 100 people and entities with discoverable information in its initial disclosures, but failed to describe the particular knowledge of each individual or entity. Instead, it provided the rote description of "knowledge of the matters set forth in the Complaint . . . regarding, but not limited to, MoneyGram's conduct, . . . personal conduct, the conduct of MoneyGram's officers and directors, the conduct of its present and former employers, and the Company's involvement and dealings with third parties." (Puls Aff. Ex. A at 5, Sept. 22, 2009.) Therefore, through Interrogatory 1, Defendants asked OTRS to identify each person believed to have personal information of the facts at issue and to state for each individual the facts within his or her knowledge. OTRS objected on the basis of attorney-client privilege and the attorney work product doctrine, in addition to other objections. OTRS then repeated the above description.

Rule 26(a)(1) requires a party to disclose "the subjects of the information" possessed by each individual identified in the initial disclosures. Fed. R. Civ. P. 26(a)(1). "A major purpose of the [Rule] is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information, and the rule should be applied in a manner to achieve those objectives." Fed. R. Civ. P. 26 advisory committee's note (1993 amendment).

Notably, OTRS did not respond to this portion of Defendants' motion, perhaps because

10

there can be no valid reason for failing to disclose the subject matter known to each witness identified in the initial disclosures. Defendants are entitled to learn the general topics of information known by each identified individual, and the Court compels OTRS to produce this information either by supplementing its initial disclosures or responding to Interrogatory 1. If OTRS needs guidance on the appropriate level of detail, OTRS is directed to pages four and five of Defendants' initial disclosures.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Lead Plaintiff's Motion to Determine Sufficiency of Defendants' Answers to First Set of Requests for Admission and Interrogatories (Doc. No. 111) is **GRANTED IN PART** and **DENIED IN PART** as set forth fully herein;

2. Defendants must respond to Interrogatories 1-13 on or before November 13, 2009;

3. Defendants' Motion to Compel Supplemental Initial Disclosures and Discovery Responses (Doc. No. 119) is **GRANTED IN PART** and **DENIED IN PART** as set forth fully herein;

4. OTRS must identify the confidential witnesses within seven days of this Order, and may do so under an "Attorneys' Eyes Only" designation; and

5. OTRS must disclose the subject matter known to each witness identified in its amended initial disclosures within seven days of this Order.

Dated: October 13th, 2009.　　　　　　　　　s/ *Jeanne J. Graham*

　　　　　　　　　　　　　　　　　　　　　JEANNE J. GRAHAM
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge