**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

|  |  |  |
|---|---|---|
| | ) | |
| In re MoneyGram International, Inc. | ) | Consolidated Case No.:  Civ. No. 08-883 |
| Securities Litigation | ) | (DSD/JJG) |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF PROPOSED CLASS ACTION SETTLEMENT**

## I.   PRELIMINARY STATEMENT

Lead Plaintiff, Oklahoma Teachers' Retirement System ("OTRS" or "Lead Plaintiff") has achieved an outstanding recovery for the Class as a result of its vigorous prosecution of this Action.[1]   Specifically, Lead Plaintiff has reached a settlement with Defendants for a total cash payment of $80,000,000.00 (the "Settlement") pursuant to the terms set forth in the Stipulation and Agreement of Settlement dated March 9, 2010 (the "Stipulation").

The Settlement is the result of well-informed and extensive arm's-length negotiations between and among highly experienced counsel, facilitated by a well-respected mediator, the Honorable Daniel Weinstein (Ret.).   As a result of this process, Lead Plaintiff and Lead Counsel believe Settlement is fair, reasonable and adequate, and should be preliminarily approved.   Accordingly, for the reasons set forth below, Lead Plaintiff respectfully requests the Court enter the proposed Order Preliminarily Approving Settlement, Directing Notice and Scheduling Hearing Date ("Preliminary Approval Order") (a copy of which is attached as Exhibit A to the Affidavit of Karl L. Cambronne (the "Cambronne Affidavit")), which will *inter alia*: (i) preliminarily approve the proposed Settlement and proposed plan of allocation; (ii) certify a settlement class and appoint OTRS class representative and Nix, Patterson & Roach, LLP class counsel; (iii) approve the form and manner of notice proposed by Lead Plaintiff; (iv) appoint a

---

[1]All capitalized terms used herein shall have the meaning given to them in the Stipulation and Agreement of Settlement.

notice and claims administrator; and (v) set a hearing date for final approval of the settlement and application for attorneys' fees and reimbursement of expenses.

## II.      SUMMARY OF THE LITIGATION

Beginning on or about March 28, 2008, four purported class action complaints were filed against MoneyGram and the Individual Defendants in the Court, alleging violations of the federal securities laws.  Other actions, asserting different claims for relief, have also been filed in this Court.

On July 22, 2008, the Court held a hearing regarding various motions to consolidate the purported class actions filed against Defendants, and to appoint a lead plaintiff and lead counsel for the consolidated case.  That same day, the Court entered an order appointing OTRS as Lead Plaintiff, the firm of Nix, Patterson & Roach, LLP as Lead Counsel, and the firm of Chestnut Cambronne PA as Counsel.

On October 3, 2008, OTRS filed its Consolidated Class Action Complaint for Violations of the Federal Securities Laws in excess of 350 pages in length.

Defendants filed a Motion to Dismiss on December 3, 2008 and a Memorandum in Support of that Motion on January 13, 2009.  Lead Plaintiff filed a Response on February 9, 2009 and Defendants filed a Reply on February 17, 2009.

The Court held a hearing on the Motion to Dismiss on March 11, 2009.  On May 20, 2009, the Honorable David S. Doty issued an order denying the Motion to Dismiss as to all Defendants except Putney.

On August 21, 2009, OTRS moved for class certification pursuant to Federal Rules of Procedure 23(a)(1-4) and (b)(3).

Following discovery in connection with the motion for class certification, on November 20, 2009, Defendants filed their opposition to the motion. On January 22, 2010, OTRS filed its reply brief in further support of the motion. A hearing on the motion for class certification was scheduled for February 12, 2010, and was adjourned by the Court at the request of the Parties.

OTRS conducted extensive written discovery in this litigation. The Parties prepared and exchanged initial disclosures pursuant to Rule 26(a). OTRS prepared and served Defendants with a substantial number of interrogatories, requests for admission and requests for production. In response to these discovery requests, OTRS received and reviewed almost 450,000 pages of documents. Furthermore, Defendants served OTRS with substantial interrogatories and requests for production in response to which OTRS produced over 9,300 pages to Defendants.

OTRS issued more than thirty subpoenas to third parties, including dozens of securities analysts, Thomas H. Lee Partners L.P., Goldman, Sachs, & Co., JP Morgan Chase, Euronet, Duff & Phelps, and Deloitte & Touche. OTRS received and reviewed over 325,000 pages of documents in response to these subpoenas.

OTRS also retained and consulted with numerous consulting-only witnesses to assist in the prosecution of this Action. Subject to and without waiving any privileges, these witnesses included experts in the fields of accounting (including fair value determinations), investment banking, forensic investigators, loss causation and damages, and asset-backed securities.

In Fall 2009, the Parties agreed to mediate the possible resolution of the Action and selected retired Judge Daniel Weinstein as the mediator. Pursuant to Judge Weinstein's instructions, the Parties submitted detailed mediation statements on January 22, 2009. Thereafter, the Parties participated in separate discussions with Judge Weinstein in advance of a formal mediation session. On January 29, 2010, the Parties met with Judge Weinstein in New York City, New York for the first day of formal mediation. Lead Plaintiff was represented by Lead Counsel and Counsel, and Defendants were represented by Defense Counsel. Additionally, each of Defendants' D&O insurance carriers (the "Carriers") was represented at the mediation either in person or by their own attorneys. The Parties mediated in good faith and at arm's-length for the entire day, but no agreement was reached.

Thereafter, the Parties conferred privately with Judge Weinstein in an attempt to determine whether a settlement of the Action was possible. Judge Weinstein asked the Parties to reconvene for a second formal mediation session on February 3, 2010 in New York. The Parties met and mediated in good faith and at arm's-length on February 3, 2010. No agreement was reached at this meeting, although substantial progress was made towards settlement of the Action.

Thereafter, the Parties and the Carriers continued to confer privately with Judge Weinstein in a good faith and arm's-length effort to find common ground. Although numerous attempts to find common ground failed, the parties eventually came to an agreement and began drafting a Memorandum of Understanding on or about February 10,

2010.  On February 24, 2010, the Parties entered into a Memorandum of Understanding, by which the Parties agreed to settle this litigation.

## III.   ARGUMENT

### A.   Standards For Preliminary Approval

Courts strongly favor settlement as a method for resolving litigation.  *See Justine Realty Co. v. American Nat. Can Co.*, 976 F.2d 385, 391 (8th Cir. 1992); *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *Holden v. Burlington Northern Inc.*, 665 F. Supp. 1398, 1405 (D. Minn. 1987).  In class action lawsuits such as this, the policy of favoring voluntary resolution of litigation through settlement is particularly strong:

> In the class action context in particular, there is an overriding public interest in favor of settlement.  Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) (internal citations omitted); *see also White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993).  Indeed, such agreements should be deemed presumptively valid.  *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("[S]trong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

Federal Rule of Civil Procedure 23(e) requires judicial approval of the compromise of claims brought on a class basis.  FED. R. CIV. P. 23(e).  The procedure for review of a proposed class action settlement is a well-established, two-step process.  *See*

MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004). First, the Court conducts a preliminary hearing, the purpose of which is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." MANUAL FOR COMPLEX LITIGATION § 1.46, at 53-55; *accord, Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). If the district court preliminarily approves the settlement, the class is notified and provided an opportunity to be heard, at a fairness hearing, concerning the merits of the settlement. *Armstrong*, 616 F.2d at 314; *accord*, 4 Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11:25, at 38 (4th ed. 2002).

> **B.** **The Court Should Grant Preliminary Approval**

In determining whether preliminary approval is warranted, the Court should consider the extent of informed, arm's-length negotiations between the parties and whether the resulting Settlement is within the range of what might be found fair, reasonable and adequate. *See, e.g., Holden* v. *Burlington N., Inc.,* 665 F. Supp. 1398, 1402 (D. Minn. 1987); *In re NASDAQ Market-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Here, the proposed Settlement was achieved only after difficult, informed, arm's-length negotiations and extensive fact discovery, thereby warranting notice apprising Class Members of the Settlement and establishing a hearing date for final approval.

### 1.    The Proposed Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel After Numerous Mediation Sessions and Extensive Discovery

The proposed Settlement is the product of extensive, arm's-length negotiations conducted by experienced counsel and mediated by a retired judge. Accordingly, the fairness, adequacy and reasonableness of the proposed Settlement may be presumed.

In Fall 2009, the Parties agreed to mediate the possible resolution of the Action and selected retired Judge Daniel Weinstein as the mediator. Pursuant to Judge Weinstein's instructions, the Parties submitted detailed mediation statements on January 22, 2009. Thereafter, the Parties participated in separate discussions with Judge Weinstein in advance of a formal mediation session. On January 29, 2010, the Parties met with Judge Weinstein in New York City, New York for the first day of formal mediation. Lead Plaintiff was represented by Lead Counsel and Counsel, and Defendants were represented by Defense Counsel. Additionally, each of Defendants' D&O insurance carriers (the "Carriers") was represented at the mediation either in person or by their own attorneys. The Parties mediated in good faith and at arm's-length for the entire day, but no agreement was reached.

Thereafter, the Parties conferred privately with Judge Weinstein in an attempt to determine whether a settlement of the Action was possible. Judge Weinstein asked the Parties to reconvene for a second formal mediation session on February 3, 2010 in New York. The Parties met and mediated in good faith and at arm's-length on February 3, 2010. No agreement was reached at this meeting, although substantial progress was made towards settlement of the Action.

Thereafter, the Parties and the Carriers continued to confer privately with Judge Weinstein in a good faith and arm's-length effort to find common ground. Although numerous attempts to find common ground failed, the parties eventually came to an agreement and began drafting a Memorandum of Understanding on or about February 10, 2010. On February 24, 2010, the Parties entered into a Memorandum of Understanding, by which the Parties agreed to settle this litigation.

Clearly, the proposed Settlement in this case was the product of intensive negotiations. *See, e.g., In re Employee Benefit Plans Sec. Litig.,* No. 3-92-708, 1993 U.S. Dist. LEXIS 21226, at *18 (D. Minn. June 2, 1993) ("intensive and contentious negotiations likely result in meritorious settlements, rather than collusive ones"). The committed participation of Judge Weinstein also supports a finding that the negotiations were conducted at arm's-length and without collusion. *See, e.g., In re Charter Commc'ns, Inc. Sec. Litig.,* No. MDL 1506, 2005 U.S. Dist. LEXIS 14772, at *8 (E.D. Mo. June 30, 2005); *In re Initial Pub. Offering Sec. Litig.,* 226 F.R.D. 186, 194 (S.D.N.Y. 2005). Resolution was reached only after the parties had reached a stage where an intelligent evaluation of the litigation and the propriety of the Settlement could be made. *Armstrong,* 616 F.2d at 325 ("The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims.").

In addition to extensive written fact discovery, discussed above, the Parties engaged in substantial expert discovery. OTRS retained and worked with numerous consulting-only expert witnesses to assist in the prosecution of this litigation. Subject to

8

and without waiving any privileges, these witnesses included experts in accounting (including fair value determinations), investment banking, forensic investigators, loss causation and damages, and asset-backed securities.

Thus, the Parties have had more than sufficient evidence to allow them to make an informed decision about the strengths and weaknesses of their respective cases. *See, e.g., Holden,* 665 F. Supp. at 1404 (approving settlement where parties engaged in extensive written and oral discovery). Where, as here, settlement is reached through arm's-length negotiations between experienced counsel, and there is no evidence of collusion or bad faith, "the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference." *See, e.g., Petrovic*, 200 F.3d at 1149; *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1178 (8th Cir. 1995) (according "considerable weight" to the views of experienced class counsel).

This case has been fiercely litigated by experienced and competent counsel on all sides. "The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *Employee Benefit Plans,* 1993 U.S. Dist. LEXIS 21226, at *17; *DeBoer,* 64 F.3d at 1178. Here, Lead Counsel is well known for its experience and success in complex securities cases. *See, e.g., In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.,* 248 F.R.D. 483 (E.D. Mich. 2008); *In re Xcel Energy, Inc. Sec. Litig.,* 364 F. Supp. 2d 1005 (D. Minn. 2005). Similarly, Defendants also are represented by counsel with considerable experience in securities litigation. The Company and all Individual Defendants were represented by Oppenheimer Wolff &

Donnelly LLP and Weil, Gotshal & Manges LLP—law firms that are well known to this Court.

Because the proposed Settlement is the product of serious, informed and non-collusive negotiations among experienced counsel, it is deserving of preliminary approval. *See DeBoer,* 64 F.3d at 1178.

### 2. The Proposed Settlement Falls Within a Range of What Is Fair, Reasonable and Adequate

The Eighth Circuit has established four factors for determining whether a proposed settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922, 932 (8th Cir. 2005); *see also Van Horn* v. *Trickey,* 840 F.2d 604 (8th Cir. 1988). At the preliminary approval stage, only the first three factors are considered. Here, all three factors weigh in favor of granting preliminary approval.

### a. The Merits of Plaintiff's Case Compared to the Recovery Obtained Through the Settlement Supports Preliminary Approval

"The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Wireless,* 396 F.3d at 933 (citation omitted). In this case, Plaintiff alleged violations of §§ 10(b) and 20A of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. Lead Plaintiff believes that, based

on the evidence developed to date, it had a strong liability case.  At the same time, Lead

Plaintiff also recognized that establishing liability at trial was by no means guaranteed.

Indeed, to this day, Defendants adamantly deny any wrongdoing.  As they did in

their motion to dismiss, Defendants were prepared to argue at trial that they did not act

with the requisite scienter, and that Lead Plaintiff could not demonstrate loss causation—

both key elements of Lead Plaintiff's § 10(b) claim.  If the jury or this Court agreed with

Defendants' arguments, Lead Plaintiff's § 10(b) claims would fail as a matter of law.

*See, e.g., In re Metris Cos., Inc., Sec. Litig.,* 428 F. Supp. 2d 1004, 1013-14 (D. Minn.

2006) (granting summary judgment because plaintiffs failed to raise genuine issues of

material fact with respect to scienter and loss causation).  Lead Plaintiff faced similar

obstacles with respect to proving damages.  The expert battle that would have inevitably

ensued at trial over damages and loss causation left no guarantee for success for Lead

Plaintiff or the Class.  Given the obstacles to success at trial and on appeal, a guaranteed

$80 million recovery strongly supports preliminary approval.

### b.      *Defendants' Financial Condition Supports the Settlement*

Second, the $80 million settlement amount is substantial.  The settlement amount

includes a substantial payment of $20 million from the Company above the contribution

from its insurers.  Even if MoneyGram or its insurers could possibly pay more, "'this

fact, standing alone, does not render the settlement inadequate.'"  *In re UnitedHealth*

*Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1099 (D. Minn. 2009) (citing *Petrovic*,

200 F.3d at 1152); *Spencer* v. *Comserv Corp.,* No. 4-84-794, 1986 U.S. Dist. LEXIS

15863, at *24 (D. Minn. Dec. 30, 1986) ("the ability to ultimately collect a favorable

recovery from a defendant is an important factor in determining the adequacy of a proposed settlement"). This factor weighs in favor of approval.

### c.     The Complexity and Expense of Further Litigation Supports the Settlement

Third, barring this Settlement, this case would require the expenditure of substantial additional moneys, "all the while class members would receive nothing." *Wireless,* 396 F.3d at 933 (citation omitted).  If not for the proposed Settlement, this case likely would have continued to trial and, even if Lead Plaintiff did prevail at trial, Defendants would undoubtedly appeal, causing further delay and the risk of reversal. Conversely, the proposed Settlement confers a substantial and immediate benefit on the Class, without the attendant risk of a wholly speculative payment of a potentially larger amount several years from now.

Thus, all of the relevant factors to be considered in connection with final approval of the Settlement unquestionably support the preliminary approval sought here.

## IV.     CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER

Lead Plaintiff further requests the Court certify a Class for settlement purposes only consisting of all persons and entities who purchased or otherwise acquired MoneyGram Securities during the period between January 14, 2007 and March 25, 2008, inclusive (the "Class Period").  Excluded from the Settlement Class are: (i) Defendants; (ii) all officers, directors, and partners of any Defendant and of any Defendant's partnerships, subsidiaries, or affiliates; (iii) Thomas H. Lee Partners, L.P., and any of its officers, directors, and partners, subsidiaries, affiliates, members, investors, or

partnerships; (iv) Goldman Sachs & Co. and any of its officers, directors, and partners, subsidiaries, affiliates, members, or partnerships; (v) members of the immediate family of any of the foregoing excluded; (vi) the legal representatives, heirs, successors, and assigns of any of the foregoing excluded parties; (vii) any entity in which any of the foregoing excluded parties has or had a controlling interest.  Also excluded from the Class are any putative members of the Class who exclude themselves by timely requesting exclusion in accordance with the requirements set forth in the Notice.

Certification of the Class for settlement purposes will further the interests of Class Members and Defendants by allowing this litigation to be settled on a class-wide basis. Moreover, for purposes of settlement only, Defendants consent to certification of the Class under Federal Rule of Civil Procedure 23(a)(1-4) and (b)(3).[2]   Class certification for settlement purposes is appropriate here because the four prerequisites of Rule 23(a) are met, as well as the requirements of Rule 23(b)(3).  Indeed, Lead Plaintiff set forth extensive evidence in its Memorandum of Law in Support of Its Motion for Class Certification, establishing each element of Rule 23.  *See* Docket Nos. 106 & 107. Lead Plaintiff respectfully incorporates its Memorandum and all evidence submitted in support thereof as if set forth fully herein.  A summary of Lead Plaintiff's class certification evidence is as follows:

---

[2] Pursuant to Paragraph 26 of the Stipulation, certification of the Class shall be binding only with respect to the Settlement and only shall be effective if the Judgment becomes Final.

### A.    Numerosity

The Expert Report of Laurie Krigman, Ph.D. (Docket No. 107, Exhibit C) proved that during the Class Period:  (1) MoneyGram was actively traded on the NYSE with an average daily trading volume of 1.2 million shares; (2) MoneyGram's weekly trading volume averaged 7.22% of shares outstanding; and (3) over 100 institutional investors held MoneyGram.  Numerosity is satisfied.

### B.    Commonality

Lead Plaintiff alleged—and the Court upheld—that it and Class members purchased MoneyGram on the open market at artificially inflated prices during the Class Period.  Lead Plaintiff's evidence supporting its allegations and Defendants' admission that these statements constituted "publicly available information" proved that any questions of fact and law about the propriety and/or effect of these statements are common to all Class members.  Commonality is established.

### C.    Typicality

As stated above, Lead Plaintiff established that common questions of law or fact exist.    Indeed, Lead Plaintiff—just like every member of the Class—purchased MoneyGram shares during the Class Period that were artificially inflated as a result of Defendants' fraud.  *See* Docket No. 107, Exhibit D.  Moreover, institutional investors like OTRS held the majority of outstanding shares in MoneyGram.  *See* Docket No. 107, Exhibit C at ¶ 29.  Similarly, all Class Members were damaged when Defendants' acts were disclosed and MoneyGram's price plummeted.  Typicality cannot be disputed.

### D.    Adequacy of Lead Counsel

The (1) resumes of Nix Patterson & Roach, LLP and Chestnut Cambronne PA, (2) findings by other federal courts that Nix Patterson & Roach, LLP is adequate, and (3) this Court's prior holding that Chestnut Cambronne PA is "experienced and competent" prove adequacy of counsel.

### E.    Predominance

The Krigman Report and Defendants' admissions prove MGI traded in an efficient market throughout the Class Period, the Class is entitled to the fraud-on-the-market presumption of reliance, and common questions of law or fact predominate.

### F.    Superiority

Lead Plaintiff's evidence proved each of Rule 23(b)(3)'s superiority factors.

## V.    THE FORM AND MANNER OF THE PROPOSED NOTICE TO THE CLASS IS ADEQUATE

Upon certification of a class under Rule 23(b)(3), notice must be served on all class members who can be identified through reasonable effort in a manner that is practicable under the circumstances.   FED. R. CIV. P. 23(c)(2)(B).   Rule 23(e) also instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id*. at 23(e)(1).   Thus, in terms of content, a settlement notice "need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

Lead Plaintiff has submitted two forms of notice to the Court for approval: (1) Notice of Class Action, Proposed Settlement, Motion for Attorneys' Fees and Fairness Hearing ("Notice"); and (2) Summary Notice.  Lead Plaintiff proposes that the Claims Administrator shall cause the Summary Notice to be published in the national edition of the *Wall Street Journal* and over the *PR Newswire*, and send a copy of the Notice to the last known mailing address of those members of the Class whose addresses may be identified through reasonable effort.[3]   This is a well-established means of providing legally sufficient notice.  To accomplish the dissemination of the Notice, Lead Plaintiff has requested the Court to appoint Rust Consulting, Inc. as Claims Administrator.  *See* Section VI, *infra*.

Furthermore, the proposed notice complies with the requirements for notice set forth in the PSLRA by stating: (a) the amount of the Settlement proposed to be distributed to the Class is $80,000,000.00, less approved fees and expenses; (b) the average amount of damages per share; (c) the attorneys' fees and costs sought; (d) the name, telephone number, and address of Lead Counsel who will be reasonably available to answer questions from Class Members concerning matters contained in the notice; (e) Class Members' right to object to the Settlement or seek exclusion from the Class; and (f) the reasons why the Parties propose the settlement.  *See* 15 U.S.C. § 77z-1(a)(7).  The Summary Notice provides similar information in a summary form, and informs the reader

---

[3] The Notice also will be mailed to brokers, banks and other financial institutions acting as nominees for members of the Class.  These brokers, banks and other financial institutions will then forward the Notice to all Class Members identifiable from their records or provide the names and addresses of such Class Members to the Claims Administrator.

how to obtain a copy of the more detailed Notice.  Undoubtedly, both notices will apprise

interested parties of the proposed Settlement and their options with respect to the

Settlement.

## VI.   APPOINTMENT OF RUST CONSULTING, INC. AS ADMINISTRATOR IS PROPER

To accomplish the dissemination of Notice and processing of claims made in

response to the Notice, Lead Counsel respectfully requests the Court appoint Rust

Consulting, Inc. ("Rust") as the Notice and Claims Administrator of the Settlement.

Rust is a well-respected firm with a successful history of administering notice

campaigns and processing claims for some of the largest class action settlements in the

United States.[4]  The undersigned counsel have worked with Rust in other cases and are

confident they will properly administer the notice campaign and claims process approved

and ordered by the Court.

## VII.   CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court

enter the proposed Preliminary Approval Order attached as Exhibit A to the Stipulation,

which, *inter alia*, (1) preliminarily approves the proposed Settlement and plan of

allocation as within the range of possible fairness, reasonableness and adequacy; (2)

preliminarily certifies a class for settlement purposes only; (3) appoints Lead Plaintiff as

class representative of the Class; (4) appoints Lead Counsel as class counsel for such

settlement; (5) approves the form and manner of notice proposed by Lead Plaintiff; (6)

---

[4] *See* http://www.rustconsulting.com/About_Rust/History.aspx.

appoints Rust Consulting, Inc. as notice and claims administrator to disseminate the Class notices and administer the claims of Class Members; (7) sets a date and time for the hearing regarding final approval of the Settlement and Lead Counsel's application for attorneys' fees and reimbursement of expenses; and (8) any further relief to be decided by the Court.

Dated:  March 9, 2010                                    Respectfully Submitted,

                                                            **NIX, PATTERSON & ROACH, L.L.P.**

                                                            By: /s/  Bradley E. Beckworth
                                                                Bradley E. Beckworth
                                                                bbeckworth@nixlawfirm.com
                                                                Jeffrey J. Angelovich
                                                                jangelovich@npraustin.com
                                                                Susan Whatley
                                                                susanwhatley@nixlawfirm.com
                                                                Brad E. Seidel
                                                                bradseidel@nixlawfirm.com
                                                                205 Linda Drive
                                                                Daingerfield, Texas 75638
                                                                Tel. (903) 645-7333
                                                                Fax (903) 645-4415

                                                                **LEAD COUNSEL**

**CHESTNUT CAMBRONNE PA**
Karl L. Cambronne, #14321
kcambronne@chestnutcambronne.com
Jeffrey D. Bores, #227699
jbores@chestnutcambronne.com
Jack L. Chestnut, #16378
jchestnut@chestnutcambronne.com
Bryan L. Bleichner, #0326689
bbleichner@chestnutcambronne.com
3700 Campbell Mithun Tower
222 South Ninth Street
Minneapolis, MN 55402
(612) 339-7300
Fax (612) 336-2940

**COUNSEL**