**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re MoneyGram International, Inc.<br>Securities Litigation | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Consolidated Case No.:   Civ. No. 08-883<br>(DSD/JJG) |

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement (the "Stipulation") is submitted in the above-captioned case, *In re: MoneyGram International, Inc. Securities Litigation*, Consolidated Case No. 0:08-CV-00883-DSD/JJG (D. Minn.) (the "Action"), pursuant to Rule 23 of the Federal Rules of Civil Procedure. Subject to the approval of the United States District Court for the District of Minnesota (the "Court"), this Stipulation is entered into among Lead Plaintiff, the Oklahoma Teachers' Retirement System ("OTRS" or "Lead Plaintiff"), on behalf of itself and the Class (as hereinafter defined), and Defendants MoneyGram International, Inc. ("MoneyGram" or the "Company"), and Phillip W. Milne, David J. Parrin, Jean Benson, William J. Putney, Douglas J. Rock, Monte E. Ford, Donald E. Kiernan, Othón Ruiz Montemayor, and Albert Teplin (such persons, collectively, the "Individual Defendants" and with MoneyGram, the "Defendants"). Hereinafter, Lead Plaintiff, MoneyGram, and the Individual Defendants shall be referred to as the "Parties."

WHEREAS:

A. Beginning on or about March 28, 2008, four purported class action complaints were filed against MoneyGram and the Individual Defendants in this Court, alleging violations of the federal securities laws. Other actions, asserting different claims for relief, have also been filed in this Court.

B. On July 22, 2008, the Court held a hearing regarding various motions to consolidate the purported class actions filed against Defendants, and to appoint a lead plaintiff and lead counsel for the consolidated case. That same day, the Court entered an order appointing OTRS as Lead Plaintiff, the firm of Nix, Patterson & Roach, LLP as Lead Counsel, and the firm of Chestnut Cambronne PA as Counsel.

1

C.      On October 3, 2008, OTRS filed its Consolidated Class Action Complaint for Violations of the Federal Securities Laws in excess of 350 pages in length.

D.      Defendants filed a Motion to Dismiss on December 3, 2008 and a Memorandum in Support of that Motion on January 13, 2009.  Lead Plaintiff filed a Response on February 9, 2009 and Defendants filed a Reply on February 17, 2009.

E.      The Court held a hearing on the Motion to Dismiss on March 11, 2009.  On May 20, 2009, the Honorable David S. Doty issued an order denying the Motion to Dismiss as to all Defendants except certain claims alleged against Putney.

F.      On August 21, 2009, OTRS moved for class certification pursuant to Federal Rules of Procedure 23(a)(1-4) and (b)(3).

G.      Following discovery in connection with the motion for class certification, on November 20, 2009, Defendants filed their opposition to the motion.  On January 22, 2010, OTRS filed its reply brief in further support of the motion.  A hearing on the motion for class certification was scheduled for February 12, 2010, and was adjourned by the Court at the request of the Parties.

H.      OTRS conducted extensive written discovery in this litigation.  The Parties prepared and exchanged initial disclosures pursuant to Rule 26(a).  OTRS prepared and served Defendants with a substantial number of interrogatories, requests for admission and requests for production.  In response to these discovery requests, OTRS received and reviewed almost 450,000 pages of documents.  Furthermore, Defendants served OTRS with substantial interrogatories and requests for production in response to which OTRS produced over 9,300 pages to Defendants.

I.      OTRS issued more than thirty subpoenas to third parties, including dozens of securities analysts, Thomas H. Lee Partners L.P., Goldman, Sachs, & Co., JP Morgan Chase, Euronet, Duff & Phelps, and Deloitte & Touche.  OTRS received and reviewed over 325,000 pages of documents in response to these subpoenas.

J.      OTRS represents that it also retained and consulted with numerous consulting-only witnesses to assist in the prosecution of this Action.  Subject to and without waiving any privileges, these witnesses included experts in the fields of accounting (including fair value determinations), investment banking, forensic investigators, loss causation and damages, and asset-backed securities.

K.      In Fall 2009, the Parties agreed to mediate the possible resolution of the Action and selected retired Judge Daniel Weinstein as the mediator.  Pursuant to Judge Weinstein's instructions, the Parties submitted detailed mediation statements on January 22, 2009.  Thereafter, the Parties participated in separate discussions with Judge Weinstein in advance of a formal mediation session.  On January 29, 2010, the Parties met with Judge Weinstein in New York City, New York for the first day of formal mediation.   Lead Plaintiff was represented by Lead Counsel and Counsel, and Defendants were represented by Defense Counsel (as those terms are defined below).   Additionally, each of Defendants' D&O insurance carriers (the "Carriers") was represented at the mediation either in person or by their own attorneys.  The Parties mediated in good faith and at arm's-length for the entire day, but no agreement was reached.

L.      Thereafter, the Parties conferred privately with Judge Weinstein in an attempt to determine whether a settlement of the Action was possible.  Judge Weinstein asked the Parties to

reconvene for a second formal mediation session on February 3, 2010 in New York.  The Parties

met and mediated in good faith and at arm's-length on February 3, 2010.  No agreement was

reached at this meeting, although substantial progress was made towards settlement of the

Action.

M.     Thereafter, the Parties and the Carriers continued to confer privately with Judge

Weinstein in a good faith and arm's-length effort to find common ground.  Although numerous

attempts to find common ground failed, the parties eventually came to an agreement and began

drafting a Memorandum of Understanding on or about February 10, 2010.  On February 24,

2010, the Parties entered into a Memorandum of Understanding, by which the Parties agreed to

settle this litigation pursuant to the terms set forth below.

N.     The Settlement is the product of intense, hard-fought, arm's-length negotiations.

Based upon their investigation and pretrial discovery as set forth above, Lead Counsel has

recommended and Lead Plaintiff has concluded that the terms and conditions of this Stipulation

are fair, reasonable and adequate to Lead Plaintiff and the Class and are in their best interests,

and Lead Plaintiff has agreed to settle the claims that were raised or could have been raised in the

Action pursuant to the terms and provisions of this Stipulation, after considering: (a) the

substantial benefits that Class Members will receive from the Settlement; (b) the attendant risks

of continued litigation; and (c) the desirability of permitting the Settlement to be consummated

as provided by the terms of this Stipulation.

O.     MoneyGram and the Individual Defendants deny any wrongdoing or damage to

the Class whatsoever and are entering into this Stipulation to avoid the continued costs and

burdens of litigation.  This Stipulation shall in no event be construed or deemed to be evidence

of, or an admission or concession on the part of, MoneyGram or any Individual Defendant with respect to any claim of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in any of their defenses.

P.      The Parties recognize that the Action has been litigated by Lead Plaintiff and defended by Defendants in good faith, that the Action is being voluntarily settled following arm's-length bargaining between Lead Plaintiff, MoneyGram and the Individual Defendants with the aid of an experienced and able mediator and upon advice of competent counsel, and that Lead Plaintiff and Defendants believe the terms of the Settlement and this Stipulation are fair, reasonable and adequate to the Class.

NOW THEREFORE, in consideration of the foregoing recitals and the benefits flowing to the Parties from the Settlement, it is hereby STIPULATED AND AGREED by and among the Parties, through their respective counsel, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that all Settled Claims (defined below in ¶ 1(nn)) shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

## DEFINITIONS

1.      As used in this Stipulation and any exhibits attached hereto and made a part hereof, the following terms shall have the following meanings:

(a)      "Action" means, *In re: MoneyGram International Securities Litigation*, Consolidated Case No. 0:08-CV-00883-DSD/JJG, pending in the United States District Court for the District of Minnesota and consisting of, and including each and all of the following consolidated cases: *City of Ann Arbor Employees' Retirement System v. MoneyGram*

*International, Inc., et al.,* Civil No. 08–883 DSD/JJG; *Edward J. Goodman Life Income Trust v. MoneyGram International, Inc., et al.,* Civil No. 08–959 DSD/JJG; *Hussain v. MoneyGram International, Inc., et al.,* Civil No. 08–1026 DSD/JJG; and *Pittman v. MoneyGram International, et al.,* Civil No. 08–1034 DSD/JJG.

(b)    "Alternative Judgment" has the meaning set forth in ¶ 33(d) hereof.

(c)    "Authorized Claimant" means a Class Member who submits a timely and valid Proof of Claim form to the Claims Administrator.

(d)    "Bar Order" has the meaning set forth in ¶ 5 hereof.

(e)    "Carriers" means the Company's D&O insurance carriers.

(f)    "Claims Administrator" means, subject to approval and appointment by the Court, Rust Consulting, Inc., which shall administer the Settlement.

(g)    "Class" shall be defined as follows:   All persons and entities who purchased or otherwise acquired MoneyGram Securities during the Class Period.  Excluded from the Class are: (i) Defendants; (ii) all officers, directors, and partners of any Defendant and of any Defendant's partnerships, subsidiaries, or affiliates; (iii) Thomas H. Lee Partners, L.P., and any of its officers, directors, and partners, subsidiaries, affiliates, members, investors, or partnerships; (iv) Goldman Sachs & Co. and any of its officers, directors, and partners, subsidiaries, affiliates, members, or partnerships; (v) members of the immediate family of any of the foregoing excluded persons and entities; (vi) the legal representatives, heirs, successors, and assigns of any of the foregoing excluded persons and entities; (vii) any entity in which any of the foregoing excluded persons and entities has or had a controlling interest.  Also excluded from the Class are any

6

putative members of the Class who exclude themselves by timely requesting exclusion in accordance with the requirement set forth in the Notice, as discussed below in ¶ 18.

(h)     "Class Distribution Order" has the meaning set forth in ¶ 14 hereof.

(i)     "Class Member" means a member of the Class.

(j)     "Class Period" means the period of time between and including January 24, 2007 and March 25, 2008, inclusive.

(k)     "Complaint" means the Consolidated Amended Complaint filed in this Action on October 3, 2008.

(l)     "Court" means the United States District Court for District of Minnesota.

(m)     "Defendants" means MoneyGram and the Individual Defendants.

(n)     "Defense Counsel" means the law firms of Oppenheimer, Wolff & Donnelly, LLP, which represents MoneyGram and the Individual Defendants, and Weil, Gotshal and Manges, LLP, which represents MoneyGram.

(o)     "Derivative Actions" means *In re: MoneyGram International, Inc. Derivative Litigation*, Case No. 09-cv-03208, (District of Minnesota); and *Berney v MoneyGram International, Inc. et al* (LA Superior Court (Central) County of Los Angeles, State of California), Case No. 08-cv-1186-SVW.

(p)     "Effective Date" means the date upon which the Settlement contemplated by this Stipulation shall become effective, as set forth in ¶ 33 hereof.

(q)     "ERISA Action" means *Morrison et al. v MoneyGram International, Inc. et al.* (District of Minnesota), Case No. 08-cv-01121.

(r)     "Escrow Account" means an interest bearing escrow account established by the Escrow Agent to receive the amounts of funds payable to the Class pursuant to ¶¶ 6-7 hereof.

(s)     "Escrow Agent" means Wells Fargo Bank, N.A., or such other entity as the Court directs, pursuant to an Escrow Agreement, to be executed in connection with this Settlement.

(t)     "Exchange Act" means the Securities Exchange Act of 1934.

(u)     "Fairness Hearing" means the hearing to be held by the Court on the date specified in the Notice at which the Court will consider whether to approve the Settlement, the Plan of Allocation, Lead Counsel's application for fees and expenses, Lead Plaintiff's application for reimbursement of costs and expenses, and other matters related to the Settlement.

(v)     "Final" or "Finality," with respect to any Judgment or Alternative Judgment (both defined herein), means: (i) if no appeal is filed with respect to the Judgment or Alternative Judgment, the expiration date of the time provided for under the applicable rules of the court or statute for filing or noticing any appeal; or (ii) if an appeal is filed from any Judgment or Alternative Judgment, the date of (A) final dismissal of such appeal, or the final dismissal or denial of any petition or proceeding on certiorari or otherwise to review the Judgment or Alternative Judgment; or (B) final affirmance of such appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review of the Judgment or Alternative Judgment, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant. Any proceeding or order, or any appeal or petition for a writ of certiorari or other form of

review pertaining solely to (i) any application for attorneys' fees, costs or expenses, and/or (ii) the Plan of Allocation (defined herein), shall not in any way delay or preclude the Judgment or Alternative Judgment from becoming Final.

(w)    "Gross Settlement Fund" means the Settlement Amount (defined herein), plus any interest on or other income or gains in respect of that amount earned while such amount is held by the Escrow Agent.

(x)    "Individual Defendants" means the persons so identified in the initial paragraph of this Stipulation.

(y)    "Judgment" means the proposed final order and judgment approving the Settlement, to be entered by the Court substantially in the form attached hereto as Exhibit B or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Litigation.

(z)    "Lead Counsel" means the law firm of Nix, Patterson & Roach, LLP.

(aa)    "MoneyGram" and the "Company" mean MoneyGram International, Inc. and its subsidiaries, affiliates, or successors.

(bb)    "MoneyGram Securities" means MoneyGram common stock.

(cc)    "Net Settlement Fund" has the meaning set forth in ¶ 7(a) hereof.

(dd)    "Notice" means the Notice of Class Action, Proposed Settlement, Motion for Attorneys' Fees and Fairness Hearing, which is to be sent to Class Members substantially in the form attached hereto as Tab 1 to Exhibit A.

(ee)    "Opt-out Threshold" has the meaning set forth in ¶ 32 hereof and in the Supplemental Agreement.

(ff)    "Order for Notice and Hearing" means the order preliminarily approving the Settlement and directing notice thereof to the Class, to be entered by the Court substantially in the form attached hereto as Exhibit A.

(gg)    "OTRS" means the Oklahoma Teachers' Retirement System.

(hh)    "Parties" means Lead Plaintiff, on behalf of itself and the Class, MoneyGram, and the Individual Defendants.

(ii)    "Plan of Allocation" has the meaning set forth in ¶ 16 hereof.

(jj)    "Proof of Claim" means the proof of claim and release form to be submitted by Claimants, substantially in the form attached hereto as Tab 2 to Exhibit A.

(kk)    "Publication Notice" means the Summary Notice of Proposed Settlement and Hearing for publication substantially in the form attached hereto as Tab 3 to Exhibit A.

(ll)    "Related Persons" means each of MoneyGram's or an Individual Defendant's past or present directors, officers, employees, partners (general or limited), principals, members, managing members, insurers and co-insurers (including but not limited to the Carriers), re-insurers, controlling shareholders, attorneys, advisors, accountants, auditors, personal or legal representatives, predecessors, successors, divisions, joint ventures, assigns, spouses, heirs, executors, parents, subsidiaries, affiliates (including the offices and directors of such parents, subsidiaries, and affiliates), any entity in which MoneyGram or an Individual Defendant has a controlling interest, any member of any Individual Defendant's immediate family, or any trust of which any Individual Defendant is the settlor or which is for the benefit of any member of an Individual Defendant's immediate family.

(mm)   "Released Persons" means MoneyGram, the Individual Defendants, the Carriers and the Related Persons.

(nn)   "Settled Claims" means Settled Defendants' Claims and Settled Plaintiffs' Claims.

(oo)   "Settled Defendants' Claims" means and includes any and all claims (including Unknown Claims, as defined below), debts, demands, controversies, obligations, losses, costs, rights or causes of action or liabilities of any kind or nature whatsoever (including, but not limited to, any claims for damages (whether compensatory, special, incidental, consequential, punitive, exemplary or otherwise), injunctive relief, declaratory relief, rescission or rescissionary damages, interest, attorneys' fees, expert or consulting fees, costs, expenses, or any other form of legal or equitable relief whatsoever), whether based on federal, state, local, foreign, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, that have been or could have been asserted in the Action or any forum by the Released Persons against any of the Lead Plaintiff, Lead Counsel, Class Members or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action.  Notwithstanding the foregoing, or any other provision contained in this Stipulation, Settled Defendants' Claims shall not include any claims to enforce the Settlement, including, without limitation, any of the terms of this Stipulation or of any orders or judgments issued by the Court in connection with the Settlement.

(pp)   "Settled Plaintiffs' Claims" means and includes any and all claims (including Unknown Claims), rights, debts, demands, controversies, obligations, losses, costs,

suits, matters, issues, or causes of action (including, but not limited to, any claims for damages (whether compensatory, special, incidental, consequential, punitive, exemplary or otherwise), injunctive relief, declaratory relief, rescission or rescissionary damages, interest, attorneys' fees, expert or consulting fees, costs, expenses, or any other form of legal or equitable relief whatsoever), under federal, state, local, foreign law, or any other law, rule, or regulation, whether known or unknown, that were, could have been, or could in the future be asserted against the Released Persons, by Plaintiffs in any court of competent jurisdiction or any other adjudicatory tribunal, in connection with, arising out of, related to, based upon, in whole or in part, directly or indirectly, in any way, to the facts, transactions, events, occurrences, acts, disclosures, oral or written statements, representations, filings, publications, disseminations, press releases, presentations, accounting practices or procedures, compensation practices or procedures, omissions or failures to act or to disclose which were or which could have been alleged or described in this Class Action by Plaintiffs.  The "Settled Plaintiffs' Claims" include, but are not limited to, any and all claims related to or arising out of the Company's public filings, press releases or other public statements or disseminations, the Company's accounting for and valuation of the securities held in its investment portfolio, the Company's finances, accounting practices or procedures generally, and any direct claims for breach of fiduciary duty, insider trading, misappropriation of information, failure to disclose, omission or failures to act, abuse of control, breach of MoneyGram's policies or procedures, waste, mismanagement, gross mismanagement, unjust enrichment, misrepresentation, fraud, breach of contract, unfair business practices and unfair competition, negligence, breach of duty of care or any other duty, violations of law, money damages, injunctive relief, corrective disclosure, damages penalties,

disgorgement, restitution, interest, attorneys' fees, expert or consulting fees, and any and all other costs, expenses or liability whatsoever, whether based on federal, state, local, foreign, statutory, common law, or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or unliquidated, at law or inequity, matured or un-matured, including both known claims and Unknown Claims that were or that could have been alleged in the Complaint.  Settled Plaintiffs' Claims shall not include:

(i)      any claims to enforce the Settlement, including, without limitation, any of the terms of this Stipulation or of any orders or judgments issued by the Court in connection with the Settlement;

(ii)     any claims asserted by persons who exclude themselves from the Class by timely requesting exclusion in accordance with the requirements set forth in the Notice; or

(iii)    any claims, rights or causes of action that have been or could have been asserted on behalf of MoneyGram in the purported Derivative Actions or by individuals pursuant to ERISA.

(qq)    "Settlement" means the settlement contemplated by this Stipulation.

(rr)    "Settlement Amount" means $80,000,000.00.

(ss)    "Settlement Fund" means the Settlement Amount together with all interest that is earned on the Settlement Amount.

(tt)    "Stipulation" means this Stipulation and Agreement of Settlement.

(uu)    "Supplemental Agreement" shall have the meaning set forth in ¶ 32.

(vv)   "Taxes" means (i) any and all applicable taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, (A) with respect to the income or gains earned by or in respect of the Gross Settlement Fund, including, without limitation, any taxes that may be imposed upon MoneyGram or its counsel with respect to any income or gains earned by or in respect of the Gross Settlement Fund for any period while it is held by the Escrow Agent during which the Gross Settlement Fund does not qualify as a Qualified Settlement Fund for federal or state income tax purposes; or (B) by way of withholding as required by applicable law on any distribution by the Escrow Agent or the Claims Administrator of any portion of the Gross Settlement Fund to Authorized Claimants and other persons entitled thereto pursuant to this Stipulation; and (ii) any and all expenses, liabilities and costs incurred in connection with the taxation of the Gross Settlement Fund (including without limitation, expenses of tax attorneys and accountants).

(ww)   "Unknown Claims" means any and all claims that the Lead Plaintiff or any Class Member does not know or suspect to exist and any and all claims that MoneyGram or any Individual Defendant does not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons which, if known by him, her or it, might have affected his, her or its settlement with and release of, as applicable, the Released Persons, Lead Plaintiff, and Class Members, or might have affected his, her or its decision to object or not to object to this Settlement.  The parties may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Settled Claims, but the parties shall expressly, fully, finally and forever settle and release, and the

Parties, upon the Effective Date, shall be deemed to have, and by operation of the Judgment the parties shall have fully, finally, and forever settled and released any and all Settled Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Accordingly, with respect to any and all Settled Claims, the Parties stipulate and agree that, upon the Effective Date, the Parties shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, waived all provisions, rights and benefits of California Civil Code § 1542 and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or foreign law which is similar, comparable or equivalent to California Civil Code § 1542.  California Civil Code § 1542 provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Parties expressly acknowledge, and the Class Members shall be deemed to have, and by operation of the Judgment shall have acknowledged, that the waiver and release of Unknown Claims constituting Settled Claims was separately bargained for and a material element of the Settlement.

**RELEASES**

2.      The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action and all Settled Claims.

3.      (a)      Upon the Effective Date of the Settlement, Lead Plaintiff and all Class Members on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, with respect to each and every Settled Plaintiffs' Claim, release and forever discharge, and are forever enjoined from prosecuting, any and all Settled Plaintiffs' Claims against any of the Released Persons, and shall not institute, continue, maintain or assert, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or in a representative capacity on behalf of any class or any other person or entity, any action, suit, cause of action, claim or demand against any Released Person or any other person who may claim any form of contribution or indemnity from any Released Person in respect of any Settled Plaintiffs Claim or any matter related thereto, at any time on or after the Effective Date.

(b)      Upon the Effective Date of the Settlement, the Defendants, on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, release and forever discharge each and every one of the Settled Defendants' Claims, and are forever enjoined from prosecuting the Settled Defendants' Claims against Lead Plaintiffs, all Class Members and their respective counsel.

## **THE BAR ORDER**

4.     The Court shall include the Bar Order in ¶ 5 below in its Judgment approving the Settlement.   The Bar Order shall be approved by the Court as fair to all persons or entities, including but not limited to (a) the Defendants; (b) the Class; and (c) Lead Plaintiff.

5.     The Bar Order shall provide that:

(a)     In accordance with 15 U.S.C. § 78u-4(f)(7)(A), any and all claims for contribution arising out of the claims or allegations of the Action or any Settled Claim (i) by any person or entity against any of the Released Persons, and (ii) by any of the Released Persons against any person or entity other than a person or entity whose liability has been extinguished by the settlement of the Released Persons, are hereby permanently barred, extinguished, discharged, satisfied, and unenforceable.

(b)     Any Class Member receiving notice of the Notice, or having actual knowledge of the Notice, or having actual knowledge of sufficient facts that would cause such person to be charged with constructive notice of the Notice and who did not properly request to be excluded from the Class in accordance with the process set forth in the Notice, is permanently barred, enjoined, and restrained from commencing, prosecuting, continuing, or asserting any Settled Plaintiffs' Claims against the Released Persons, or from receiving any benefits or other relief from, any other lawsuit, arbitration or other proceeding or order in any jurisdiction that is based upon any Settled Plaintiffs' Claims.

## <u>SETTLEMENT CONSIDERATION</u>

6.      The Settlement Amount will be comprised of a payment of Sixty Million Dollars ($60,000,000) from the Carriers, and a payment of Twenty Million Dollars ($20,000,000) from the Company. The Company shall pay its portion of the Settlement Amount to the Escrow Agent within 10 business days of entry of the Order for Notice and Hearing, and the Carriers shall pay their portion of the Settlement Amount to the Escrow Agent within 30 calendar days of entry of the Order for Notice and Hearing. No additional payments, fees or costs of any kind shall be assessed against or required of any Defendant or Released Person in connection with this Settlement, and MoneyGram shall have no obligation to pay in excess of Twenty Million Dollars to the Settlement Amount.

7.      (a)     The Gross Settlement Fund shall be used to pay (i) the Notice, Publication Notice, and administration costs referred to in ¶ 9(b) hereof, (ii) the attorneys' fees and expense award referred to in ¶ 10(a) hereof, (iii) the award to Lead Plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the Class referred to in ¶ 10(b) hereof; and (iv) the remaining administration expenses referred to in ¶ 14 hereof. The balance of the Gross Settlement Fund after the above payments and the payment of any Taxes shall be the "Net Settlement Fund." Following the Effective Date, the Net Settlement Fund shall be distributed to Authorized Claimants as provided in ¶¶ 15-17 hereof in accordance with the Plan of Allocation. The Escrow Agent shall hold any sums required to be held in escrow hereunder. All funds held by the Escrow Agent shall be deemed to be in the custody of the Court until such time as the funds are distributed to Authorized Claimants or repaid to MoneyGram and/or the Carriers pursuant to this Stipulation and/or further order of the Court. The Escrow

Agent shall invest any funds in excess of U.S. $100,000 in short-term United States Agency or Treasury Securities (or a mutual fund invested solely in such instruments), and shall collect and reinvest all interest accrued thereon. Any funds held in escrow in an amount of less than U.S. $100,000 may be held in a bank account insured by the Federal Deposit Insurance Corporation ("FDIC"). Lead Plaintiff, on behalf of itself and the Class, and Defendants agree that the Gross Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1, and that the Escrow Agent, as administrator of the Gross Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Gross Settlement Fund and paying from the Gross Settlement Fund any Taxes owed with respect to the Gross Settlement Fund. Lead Plaintiff, on behalf of itself and the Class, and Defendants agree that the Gross Settlement Fund shall be treated as a Qualified Settlement Fund from the earliest date possible, and agree to any relation-back election required to treat the Gross Settlement Fund as a Qualified Settlement Fund from the earliest date possible. MoneyGram agrees to provide promptly to the Escrow Agent the statement described in Treasury Regulation § 1.468B-3(e).

(b)   All Taxes shall be paid out of the Gross Settlement Fund, shall be considered to be a cost of administration of the Settlement and shall be timely paid by the Escrow Agent without prior Order of the Court. The Gross Settlement Fund or the Escrow Agent shall, to the extent required by law, be obligated to withhold from any distributions to Authorized Claimants and other persons entitled thereto pursuant to this Stipulation any funds necessary to pay Taxes, including the establishment of adequate reserves for Taxes as well as any amount that may be required to be withheld under Treasury Reg. § 1.468B-(1)(2) or

otherwise under applicable law in respect of such distributions. Further, the Gross Settlement Fund shall indemnify and hold harmless the Released Persons for Taxes.

(c)    The Released Persons shall not have any responsibility for or liability whatsoever with respect to: (i) any act, omission or determination of Lead Counsel, the Escrow Agent or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Gross Settlement Fund and/or the Net Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation or payment of any claims asserted against the Gross Settlement Fund and/or the Net Settlement Fund; (v) any losses suffered by, or fluctuations in the value of, the Gross Settlement Fund and/or the Net Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Gross Settlement Fund and/or the Net Settlement Fund or the filing of any returns.

(d)    Authorized Claimants shall provide any and all such information that the Claims Administrator may reasonably require and/or that is required by applicable law in respect of Taxes and filings and reporting for Taxes, before any distributions are made to Authorized Claimants as contemplated hereby, and the Claims Administrator may, without liability to the Authorized Claimants, delay such distributions unless and until such information is provided in the form required by the Claims Administrator.

## ADMINISTRATION

8.    The Claims Administrator shall administer the Settlement for all Class Members subject to the jurisdiction of the Court. Lead Counsel shall be solely responsible for supervising

the administration of the Settlement and the disbursement of Settlement funds.  Defendants shall have no liability, obligation, or responsibility for the administration of the Settlement or disbursement of any Settlement Funds.   However, MoneyGram shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms, including providing the Claims administrator with reasonable access all information from MoneyGram's transfer records concerning the identity of Class Members and their transactions.

9.      (a)     The Escrow Agent, acting solely in its capacity as escrow agent, shall be subject to the jurisdiction of the Court.

(b)     The Escrow Agent may pay from the Gross Settlement Fund, without further approval from MoneyGram, all reasonable costs and expenses up to the amount of U.S. $1,000,000 associated with identifying and notifying the Class Members and effecting mailing of the Notice and Proof of Claim and publication of the Publication Notice to the Class, and the administration of the Settlement, including without limitation, the actual costs of printing and mailing the Notice and Proof of Claim, publication of the Publication Notice, reimbursements to nominee owners for forwarding the Notice and Proof of Claim to their beneficial owners, any Taxes due, and the reasonable administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims.  In the event that such costs exceed U.S. $1,000,000 prior to the Effective Date, Lead Counsel shall submit a particularized written request to Defense Counsel seeking consent to utilize additional monies from the Gross Settlement Fund for purpose of providing notice and administering the Settlement, with the understanding that consent shall not be unreasonably withheld by MoneyGram.  In the event that the Settlement is terminated, as provided for herein, notice and

administration costs paid or incurred in connection with (and subject to the limitations set forth in) this paragraph shall not be returned to the person(s) who paid the Settlement Amount.

(c) The Escrow Agent may rely upon any notice, certificate, instrument, request, paper or other document reasonably believed by it to be genuine and to have been made, sent or signed by an authorized signatory in accordance with this Stipulation, and shall not be liable for (and will be indemnified from the Gross Settlement Fund and held harmless from and against) any and all claims, actions, damages, costs (including reasonable attorneys' fees) and expenses claimed against or incurred by the Escrow Agent for any action taken or omitted by it, consistent with the terms hereof and those of any separate escrow agreements concerning the Gross Settlement Fund, in connection with the performance by it of its duties pursuant to the provisions of this Stipulation or order of the Court, except for its gross negligence or willful misconduct. If the Escrow Agent is uncertain as to its duties hereunder, the Escrow Agent may request that Lead Plaintiff (and, prior to the Effective Date, MoneyGram) sign a document stating and consenting to the action or non-action to be taken by the Escrow Agent. In the event the Settlement is terminated, as provided for herein, indemnified amounts and expenses incurred by the Escrow Agent in connection with this paragraph shall not be returned to the person(s) who paid the Settlement Amount.

## ATTORNEYS' FEES AND EXPENSES AND AWARD TO LEAD PLAINTIFF

10. (a) Lead Counsel will apply to the Court for an award of attorneys' fees and reimbursement of expenses, payable solely from the Gross Settlement Fund, (plus interest on both sums at the same rate earned by the Gross Settlement Fund) in an amount not to exceed the attorneys' fees and expense reimbursement disclosure contained in the Notice. Such amounts as

are awarded by the Court to Lead Counsel from the Gross Settlement Fund shall be payable immediately upon final approval of the Settlement and entry of Judgment by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Counsel's undertaking herein and obligations to promptly make refunds or repayments to the Gross Settlement Fund, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or cost award is reduced, vacated or reversed or for any reason the Settlement is terminated pursuant to this Stipulation, of all (or, if the attorneys' fees and expense award is reduced, any excess) attorneys' fees and expenses awarded by the Court, plus interest thereon at the same rate as is earned by the Gross Settlement Fund.   The apportionment and distribution of any award of attorneys' fees and expenses shall be within the sole discretion of Lead Counsel.   The Released Persons shall not have any payment or other obligations or liability whatsoever with respect to any attorneys' fees or expenses incurred by Lead Counsel, and any attorneys' fees or expenses awarded shall be payable solely from the Gross Settlement Fund.

(b) Lead Plaintiff will apply to the Court for an award, from the Gross Settlement Fund, of its reasonable costs and expenses (which may include lost wages) directly relating to the representation of the Class to the extent allowed by 15 U.S.C. § 78u-4(a)(4), plus interest on such sum at the same rate earned by the Gross Settlement Fund in an amount not to exceed $10,000. Such amounts as may be awarded by the Court to Lead Plaintiff from the Gross Settlement Fund shall be payable immediately upon final approval of the Settlement and entry of final judgment by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for

appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Plaintiff's undertaking herein and obligations to promptly make appropriate refunds or repayments to the Gross Settlement Fund, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the costs and expenses award is reduced, vacated or reversed or for any reason the Settlement is terminated pursuant to this Stipulation of all (or if the costs and expenses award is reduced, any excess) costs and expenses awarded by the Court, plus interest thereon at the same rate as is earned by the Gross Settlement Fund. The Released Persons shall not have any payment or other obligations or liability whatsoever with respect to any costs and expenses awarded to Lead Plaintiff, which shall be payable solely from the Gross Settlement Fund.

11.     Lead Counsel shall indemnify and hold the Defendants harmless for any claims by any Class member regarding attorneys' fees, and the Defendants shall have no responsibility or liability for the allocation of attorneys' fees.

12.     The grant or denial, in whole or in part, or any other disposition of the application for an award of attorneys' fees and reimbursement of expenses by Lead Counsel and/ or the Lead Plaintiff is not a material term of this Agreement and it is not a condition of this Agreement that any or all of such applications be granted. Any disapproval or modification of any or all of the applications for an award of attorneys' fees and reimbursement of costs and expenses shall not affect the enforceability of this Agreement, or provide any Party with the right to terminate the Settlement, or impose any obligation on the Defendants or any other person to increase the consideration paid in connection with the Settlement.

13.     In the event that the Effective Date of the Settlement does not occur for any reason, or in the event that a subsequent ruling on a motion for reconsideration, an appeal or petitionfor certiorari, or on remand following an appeal or review on certiorari, or any proceeding arising out of any subsequent appeal or appeals or other review following decisions on remand, results in a reversal or vacatur of the Judgment or the Court's order awarding attorneys' fees and reimbursement of costs and expenses or any other reduction or modification of an award of attorneys' fees or reimbursement of costs and expenses, Lead Counsel and/or Lead Plaintiff will repay the full amount of any award of attorneys' fees and/ or costs and expenses or award to Lead Plaintiffs that is reversed or the amount by which any award of attorneys' fees or costs and expenses is reduced or modified.  This payment is to be made within sixty (60) business days of the date of entry of the reversal, reduction or modification of the award of attorneys' fees and/ or costs and expenses.  Repayments pursuant to this Paragraph shall include interest at the same rate earned by the Settlement Fund.  It shall be the responsibility and obligation of Lead Counsel (or its successor) to ensure repayment under this paragraph, and Lead Counsel (or its successor) submits itself to the jurisdiction of this Court in the event of any dispute arising out of in connection with this paragraph.

## CLASS DISTRIBUTION ORDER/ADMINISTRATION EXPENSES

14.     Lead Counsel will apply to the Court for an order approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the claims submitted by putative Class Members, and approving any fees and expenses relating to the administration of the Settlement not previously paid by the Escrow Agent pursuant to ¶ 9 or applied for, including the fees and expenses of the Claims Administrator, and, only if the

Effective Date (as defined in ¶ 33) has occurred, directing payment of the Net Settlement Fund to Authorized Claimants (the "Class Distribution Order").

## DISTRIBUTION TO AUTHORIZED CLAIMANTS

15.     Each Authorized Claimant shall be allocated a pro rata share of the Net Settlement Fund based on his, her or its recognized claim compared to the total recognized claims of all Authorized Claimants.  This is not a claims made settlement.  Defendants shall not be entitled to receive any of the Gross Settlement Fund following the Effective Date.  Neither MoneyGram nor the Individual Defendants shall have any responsibility for, involvement in or liability for reviewing, approving or challenging claims filed with the Claims Administrator in connection with this Settlement.

16.     The Claims Administrator shall determine each Authorized Claimant's pro rata share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim (as defined in the plan of allocation described in the Notice ("Plan of Allocation")).

17.     It is understood and agreed by the Parties that the Plan of Allocation, including, but not limited to, any adjustments to any Authorized Claimant's claim set forth herein, is not part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the Finality of the Court's Judgment approving the Stipulation and the Settlement set forth herein or any other orders entered pursuant to the Stipulation.

## ADMINISTRATION OF THE SETTLEMENT

18.      Any Class Member who does not submit a timely and valid Proof of Claim will

not be entitled to receive any of the proceeds from the Net Settlement Fund but nevertheless will

otherwise be bound by all of the terms of this Stipulation and the Settlement, including the terms

of the Judgment to be entered in the Action and the releases provided for herein, and will be

barred from bringing any action against the Released Persons concerning the Settled Claims,

unless said Class Member elects to exclude himself, herself or itself from the Settlement in

accordance with the procedures and timing set forth in the Notice.

19.      The Claims Administrator shall process the Proofs of Claim and, after the entry

of the Class Distribution Order, shall distribute the Net Settlement Fund to Authorized

Claimants.  Except for the obligation of MoneyGram and the Carriers to pay their portions of the

Settlement Amount to the Escrow Agent in accordance with ¶ 6 hereof, the Released Persons

shall have no liability, obligation or responsibility for or with respect to the administration of the

Settlement or disbursement from the Gross Settlement Fund or the Net Settlement Fund.

20.      For purposes of determining the extent, if any, to which a Class Member shall

be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)      Each Class Member shall be required to submit a Proof of Claim

supported by such documents as are designated therein, including proof of the transactions

claimed and the losses incurred thereon or such other documents or proof as the Claims

Administrator, in its discretion, may deem acceptable;

(b)      All Proofs of Claim must be submitted by the date specified in the Notice

unless such period is extended by Order of the Court.  Any Class Member who fails to submit a

Proof of Claim by such date shall be forever barred from receiving any payment pursuant to the Settlement (unless, by Court Order, a later submitted Proof of Claim by such Class Member is approved), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in the Action, and the releases provided for herein, and will be barred from bringing any action against the Released Persons concerning the Settled Plaintiffs' Claims, unless said Class Member elects to exclude himself, herself or itself from the Settlement in accordance with the procedures and timing set forth in the Notice. Provided that it is received before the first motion for the Class Distribution Order is filed, a Proof of Claim shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator;

(c)     Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, which shall determine in accordance with this Stipulation and the approved Plan of Allocation the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to subparagraph 20(e) below;

(d)     Proofs of Claim that do not meet the submission requirements may be rejected. Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the claimant in order to attempt to remedy the curable deficiencies in the Proof of Claim submitted. The Claims Administrator shall notify, in a timely fashion and in writing, each claimant whose Proof of Claim it proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the

right to a review by the Court if the claimant so desires and complies with the requirements of subparagraph 20(e) below; and

(e)   If any claimant whose claim has been rejected in whole or in part desires to contest such rejection, the claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph 20(d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a final review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court, which will have final decision-making power over any such dispute(s).

21.   The administrative determinations of the Claims Administrator in accepting and rejecting claims shall be presented to the Court for approval in the Class Distribution Order.

22.   Each claimant shall be deemed to have submitted to the jurisdiction of the Court, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that claimant's status as a Class Member and the validity and amount of such claimant's claim.  No discovery shall be allowed on the merits of the Action, the Settled Claims, or the Settlement, and Defendants and Released Persons shall have no involvement or obligation with respect thereto in connection with processing the Proofs of Claim.

23.   Distribution of the Net Settlement Fund to Authorized Claimants pursuant to the Settlement shall be deemed final and conclusive against all Class Members.  All Class Members whose claims are not approved shall be barred from participating in distributions from the Net

Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in the Action, and the releases provided for herein, and will be barred from bringing any action against the Released Persons concerning the Settled Claims.

24.     All proceedings with respect to the administration, processing and determination of claims described by ¶¶ 20-25 hereof, and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

25.     The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator, only after the Effective Date and after: (a) all claims have been processed, and all claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to contest with the Claims Administrator such rejection or disallowance; (b) all objections with respect to all rejected or disallowed claims have been resolved by the Court and all appeals therefrom have been resolved or the time therefor has expired; (c) all costs of administration have been paid; and (d) the Court has entered the Class Distribution Order directing such distribution.

## TERMS OF ORDER FOR NOTICE AND HEARING

26.     For purposes of settlement only, Defendants consent to certification of the Class under Federal Rule of Civil Procedure 23(a)(1-4) and (b)(3).   The certification of the Class shall be binding only with respect to the Settlement and only shall be effective if the Judgment becomes Final.

27.     Promptly after this Stipulation has been fully executed, Lead Counsel shall apply to the Court for entry of an Order for Notice and Hearing, substantially in the form attached hereto as Exhibit A, which Order shall, among other provisions, preliminarily approve the Settlement and direct notice thereof to the Class.  The mailing of the Notice and publication of the Publication Notice shall not occur until the Order for Notice and Hearing has been entered.

28.     Any Class Member who wishes to object to the fairness, reasonableness or adequacy of this Stipulation, to the Plan of Allocation, to any term(s) of the Settlement or this Stipulation, to the fee and expense application, or to the compensatory award must both (i) effect service on Lead Counsel and Defendants' Counsel and (ii) file with the Court by no later than fourteen (14) days before the Settlement Hearing, or as the Court may otherwise direct, a statement of all of his, her or its objection(s); *provided however*, that a potential Class Member who submits a request for exclusion from the Class (according to the process described in the Notice) shall not be able to submit an objection.   If a Class Member timely and properly serves and files written objections, as set forth in this paragraph, Lead Counsel and Defendants' Counsel may, as they deem appropriate, submit papers in support of the Stipulation, the Plan of Allocation, any term(s) of this Stipulation, to the fee and expense application, or to the compensatory award no later than three (3) days before the Settlement Hearing.

29.     The statement of objection of a Class Member shall state (i) whether the Class Member is a Class Member, (ii) which part of this Stipulation or Plan/ Fee Application/ or other application or aspect of the Settlement the Class Member objects to and (iii) the specific reason(s), if any, for each such objection made by the Class Member, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member

wishes to introduce in support of such objection. Such Class Member shall also provide documentation sufficient to establish the amount of publicly traded MoneyGram Securities purchased and sold, and the price for and dates of each transaction. Failure to provide such information and documentation shall be grounds to void the objection.

30. Any Class Member who fails to comply with any of this Section shall waive and forfeit any and all rights he, she or it may otherwise have to appear separately at the Settlement Hearing and/or to object to this Stipulation, but nevertheless shall be bound by all the terms of this Stipulation, and by all proceedings, orders, releases and judgments in the Action.

## TERMS OF ORDER AND FINAL JUDGMENT

31. Entry of the Judgment which is in all material respects in the form annexed hereto as Exhibit B shall take place upon the request of the Parties, following preliminary approval of the Settlement by the Court.

## SUPPLEMENTAL AGREEMENT

32. Simultaneously herewith, Lead Counsel and Defense Counsel are executing a "Supplemental Agreement." Unless otherwise directed by the Court, the Supplemental Agreement will not be filed with the Court. MoneyGram may, in accordance with the terms set forth in the Supplemental Agreement, elect in writing to terminate the Settlement and this Stipulation if a certain condition (the "Opt-out Threshold") is met and Lead Counsel is unable to cure this condition in accordance with the terms of the Supplemental Agreement. The Supplemental Agreement and/or any of its terms may be disclosed to the Court for purposes of approval of the Settlement, as may be required by the Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to maintain

the Opt-out Threshold as confidential.  In the event of a termination of this Settlement pursuant to the Supplemental Agreement, this Stipulation and Settlement shall become null and void and of no further force and effect, with the exception of the provisions of ¶¶ 13, 36, and 55, which shall survive and continue to apply.

## EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

33.    The "Effective Date" of the Settlement shall be the first business day after the date on or by which all the following conditions shall have occurred:

(a)    payment of the Settlement Amount pursuant to ¶ 6 herein;

(b)    approval by the Court of the Settlement, following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure;

(c)    entry by the Court of a Judgment, in all material respects in the form set forth in Exhibit B annexed hereto;

(d)    the Judgment becomes Final, or, in the event that the Court enters a judgment that differs from the Judgment in any material respect ("Alternative Judgment") and neither Lead Plaintiff nor MoneyGram elect to terminate this Settlement for failure of the Judgment to have been entered, such Alternative Judgment becomes Final;

(e)    expiration of the time for MoneyGram to exercise its termination rights provided in the Supplemental Agreement and ¶¶ 32 and 35 herein; and

(f)    the later of (i) expiration of the time to exercise the termination rights hereunder, or (ii) if a dispute arises regarding the right to terminate this Settlement and thereby this Stipulation, the resolution of any such dispute as provided in ¶ 34(b) hereof.

34.     (a)    In addition to any other right to terminate set forth above, and unless the Parties and the Carriers agree to proceed, the Settlement shall terminate within thirty (30) days of any of the following:  (i) the Court declining to enter the Order for Notice and Hearing in any material respect; (ii) the Court declining to approve the Settlement as set forth in this Stipulation in any material respect; (iii) the Court declining to enter the Judgment in any material respect; (iv) the date upon which the Judgment is vacated, modified or reversed in any material respect by any level of appellate court; (v) entry by the Court of an Alternative Judgment: or (vi) the date upon which any Alternative Judgment is vacated, modified or reversed in any material respect by any level of appellate court.   Lead Plaintiff shall have the right to terminate the Settlement and thereby this Stipulation if the Settlement Amount is not paid pursuant to this Stipulation, provided that Lead Plaintiff shall have first provided notice to MoneyGram of such failure to make payment, and MoneyGram or the Carriers shall have failed to cure within one business day of receipt of such notice. . Notwithstanding any other provision or paragraph in this Stipulation, no action or inaction by the Court or any appellate court relating solely to (i) any award of attorneys' fees and expenses and/or any award to Lead Plaintiff for reimbursement of costs or expenses pursuant to ¶ 10 hereof, and/or (ii) the Plan of Allocation shall entitle Lead Plaintiff to terminate the Settlement or any part of this Stipulation.

(b)     In the event that either Lead Plaintiff or MoneyGram terminates this Settlement and thereby this Stipulation pursuant to the provisions hereof but the other (or any of the other Defendants) disputes the basis for such termination, Lead Plaintiff, on behalf of itself and the Class, and MoneyGram or the other Defendants agree that (i) in the first instance, they shall consult with Judge Weinstein (or, if he is not available, a mediator agreed upon by the

Parties) in a good faith effort to achieve a mediated resolution of the dispute; and (ii) if such mediation is unsuccessful, then they shall submit such dispute to the Court, which shall have exclusive jurisdiction to resolve and rule on the terminating party's right to terminate pursuant to the provisions of this Stipulation.

35.     Notwithstanding any other provision or paragraph in this Stipulation, MoneyGram may, in accordance with the terms set forth in the Supplemental Agreement, and in its sole discretion, elect in writing to terminate the Settlement and this Stipulation if the Opt-out Threshold is exceeded and not cured in accordance with the terms of the Supplemental Agreement.

36.     Except as otherwise provided herein, in the event the Settlement is terminated pursuant to this Stipulation, the Parties shall be deemed to have reverted to their respective status in the Action and in any other action immediately prior to execution of the Stipulation and, except as otherwise expressly provided herein, shall proceed in all respects as if this Stipulation and any related orders had not been negotiated, executed, or entered.  Furthermore, within sixty (60) business days following any termination of this Settlement, Lead Counsel will repay into the Gross Settlement Fund any amount that has already been paid to Lead Counsel for attorneys' fees and expenses (together with interest thereon at the same rate as is earned on the Gross Settlement Fund), and Lead Plaintiff will repay into the Gross Settlement Fund any amount that has already been paid to Lead Plaintiff as reasonable costs and expenses (together with interest thereon at the same rate as is earned on the Gross Settlement Fund).  The Escrow Agent shall then promptly pay to MoneyGram and/or the Carriers an amount equal to the Settlement Amount together with any interest or other income earned thereon or in respect thereof while held in

escrow, less any Taxes paid, less any amounts required to be paid to the Escrow Agent pursuant to the relevant escrow agreement, and less any reasonable costs of administration and notice actually incurred and paid or payable from the Settlement Amount as described in ¶ 14 hereof, less any applicable withholding taxes, with each of MoneyGram and the Carriers receiving an amount equal to the amount originally contributed by them to the Settlement Amount, plus accrued interest, subject to the amounts deducted pursuant to this paragraph.

## NO ADMISSION OF WRONGDOING

37.     Defendants have denied and continue to deny, *inter alia*, that Lead Plaintiff and the Class have suffered any or all damages alleged in the Consolidated Amended Complaint; that the price of MoneyGram's securities was artificially inflated by reason of any alleged misrepresentations, omissions, or otherwise; that Defendants acted fraudulently or wrongfully in any way; or that the alleged harm suffered by Lead Plaintiff and the Class, if any, were causally linked to any alleged misrepresentations or omissions in the Action. In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Action.

38.     Nonetheless, taking into account the uncertainty and risks inherent in any litigation, especially in complex cases such as this one, Defendants have concluded that further litigation of the Action would be protracted, burdensome, and expensive, and that it is desirable and beneficial to them that they secure releases to the fullest extent permitted by law and that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Stipulation.

39.     This Stipulation, whether or not consummated, and the negotiations hereof and any related communications made, proceedings taken, or orders entered pursuant hereto:

(a)       shall not be offered or received against, or otherwise prejudice, any Released Person as evidence of, or be construed as or deemed to be evidence of, any presumption, concession, or admission by any Released Person with respect to the truth of any fact alleged by any Class Member or Lead Plaintiff or the validity of any claim that has been or could have been asserted in the Action or in any other action, or the deficiency of any defense that has been or could have been asserted in the Action or in any other action, or of any liability, negligence, fault, damage, or wrongdoing of or by any Released Person;

(b)       shall not be offered or received against, or otherwise prejudice, any Released Person as evidence of, or be construed as or deemed to be evidence of, any presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Released Person;

(c)       shall not be offered or received against, or otherwise prejudice, any Released Person as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing in any other civil, criminal or administrative, arbitral or other action or proceeding; provided, however, that if this Stipulation is approved by the Court, the Released Persons may offer or refer to it to effectuate its terms, including the releases granted them hereunder;

(d)       shall not be construed against, or otherwise prejudice any Released Person as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

(e)       shall not be construed as or received in evidence as an admission, concession or presumption against, or otherwise prejudice, the Lead Plaintiff or any of the Class

Members that any of their claims are without merit, or that any defenses asserted by Defendants have any merit, or that damages recoverable under the Action would not have exceeded the Settlement Amount.

## PSLRA FINDINGS

40.     The parties agree for the purpose of this Court's findings and conclusions pursuant to Section 21D(c)(1) of the Exchange Act, as amended by the PSLRA, 15 U.S.C. § 78u-4(c)(1), that Lead Plaintiff, Lead Counsel, Defendants, and Defense Counsel have complied with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading or dispositive motion.

## MISCELLANEOUS PROVISIONS

41.     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

42.     The Parties intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Class Members against the Released Persons or any of them with respect to the Settled Plaintiffs' Claims.  Accordingly, Lead Plaintiff, on behalf of itself and the Class, MoneyGram and the Individual Defendants agree not to assert in any forum that the Action was brought by Lead Plaintiff or any Class Member or defended by MoneyGram or the Individual Defendants in those actions in bad faith or without a reasonable basis. The Parties shall assert no claims of any violation of Rules 11 or 37 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Action. The Parties affirm that they are aware of no facts or circumstances that would give rise to any violations of Rules 11 or 37 of the Federal Rules of Civil Procedure relating to this Action. The Parties shall

request that the Court, in connection with its entry of the Judgment, make specific findings of fact that Lead Plaintiff, through Lead Counsel initiated, maintained and prosecuted the Action in good faith and in accordance with Lead Counsel's obligations under Rules 11 and 37 of the Federal Rules of Civil Procedure.

43.     The Released Persons may file or cite the Stipulation, the Bar Order, and/or the Judgment in any action that may be brought by or against them in order to support a defense, claim or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

44.     Lead Plaintiff, on behalf of itself and the Class, MoneyGram and the Defendants agree that the Settlement Amount paid and the other terms of the Settlement were negotiated at arm's length in good faith, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

45.     In the event that Lead Plaintiff or MoneyGram or any Released Person institutes any legal action against any other party hereto to enforce the provisions of the Settlement or this Stipulation or to declare rights or obligations under the Settlement or this Stipulation prior to or after the Effective Date, the successful Party or Parties shall be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs incurred in connection with any such enforcement action.

46.     Whenever this Stipulation requires or contemplates that a Party shall or may give notice to the other, notice shall be provided by facsimile, electronic mail, or next-day (excluding Saturday and Sunday) express delivery service as follows and shall be deemed

effective upon such transmission or delivery, to the facsimile number or address, as the case may be, set forth below:

If to Defendants, then to:

> Joseph S. Allerhand
> **WEIL, GOTSHAL & MANGES LLP**
> 767 Fifth Avenue
> New York, New York 10153
> Telephone:    (212) 310-8000
> Facsimile:    (212) 310-8007

> Michael J. Bleck
> Bret A. Puls
> **OPPENHEIMER WOLFF & DONNELLY LLP**
> Plaza VII, Suite 3300
> 45 South Seventh Street
> Minneapolis, MN 55402-1609
> Telephone: 612-607-7000
> Facsimile: 612-607-7100

If to Lead Plaintiff, then to:

> Bradley E. Beckworth
> Jeffrey J. Angelovich
> Brad E. Seidel
> Susan Whatley
> **NIX, PATTERSON & ROACH LLP**
> 205 Linda Drive
> Daingerfield, TX 75638
> Telephone: 903-645-7333
> Facsimile: 903-645-4415

·   47.   Nothing in this Stipulation or the negotiations or proceedings relating to this Stipulation and the Settlement is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity.

48.     This Stipulation may not be modified or amended, nor may any of its paragraphs or provisions be waived, except by a writing signed by MoneyGram, the Individual Defendants, and the Lead Plaintiff, on behalf of themselves and the Class, or their successors-in-interest.

49.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

50.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and expenses to Lead Counsel, enforcing the terms of this Stipulation, and resolving any disputes that may arise in connection with this Stipulation or the Settlement.

51.     The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent such breach of this Stipulation, nor shall it be deemed a waiver by that Party or any other Party of any other breach.

52.     This Stipulation and its exhibits, the Supplemental Agreement, and any related escrow agreements supersede all prior agreements and constitute the entire agreement concerning the Settlement of the Action. No representations, warranties, or inducements have been made by or on behalf of any Party hereto concerning this Stipulation, its exhibits, and the Supplemental Agreement other than those contained and memorialized in such documents; and each Party disclaims any reliance upon the making or completeness of any representation, warranty, or inducement, not set forth herein.

53.     This Stipulation may be executed in one or more counterparts including by signature transmitted by facsimile or scanned image. All executed counterparts and each of them shall be deemed to be one and the same instrument, but no Party shall be bound unless and until all Parties have executed this Stipulation.

54.     This Stipulation shall be binding upon, and inure to the benefit of, the Parties and the Released Persons and their respective agents, executors, heirs, successors and assigns.

55.     All agreements made and orders entered during the course of the Action relating to confidentiality of information shall survive the execution, performance, and/or termination of this Stipulation.

56.     The construction and interpretation of this Stipulation and the Supplemental Agreement shall be governed by the internal laws of the State of Minnesota without regard to conflicts of laws, except to the extent that federal law of the United States requires that federal law, including Rule 23 of the Federal Rules of Civil Procedure, govern.

57.     This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and that all Parties have contributed substantially and materially to the preparation of this Stipulation.

58.     All counsel and any other person executing this Stipulation, any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

59.    The Settlement shall be binding when signed by all Parties, but the Settlement shall be effective only upon the Effective Date occurring.

60.    The Parties agree to cooperate fully with one another in seeking Court approval of the Order for Notice and Hearing, the Stipulation and the Settlement, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

Dated:  March 9, 2010

NIX, PATTERSON & ROACH LLP

By:

Bradley E. Beckworth
Jeffrey J. Angelovich
Brad E. Seidel
Susan Whatley
205 Linda Drive
Daingerfield, TX 75638
Telephone: 903-645-7333
Facsimile: 903-645-4415

*Attorneys for Lead Plaintiff and the Class*


CHESTNUT CAMBRONNE PA

By:

Karl L. Cambronne
Jeffrey D. Bores
Jack L. Chestnut
Bryan L. Bleichner
17 Washington Avenue North
Suite 300
Minneapolis, MN 55401-2048
Telephone:(612) 339-3700
Facsimile: (612) 336-2940

*Counsel for Plaintiff*


WEIL, GOTSHAL & MANGES LLP

By:

Joseph S. Allerhand
Paul A. Ferrillo
Michael J. Firestone
767 Fifth Avenue
New York, NY  10153-0119
Telephone: 212-310-8000
Facsimile: 212-310-8007

*Attorneys for MoneyGram International, Inc.*


OPPENHEIMER WOLFF & DONNELLY LLP

By:

Michael J. Bleck
Bret A. Puls
Plaza VII, Suite 3300
45 South Seventh Street
Minneapolis, MN 55402-1609
Telephone: 612-607-7000
Facsimile: 612-607-7100

*Attorneys for MoneyGram International, Inc.,
William J. Putney, Jean C. Benson, Philip W.
Milne, David J. Parrin, Douglas L. Rock, Donald
E. Kiernan, Othón Ruiz Montemayor, Albert M.
Teplin, and Monte E. Ford.*