## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| In re MoneyGram International, Inc.<br>Securities Litigation | ) <br> ) Consolidated Case No.:  Civ. No. 08-883 <br> ) (DSD/JJG) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DECLARATION OF JEFFREY D. BORES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE SETTLEMENT AND FOR AN AWARD OF ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES, AND REIMBURSEMENT TO LEAD PLAINTIFF

_____

Jeffrey D. Bores, being first duly sworn under oath, deposes and states:

1.      I am a member of Chestnut Cambronne PA, one of the law firms representing the Oklahoma Teachers' Retirement System.  This Declaration is based upon my personal knowledge, and I am competent to testify about matters in the Declaration.  The purpose of this Declaration is to make available to the Court authority, which is not readily available through computer-assisted legal research, that is cited in the Memorandum of Law in Support of the Lead Plaintiffs' Motion for Final Approval of the Settlement and for an Award of Attorney's Fees, Reimbursement of Expenses, and Reimbursement to Lead Plaintiff.

1

2.      Attached as Exhibit A is a true and correct copy of *In re Brocade Sec. Litig.*, No. 3:05-cv-02042-CRB (N.D. Cal. Jan. 26, 2009) (Breyer, J.).

3.      Attached as Exhibit B is a true and correct copy of *Gordon v. Am. Adjustable Rate Term Trust*, No. 4-95-666 (D. Minn. Sept. 3, 1996) (Doty, J.).

4.      Attached as Exhibit C is a true and correct copy of *In re Int'l Rectifier Corp. Sec. Litig.*, No. CV 07-02544-JFW (VBKx), slip op. at 1 (C.D. Cal. Feb. 8, 2010).

5.      Attached as Exhibit D is a true and correct copy of *Cooper v. Miller Johnson Steichen Kinnard, Inc.*, No. 02-CV-1236 RHK/AJB (D. Minn. July 22, 2003) (Kyle, J.).

6.      Attached as Exhibit E is a true and correct copy of *In re Select Comfort Corp. Sec. Litig.*, No. 99-884 (D. Minn. Feb. 28, 2003) (Doty, J.).

7.      Attached as Exhibit F is a true and correct copy of *In re E.W. Blanch Holdings, Inc. Sec. Litig.* No. 01-258 (JNE/JGL) (D. Minn. June 16, 2003) (Erickson, J.).

8.      Attached as Exhibit G is a true and correct copy of  *KK Motors v. Brunswick Corp.*, No. 98-2307 (D. Minn. March 6, 2000).

9.      Attached as Exhibit H is a true and correct copy of *In re LaserMaster Tech., Inc. Sec. Litig.*, No. 4-95-CV-631 (D. Minn. Oct. 9, 1997) (Rosenbaum, J.).

10.   Attached as Exhibit I is a true and correct copy of *First Presbyterian Church v. John G. Kinnard & Co.*, No. 3-94-1024 (D. Minn. Dec. 12, 1995) (Davis, J.).

11.   Attached as Exhibit J is a true and correct copy of *In re Control Data Sec. Litig.*, No. 3-85-1341 (D. Minn. Sept. 23, 1994).

I declare under penalty of perjury under the laws of the United States of America, particularly 28 U.S.C. § 1746, that the foregoing is true and correct and that this Declaration was executed on the 1st day of June, 2010 in Minneapolis, Minnesota.

Dated:      June 1, 2010              s/Jeffrey D. Bores_____
                                      Jeffrey D. Bores

# EXHIBIT A

1    Jeffrey J. Angelovich (admitted *Pro Hac Vice*)   Laurence D. King (State Bar No. 206423)
2    Bradley E. Beckworth (admitted *Pro Hac Vice*)   Linda M. Fong (State Bar No. 124232)
     Susan Whatley (admitted *Pro Hac Vice*)   KAPLAN FOX & KILSHEIMER LLP
3    NIX, PATTERSON & ROACH, L.L.P.   555 Montgomery Street, Suite 1501
     205 Linda Drive   San Francisco, CA 94111
4    Daingerfield, Texas 75638   Telephone: 415-772-4700
     Telephone: 903-645-7333   Facsimile:  415-772-4707
5    Facsimile: 903-645-4415   LKing@KaplanFox.com
     JAngelovich@nixlawfirm.com   LFong@KaplanFox.com
6    BBeckworth@nixlawfirm.com
     SusanWhatley@nixlawfirm.com   Liaison Counsel
7
     Sean Rommel (admitted *Pro Hac Vice*)   Sean M. Handler (admitted *Pro Hac Vice*)
8    PATTON ROBERTS, PLLC   John A. Kehoe
     Century Bank Plaza   SCHIFFRIN BARROWAY TOPAZ &
9    2900 St. Michael Drive, Suite 400   KESSLER LLP
     Texarkana, TX 75505-6128   280 King of Prussia Rd.
10   Telephone: 903-334-7000   Radnor, PA 19087
     Facsimile: 903-330-7007   Telephone: 610-667-7706
11   srommel@pattonroberts.com   Facsimile: 620-677-7056
                                     shandler@sbtklaw.com
12   Co-Lead Counsel   jkehoe@sbtklaw.com

13                                   Additional Counsel for Erie

14                   UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16                    SAN FRANCISCO DIVISION

17

18   ————————————————————————  )   Consolidated Case No.: 3:05-CV-02042-CRB
                                )
19                              )
                                )
20   **In re: BROCADE SECURITIES**   )   **FINAL ORDER AND JUDGMENT**
     **LITIGATION**             )
21                              )
                                )
22                              )
                                )
23                              )
                                )
24                              )
                                )
25                              )
     ————————————————————————  )
26

27                                 1

28                                         No. 3:05-CV-02042-CRB

1    WHEREAS, a consolidated class action is pending in this Court captioned: *In re: Brocade*

2    *Securities Litigation*, Consolidated Case No. 3:05-CV-02042-CRB (the "Action");

3    WHEREAS, the Court previously certified the Class (as defined herein) in this Action by

4    Order dated October 12, 2007, over the opposition of defendants Brocade Communications Systems,

5    Inc. ("Brocade" or the "Company") and Gregory Reyes, Antonio Canova, Larry Sonsini, Seth

6    Neiman, and Neal Dempsey (collectively, "Individual Defendants");

7    WHEREAS, on November 18, 2008, the Court preliminarily certified the same Class for

8    purposes of effectuating the settlement among Lead Plaintiff and Class Representative, Arkansas

9    Public Employees Retirement System ("APERS"), and Class Representative, Erie County Public

10   Employees Retirement System ("ERIE") (together, "Class Representatives"), and KPMG LLP

11   ("KPMG" and, collectively with Brocade and the Individual Defendants, "Defendants");

12   WHEREAS, pursuant to Federal Rule of Civil Procedure 23(e), this matter came before the

13   Court for hearing pursuant to the Preliminary Approval of Settlement Agreement Order dated

14   November 18, 2008 (the "Notice Order"), on the application of the parties for approval of a

15   proposed settlement of the Action (the "Settlement") set forth in the following stipulations: (i) a

16   Modified Stipulation and Agreement of Settlement dated January 14, 2009 entered into among Class

17   Representatives, on behalf of themselves and the Class, Brocade and the Individual Defendants (the

18   "Brocade Stipulation"), and (ii) a Stipulation and Agreement of Settlement dated October 23, 2008

19   entered into among Class Representatives, on behalf of themselves and the Class, and KPMG (the

20   "KPMG Stipulation," and together with the Brocade Stipulation, the "Stipulations");

21   WHEREAS, due and adequate notice has been given to the Class as required in the Notice

22   Order; and

23   WHEREAS, the Court has considered all papers filed and proceedings had herein and

24   otherwise is fully informed in the premises and good cause appearing therefor;

25   IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

26

27                                          2

28                                          No. 3:05-CV-02042-CRB

1          1.     This Order and Final Judgment (the "Judgment") incorporates by reference the

2 definitions in the Stipulations and all terms used herein shall have the same meanings as set forth

3 in the Stipulations unless otherwise defined herein.

4          2.     This Court has jurisdiction over the subject matter of the Action, and over all parties

5 to the Action (the "Parties"), including all members of the Class.

6          3.     The Notice of Class Action, Proposed Settlement, Motion for Attorneys' Fees and

7 Fairness Hearing (the "Notice") has been given to the Class, pursuant to and in the manner directed

8 by the Notice Order, proof of the mailing of the Notice and publication of the Publication Notice

9 was filed with the Court by Plaintiffs' Counsel, and full opportunity to be heard has been offered

10 to all Parties, the Class, and persons and entities in interest. The form and manner of Notice and

11 Publication Notice are hereby determined to have: (a) constituted the best practicable notice, (b)

12 constituted notice that was reasonably calculated, under the circumstances, to apprise Class

13 Members of the pendency of the Action, of the effect of the Stipulations, including the effect of the

14 releases provided for therein, of their right to object to the proposed Settlement, of their right to

15 exclude themselves from the Class, and of their right to appear at the Fairness Hearing, (c)

16 constituted reasonable, due, adequate and sufficient notice to all persons or entities entitled to

17 receive notice, and (d) met all applicable requirements of the Federal Rules of Civil Procedure, the

18 United States Constitution (including the Due Process Clause), 15 U.S.C. § 78u-4(a)(7), the Rules

19 of the Court and all other applicable laws. It is further determined that all members of the Class are

20 bound by the Judgment herein.

21          4.     In connection with the certification of the Class, the Court has already determined

22 that each element Federal Rule of Civil Procedure 23(a) and 23(b)(3) was satisfied as to Class

23 Representatives' claims against Brocade and the Individual Defendants and incorporates that prior

24 order as if set forth fully herein. Additionally, for purposes of effectuating the Settlement, each of

25 the provisions of Fed. R. Civ. P. 23 has been satisfied and the Action has been properly maintained

26 according to the provisions of Rules 23(a) and 23(b)(3) as to Class Representatives' claims against

27

28                           No. 3:05-CV-02042-CRB

1   KPMG. Specifically, this Court finds that: (a) the Class is so numerous that joinder of all members

2   is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the

3   Class Representatives are typical of the claims of the Class; (d) Class Representatives and their

4   counsel have fairly and adequately protected the interests of the Class; (e) the questions of law and

5   fact common to members of the Class predominate over any questions affecting only individual

6   members of the Class; and (f) a class action is superior to other available methods for the fair and

7   efficient adjudication of the controversy considering: (i) the interests of the Class Members in

8   individually controlling the prosecution of the separate actions, (ii) the extent and nature of any

9   litigation concerning the controversy already commenced by members of the Class, (iii) the

10  desirability or undesirability of continuing the litigation of the claims asserted in this Action, and

11  (iv) the difficulties likely to be encountered in the management of this Action as a class action.

12      5.      Accordingly, the Action is hereby certified as a class action pursuant to Fed. R. Civ.

13  P. 23(a) and 23(b)(3) for purposes of effectuating the Settlement with KPMG on behalf of the same

14  Class previously certified in this Action, which consists of: all persons and entities who purchased

15  or otherwise acquired Brocade common stock between May 18, 2000 and May 15, 2005, inclusive,

16  and who were damaged thereby (the "Class"). Excluded from the Class are: (a) Defendants; (b) all

17  officers, directors, and partners of any Defendant and of any Defendant's partnerships, subsidiaries,

18  or affiliates at all relevant times; (c) members of the immediate family of any of the foregoing

19  excluded parties; (d) the legal representatives, heirs, successors, and assigns of any of the foregoing

20  excluded parties; and (e) any entity in which any of the foregoing excluded parties has or had a

21  controlling interest at all relevant times.  Also excluded from the Class are any putative members

22  of the Class who excluded themselves by timely requesting exclusion in accordance with the

23  requirements set forth in the Notice, as listed on Exhibit 1 annexed hereto.

24      6.      The Settlement, and all transactions preparatory or incident thereto, is found to be

25  fair, reasonable, adequate, and in the best interests of the Class, and is hereby approved.  The

26  Parties are hereby authorized and directed to comply with and to consummate the Settlement in

27                                  4

28                                                  No. 3:05-CV-02042-CRB

1   accordance with the Stipulations, and the Clerk of this Court is directed to enter and docket this

2   Judgment in the Action.

3         7.     The Action and all claims included therein, as well as all of the Settled Claims

4   (defined in the Stipulations and in Paragraph 8(c) below) are dismissed with prejudice as to Class

5   Representatives and all other members of the Class, and as against each and all of the Released

6   Parties (defined in the Stipulations and in Paragraph 8(a) below).  The Parties are to bear their own

7   costs, except as otherwise provided in the Stipulations.

8         8.     As used in this Judgment, the terms "Released Parties," "Related Parties," "Settled

9   Claims," "Settled Defendants' Claims," and "Unknown Claims" shall have the meanings set forth

10   below:

11        (a)     "Released Parties" means Defendants and, as applicable, each of their Related Parties

12   as defined below.

13        (b)     "Related Parties" means each of Defendants' past or present directors, officers,

14   employees, partners, principals, members, insurers, co-insurers, re-insurers, controlling shareholders,

15   attorneys, advisors, accountants, auditors, personal or legal representatives, predecessors, successors,

16   parents, subsidiaries, divisions, joint ventures, assigns, spouses, heirs, related or affiliated entities,

17   any entity in which a Defendant has a controlling interest, any member of any Individual

18   Defendant's immediate family, or any trust of which any Individual Defendant is the settlor or which

19   is for the benefit of any member of an Individual Defendant's immediate family.

20        (c)     "Settled Claims" means and includes any and all claims, debts, demands,

21   controversies, obligations, losses, rights or causes of action or liabilities of any kind or nature

22   whatsoever (including, but not limited to, any claims for damages (whether compensatory, special,

23   incidental, consequential, punitive, exemplary or otherwise), injunctive relief, declaratory relief,

24   rescission or rescissionary damages, interest, attorneys' fees, expert or consulting fees, costs,

25   expenses, or any other form of legal or equitable relief whatsoever), whether based on federal, state,

26   local, statutory or common law or any other law, rule or regulation, whether fixed or contingent,

27                                    5

28                                   No. 3:05-CV-02042-CRB

1    accrued or un-accrued, liquidated or unliquidated, at law or in equity, matured or unmatured,

2    whether class or individual in nature, including both known claims and Unknown Claims (defined

3    herein) that: (i) have been asserted in this Action by Class Representatives on behalf of the Class

4    and its Class Members against any of the Released Parties, or (ii) have been or could have been

5    asserted in any forum by Class Representatives, Class Members or any of them against any of the

6    Released Parties, which arise out of, relate to or are based upon the allegations, transactions, facts,

7    matters, occurrences, representations or omissions involved, set forth, or referred to in the Complaint

8    and/or the Amended Complaint.  Settled Claims shall also include any claims, debts, demands,

9    controversies, obligations, losses, rights or causes of action that Class Representatives, Class

10    Members or any of them may have against the Released Parties or any of them which involve or

11    relate in any way to the defense of the Action or the Settlement of the Action.  Notwithstanding the

12    foregoing, Settled Claims shall not include: (i) any claims to enforce the Settlement, including,

13    without limitation, any of the terms of the Stipulations, the Notice Order, this Judgment or any other

14    orders issued by the Court in connection with the Settlement; (ii) any claims asserted by Persons

15    who exclude themselves from the Class by timely requesting exclusion in accordance with the

16    requirements set forth in the Notice; (iii) any claims, rights or causes of action that have been or

17    could have been asserted in the Derivative Actions and/or the Company Action (as defined in the

18    Brocade Stipulation); or (iv) any and all claims that have been asserted under the Securities Act of

19    1933 and the Securities Exchange Act of 1934, or any other laws, for the allegedly wrongful conduct

20    complained of in *In re Brocade Communications Systems, Inc. Initial Public Offering Securities*

21    *Litigation,* 01 CV 6613 (SAS)(BSJ), as coordinated for pretrial purposes in *In re Initial Public*

22    *Offering Securities Litigation,* Master File No. 21 MC 92 (SAS), pending in the United States

23    District Court for the Southern District of New York.

24    (d)    "Settled Defendants' Claims" means and includes any and all claims, debts, demands,

25    controversies, obligations, losses, costs, rights or causes of action or liabilities of any kind or nature

26    whatsoever (including, but not limited to, any claims for damages (whether compensatory, special,

27    6

28    No. 3:05-CV-02042-CRB

1   incidental, consequential, punitive, exemplary or otherwise), injunctive relief, declaratory relief,

2   rescission or rescissionary damages, interest, attorneys' fees, expert or consulting fees, costs,

3   expenses, or any other form of legal or equitable relief whatsoever), whether based on federal, state,

4   local, statutory or common law or any other law, rule or regulation, whether fixed or contingent,

5   accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured,

6   including both known claims and Unknown Claims, that have been or could have been asserted in

7   the Action or any forum by the Released Parties against any of the Class Representatives, Plaintiffs'

8   Counsel, Class Members or their attorneys, which arise out of or relate in any way to the institution,

9   prosecution, or settlement of the Action. Notwithstanding the foregoing, Settled Defendants' Claims

10  shall not include any claims to enforce the Settlement, including, without limitation, any of the terms

11  of the Stipulations, the Notice Order, this Judgment or any other orders issued by the Court in

12  connection with the Settlement .

13      (e)      "Unknown Claims" means any and all claims that any Class Representative or Class

14  Member does not know or suspect to exist and any and all claims that any Defendant does not know

15  or suspect to exist in his, her or its favor at the time of the release of the Released Parties which, if

16  known by him, her or it, might have affected his, her or its settlement with and release of, as

17  applicable, the Released Parties, Class Representatives, and Class Members, or might have affected

18  his, her or its decision to object or not to object to this Settlement. The Class Representatives, Class

19  Members, Defendants and each of them have acknowledged and agreed that he, she or it may

20  hereafter discover facts in addition to or different from those which he, she or it now knows or

21  believes to be true with respect to the subject matter of the Settled Claims and/or the Settled

22  Defendants' Claims.   Nevertheless, with respect to any and all Settled Claims and Settled

23  Defendants' Claims, the Parties to the Stipulations have stipulated and agreed that, upon the

24  Effective Date, they shall expressly waive and each of the Class Members shall be deemed to have,

25  and by operation of the Judgment shall have, waived all provisions, rights and benefits of California

26  Civil Code § 1542 and all provisions rights and benefits conferred by any law of any state or

27                                              7

1     territory of the United States, or principle of common law, which is similar, comparable or

2     equivalent to California Civil Code § 1542. California Civil Code § 1542 provides:

3     **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER**

4     **FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS**

5     **OR HER SETTLEMENT WITH THE DEBTOR.**

6     The Parties to the Stipulations have expressly acknowledged and agreed, and the Class Members

7     shall be deemed to have, and by operation of the Judgment shall have acknowledged and agreed, that

8     the waiver and release of Unknown Claims constituting Settled Claims and/or Settled Defendants'

9     Claims was separately bargained for and a material element of the Settlement.

10         9.     (a)     In accordance with 15 U.S.C. § 78u-4(f)(7)(A), any and all claims for

11     contribution arising out of any Settled Claim (i) by any person against Brocade or the Individual

12     Defendants, and (ii) by Brocade or the Individual Defendants against any person, other than claims

13     for contribution that Brocade and/or the Special Litigation Committee (as defined in the Brocade

14     Stipulation) have asserted or may assert against the Individual Defendants, the Related Parties or

15     any of them, are hereby permanently barred and discharged. In accordance with 15 U.S.C. § 78u-

16     4(f)(7)(A), any and all claims for contribution arising out of any Settled Claim (i) by any person

17     against KPMG, and (ii) by KPMG against any person, other than a person whose liability has been

18     extinguished by the KPMG Settlement, are hereby permanently barred and discharged. This

19     paragraph 9(a) shall be referred to herein as the "Bar Order."

20         (b)     Notwithstanding the Bar Order or any other provision or paragraph in this

21     Judgment or 15 U.S.C. § 78u-4(f)(7)(A) to the contrary, the Individual Defendants have

22     acknowledged and agreed, and the Court finds, that the Individual Defendants are "person[s]

23     whose liability has been extinguished" by the Brocade Stipulation within the meaning of 15 U.S.C.

24     § 78u-4(f)(7)(A)(ii). Further, the Court finds that the Individual Defendants have knowingly and

25     expressly waived the right to assert the Bar Order or 15 U.S.C. § 78u-4(f)(7)(A) as a defense to

26     any claims for contribution that Brocade and/or the Special Litigation Committee have asserted

27              8

28              No. 3:05-CV-02042-CRB

1   or may assert against them in connection with the defense and Settlement of the Action or any

2   related litigation arising from the transactions and occurrences that form the basis of the Action;

3   provided, however, that the Individual Defendants and their Related Parties, and each of them,

4   shall retain the right to defend against any such claims for contribution on other grounds,

5   including, without limitation: (i) that he or she is not at fault for the conduct giving rise to the

6   Settlement; (ii) that his or her proportional fault is less than asserted by Brocade and/or the Special

7   Litigation Committee; (iii) that Brocade is legally and/or contractually obligated to indemnify him

8   or her for some or all of the Settlement Amount and/or that he or she is not required to reimburse

9   or repay Brocade for that indemnified amount; and (iv) that the Settlement Amount is greater than

10  warranted under all of the circumstances. Further, Brocade and the Special Litigation Committee

11  have agreed that they will not argue or otherwise assert in any forum or proceeding that (i) by

12  entering into the Brocade Stipulation the Individual Defendants acquiesced in the Settlement

13  Amount or waived in any way their arguments challenging the Settlement Amount as excessive,

14  and (ii) the Bar Order in any way affects or impairs the existing rights of the Individual Defendants

15  to obtain indemnification and advancement of fees incurred in connection with Settled Claims or

16  any other claim asserted against them.  The Individual Defendants have agreed that they will not

17  argue or otherwise assert in any forum or proceeding that, by entering into the Brocade

18  Stipulation, Brocade or the Special Litigation Committee in any way compromised or otherwise

19  affected its/their right to seek to limit or extinguish any purported obligation to indemnify or

20  advance fees to the Individual Defendants and their Related Parties or to seek to recover any of

21  the fees or expenses that Brocade has advanced or may advance on behalf of or for the benefit of

22  the Individual Defendants and/or their Related Parties.

23          10.     Upon the Effective Date, Class Representatives and all Class Members on behalf

24  of themselves, their personal representatives, heirs, executors, administrators, trustees, successors

25  and assigns: (a) shall have fully, finally and forever released, relinquished and discharged each and

26  every one of the Settled Claims against the Released Parties, whether or not any such Class Member

27                                          9

28                                          No. 3:05-CV-02042-CRB

1    or Class Representative executes or delivers a Proof of Claim and Release form ("Proof of Claim");

2    and (b) shall be deemed to have covenanted not to sue on, and shall forever be barred from suing

3    on, instituting, prosecuting, continuing, maintaining or asserting in any forum, either directly or

4    indirectly, on their own behalf or on behalf of any class or other person, any Settled Claim against

5    any of the Released Parties.

6        11.    Upon the Effective Date, each of the Defendants, on behalf of themselves and their

7    Related Parties: (a) shall have fully, finally and forever released, relinquished and discharged each

8    and every one of the Settled Defendants' Claims; and (b) shall be deemed to have covenanted not

9    to sue on, and shall forever be barred from suing on, instituting, prosecuting, continuing, maintaining

10    or asserting in any forum, either directly or indirectly, on their own behalf or on behalf of any class

11    or other person, any Settled Defendants' Claim against Class Representatives, Class Members and

12    their respective counsel, or any of them.

13        12.    Notwithstanding ¶¶ 9-11 herein, nothing in this Judgment shall bar any action or

14    claim by any of the Parties or the Released Parties to enforce or effectuate the terms of the

15    Stipulations or this Judgment.

16        13.    This Judgment and the Stipulations, including any provisions contained in the

17    Stipulations, any negotiations, statements, or proceedings in connection therewith, or any action

18    undertaken pursuant thereto:

19        (a)    shall not be offered or received against any Released Party as evidence of or

20    construed as or deemed to be evidence of any presumption, concession, or admission by the

21    Released Parties with respect to the truth of any fact alleged by any of the plaintiffs or the validity

22    of any claim that has been or could have been asserted in the Action or in any litigation, or the

23    deficiency of any defense that has been or could have been asserted in the Action or in any litigation,

24    or of any liability, negligence, fault, or wrongdoing of any Released Party;

25        (b)    shall not be offered or received against any Released Party as evidence of a

26    presumption, concession or admission of any fault, misrepresentation or omission with respect to

27                10

1   any statement or written document approved or made by any Released Party;

2       (c)    shall not be offered or received against any Released Party as evidence of a

3   presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing

4   in any civil, criminal or administrative action or proceeding, other than such proceedings as may be

5   necessary to effectuate the provisions of the Stipulations; provided, however, that the Released

6   Parties may offer or refer to the Stipulations to effectuate the terms of the Stipulations, including the

7   releases and other liability protection granted them hereunder, and may file the Stipulations and/or

8   this Judgment in any action that may be brought against them (other than one that has been or may

9   be brought by Brocade and/or the Special Litigation Committee) in order to support a defense or

10   counterclaim based on principles of res judicata, collateral estoppel, full faith and credit, release,

11   good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue

12   preclusion or similar defense or counterclaim;

13       (d)    shall not be construed against any Released Party as an admission or concession that

14   the consideration to be given hereunder represents the amount that could be or would have been

15   recovered after trial; and

16       (e)    shall not be construed as or received in evidence as an admission, concession or

17   presumption against the Class Representatives or any of the Class Members that any of their claims

18   are without merit, or that any defenses asserted by Defendants have any merit, or that damages

19   recoverable under the Action would not have exceeded the Settlement Amount.

20       14.    The Plan of Allocation is approved as fair and reasonable, and Plaintiffs' Counsel

21   and the Claims Administrator are directed to administer the Settlement in accordance with the terms

22   and provisions of the Stipulations.

23       15.    The Court finds that all Parties and their counsel have complied with each

24   requirement of the PSLRA and Rules 11 and 37 of the Federal Rules of Civil Procedure as to all

25   proceedings herein and that Class Representatives and Plaintiffs' Counsel at all times acted in the

26   best interests of the Class and had a good faith basis to bring, maintain and prosecute this Action as

27                               11

28                                       No. 3:05-CV-02042-CRB

1 to each Defendant in accordance with the PSLRA and Federal Rule of Civil Procedure 11.

2   16. Only those Class Members who submit valid and timely Proofs of Claim shall be

3 entitled to receive a distribution from the Net Settlement Fund. The Proof of Claim to be executed

4 by the Class Members shall further release all Settled Claims against the Released Parties. All Class

5 Members shall be bound by all of the terms of the Stipulations and this Judgment, including the

6 releases set forth herein, whether or not they submit a valid and timely Proof of Claim, and shall be

7 barred from bringing any action against any of the Released Parties concerning the Settled Claims.

8   17. No Class Member shall have any claim against Plaintiffs' Counsel, the Claims

9 Administrator, or other agent designated by Plaintiffs' Counsel based on the distributions made

10 substantially in accordance with the Settlement and Plan of Allocation as approved by the Court and

11 further orders of the Court.

12   18. No Class Member shall have any claim against the Defendants, Defendants' counsel,

13 or any of the Released Parties with respect to: (a) any act, omission or determination of Plaintiffs'

14 Counsel, the Escrow Agent or the Claims Administrator, or any of their respective designees or

15 agents, in connection with the administration of the Settlement or otherwise; (b) the management,

16 investment or distribution of the Gross Settlement Fund and/or the Net Settlement Fund; (c) the Plan

17 of Allocation; (d) the determination, administration, calculation or payment of claims asserted

18 against the Gross Settlement Fund and/or the Net Settlement Fund; (e) the administration of the

19 Escrow Account; (f) any losses suffered by, or fluctuations in the value of, the Gross Settlement

20 Fund and/or the Net Settlement Fund; or (g) the payment or withholding of any Taxes, expenses

21 and/or costs incurred in connection with the taxation of the Gross Settlement Fund and/or the Net

22 Settlement Fund or the filing of any tax returns.

23   19. Any order approving or modifying the Plan of Allocation set forth in the Notice, or

24 the application by Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of expenses

25 or any request of Class Representatives for reimbursement of reasonable costs and expenses shall

26 not disturb or affect the Finality of this Judgment, the Stipulations or the Settlement contained

27            12

28                 No. 3:05-CV-02042-CRB

1    therein.

2        20.    Plaintiffs' Counsel are hereby awarded a total of $986,039 in reimbursement of

3    expenses, plus accrued interest.  After deducting such expenses from the Gross Settlement Fund,

4    Plaintiffs' Counsel also are hereby awarded attorneys' fees in the amount of 25% of the Gross

5    Settlement Fund (net of any reimbursed expenses), plus accrued interest, which sum the Court finds

6    to be fair and reasonable.  The foregoing awards of fees and expenses shall be paid to Plaintiffs'

7    Counsel from the Gross Settlement Fund, and such payment shall be made at the time and in the

8    manner provided in the Stipulations, with interest from the date the Gross Settlement Fund was

9    funded to the date of payment at the same net rate that interest is earned by the Gross Settlement

10   Fund.  The appointment and distribution among Plaintiffs' Counsel of any award of attorneys' fees

11   shall be within Plaintiffs' Counsel's sole discretion.

12       21.    In making this award of attorneys' fees and reimbursement of expenses to be paid

13   from the Gross Settlement Fund, the Court has considered and found that:

14            (a)    the Settlement has created a fund of $160,098,500 million in cash that is

15   already on deposit, plus interest thereon, and that numerous Class Members who submit acceptable

16   Proofs of Claim will benefit from the Settlement;

17            (b)    Over 500,000 copies of the Notice were disseminated to putative Class

18   Members stating that Plaintiffs' Counsel were moving for attorneys' fees not to exceed 25% of the

19   Gross Settlement Fund and reimbursement of expenses from the Gross Settlement Fund in a total

20   amount not to exceed $1.2 million, and no objections were filed by any Class Member against the

21   terms of the proposed Settlement or the ceiling on the fees and expenses contained in the Notice;

22            (c)    Plaintiffs' Counsel have conducted the litigation and achieved the Settlement

23   in good faith and with skill, perseverance and diligent advocacy;

24            (d)    The Action involves complex factual and legal issues and was actively

25   prosecuted for over three years and, in the absence of a settlement, would involve further lengthy

26   proceedings with uncertain resolution of the complex factual and legal issues;

27                                      13

28                                              No. 3:05-CV-02042-CRB

1         (e)    Had Plaintiffs' Counsel not achieved the Settlement there would remain a

2    significant risk that the Class Representatives and the Class may have recovered less or nothing from

3    the Defendants;

4         (f)    Plaintiffs' Counsel have advanced in excess of the requested $986,039 in

5    costs and expenses to fund the litigation of this Action; and

6         (g)    The amount of attorneys' fees awarded and expenses reimbursed from the

7    Gross Settlement Fund are fair and reasonable under all of the circumstances and consistent with

8    awards in similar cases.

9        22.    No Class Member filed an objection to the terms of the settlement or the fee

10   application.  Two objections were filed by former defendants who are not Class Members.  Those

11   objections have been withdrawn and are no longer before the Court.  All other objections, if any, are

12   hereby denied.

13       23.    Without affecting the Finality of this Judgment in any way, the Court reserves

14   exclusive and continuing jurisdiction over the Action, the Class Representatives, the Class, and the

15   Released Parties for purposes of: (a) supervising the implementation, enforcement, construction, and

16   interpretation of the Stipulations, the Plan of Allocation, and this Judgment; (b) hearing and

17   determining any application by Plaintiffs' Counsel for an award of attorneys' fees, costs, and

18   expenses and/or reimbursement to the Class Representatives, if such determinations were not made

19   at the Fairness Hearing; and (c) supervising the distribution of the Gross Settlement Fund and/or the

20   Net Settlement Fund.

21       24.    In the event that the Settlement is terminated or does not become Final in

22   accordance with the terms of the Stipulations for any reason whatsoever, or in the event that the

23   Gross Settlement Fund, or any portion thereof, is returned to Brocade or KPMG, then this Judgment

24   shall be rendered null and void and shall be vacated to the extent provided by and in accordance with

25   the Stipulations and, in such event, all orders entered and releases delivered in connection herewith

26   shall be null and void to the extent provided by and in accordance with the Stipulations.

27   14

28   No. 3:05-CV-02042-CRB

1       25.     In the event that, prior to the Effective Date, Class Representatives or Brocade

2   institutes any legal action against the other to enforce any provision of the Brocade Stipulation or

3   this Judgment or to declare rights or obligations thereunder, the successful Party or Parties shall be

4   entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs

5   incurred in connection with any such action.  Neither KPMG nor the Individual Defendants shall

6   have any obligation under this paragraph.

7       26.     There is no reason for delay in the entry of this Judgment and immediate entry by

8   the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil

9   Procedure.

10       SIGNED January 26, 2009.

**THE HONORABLE CHARLES R. BREYER**
**UNITED STATES DISTRICT JUDGE**

15

No. 3:05-CV-02042-CRB

Not Reported in F.Supp.
Fed. Sec. L. Rep. P 97,669
(Cite as: 1993 WL 330595 (D.Minn.))

**C**

United States District Court, D. Minnesota.

In re EMPLOYEE BENEFIT PLANS SECURITIES
LITIGATION.

**Civ. No. 3-92-708.**

June 2, 1993.

OPINION

KYLE, District Judge.

Introduction

*1 The above-entitled matter (the "Litigation") is a
shareholder class action brought by certain holders of
the common stock of defendant Employee Benefit
Plans, Inc. ("EBP"). Now before the Court are
plaintiffs' Application For Final Approval of Settlement
and Joint Application for Awards of Attorney's Fees
and Costs and Incentive Bonuses for the Named
Plaintiffs.

Background
A. Background of the Litigation

On or about January 10, 1992 the common stock of
defendant Employee Benefit Plans, Inc. ("EBP"), then
publicly traded on the New York Stock Exchange,
dropped 50% in price. Thereafter, certain EBP
shareholders contacted plaintiffs' counsel [FN1] and
stated their concerns about the sudden drop in price;
plaintiffs' counsel began an investigation into the
available facts surrounding the price drop.

Following counsel's factual investigation, including an
examination of EBP's preparation and issuance of a
series of public statements about its business practices,
prospects, and financial performance, plaintiffs filed
three separate actions in this Court in mid-January,
1992. [FN2] Each of the plaintiffs therein brought
claims on behalf of themselves and certain other
purchasers of EBP common stock against EBP and
William Sagan, Robert Brook, and Michael Goran,
officers and/or directors of EBP (collectively the
"defendants"). Specifically, plaintiffs alleged that
certain of EBP's public statements were materially
misleading misstatements and constituted violations of
section 10(b) of the Securities Exchange Act of 1934

("1934 Act"), 15 U.S.C. § 78i, and common law fraud.

The three individual actions were consolidated by entry
of Pretrial Order No. 1 on March 10, 1992. On April
8, 1992 plaintiffs filed a consolidated complaint
("Consolidated Complaint"), alleging class claims
against the defendants, to wit: violations of section
10(b) of the 1934 Act, common law fraud, and
negligent misrepresentation. Plaintiffs followed the
filing of the Consolidated Complaint with a set of
document requests and several subpoenas calling for
custodial depositions of and document productions by
certain third party insurance companies.

Thereafter, the defendants filed, pursuant to
Fed.R.Civ.P. 9(b) & 12(b)(6), a Motion to Dismiss the
Consolidated Complaint. After a full briefing and
argument on the motion, the Court denied defendants'
motion as to the section 10(b) claim and granted the
motion as to the plaintiffs' common law claims. [FN3]
Thereupon, the defendants filed separate answers to the
complaint, denying plaintiffs' allegations and asserting
scores of affirmative defenses.

The discovery process in this matter was, for its
somewhat short tenure, contentious. In pursuit of both
sides' discovery desires, the parties engaged in repeated
negotiations designed to achieve agreement on, *inter
alia*, document production, depositions, and a
protective order governing discovery. In addition, the
defendants brought a motion to stay discovery and for
a protective order, while plaintiffs brought a motion to
compel discovery. Both motions were briefed and
argued before United States Magistrate Judge Franklin
L. Noel, who denied the motions in an order dated July
9, 1992. Eventually, at least 100,000 pages of EBP
documents were produced to and reviewed by plaintiffs'
counsel.

*2 On October 26, 1992 plaintiffs filed a Motion for
Class Certification. Following the transfer of this
action to this Court, the Motion was scheduled for
argument before the undersigned on February 2, 1993.
A tentative settlement was reached prior to the date on
which the defendants' responsive brief was to be filed.

B. The Settlement

Settlement discussions commenced in October of 1992.
After several weeks of negotiations, a tentative
agreement to settle the litigation was reached by all of
the parties. Eventually, the parties memorialized the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

agreement in a Memorandum of Understanding ("MOU"), the final version of which was executed on December 16, 1992.

During the succeeding three months, the parties engaged in additional discussions and negotiations, eventually agreeing on the terms and conditions of settlement. The settlement was memorialized in a Stipulation of Settlement ("Stipulation").

All parties came before this Court on March 16, 1993, seeking an order preliminarily approving the settlement (as set forth in the Stipulation and exhibits thereto), and approving forms of long and summary Notice, a Proof of Claim and Release Form and a Depository Agreement. On that same date, the Court granted preliminary approval and ordered that notice be given to the class.

Following preliminary approval of the settlement, plaintiffs' counsel, through a claims administration firm prepared and mailed notice of the settlement (the "Notice") and Proof of Claims Forms. [FN4] See Hoyt Aff. The claims administrator also published the summary form of notice in the April 8, 1993 *Wall Street Journal* National Edition.

C. The Settlement Fund

The proposed settlement provides for settlement of all class claims against all defendants, in exchange for financial remuneration in the amount of $10.7 million, paid into a fund ("Settlement Fund"). The Settlement Fund includes both a cash payment and a debenture. [FN5] The cash payment component totals $4.2 million, and is to be paid into a class escrow account ("escrow account"). [FN6] On February 12, 1993, $3 million was paid in the escrow account by EBP's insurance carrier. Upon entry of an order of final judgment, EBP will pay an additional $1.2 million in cash into the escrow account. [FN7]

The debenture is a six and three-quarter percent (6- 3/4 %) convertible senior subordinated debenture in the principal amount of $6.5 million, due three years and forty days after issuance. [FN8] Interest is to be paid semi-annually to plaintiffs' counsel, [FN9] who will hold interest payments going to the class in trust pending payment of the debenture's principal.

The debenture's conversion feature permits plaintiffs' co-lead counsel, at their option, to convert the principal and any unpaid interest into EBP common stock at any time until maturity at a price of sixteen dollars ($16.00) per share. [FN10]

In addition, plaintiffs' counsel also has the one-time option to "put" the entire debenture to EBP at par for immediate payment of principal and all accrued unpaid interest, if at any time prior to the debenture's maturity, EBP's outstanding indebtedness exceeds an aggregate of $40 million. [FN11]

D. The Class

*3 Under the Stipulation, the parties have established that the class period runs from October 15, 1991 through October 9, 1992, inclusive (the "Class Period"). The class of plaintiffs ("Settlement Class") is divided into the following two subclasses:

Subclass One. Settlement Class members who purchased their shares during the period October 15, 1991 through January 9, 1991, inclusive; and

Subclass Two. Settlement Class members who purchased their shares during the period January 10, 1992 through October 9, 1992, inclusive.

The two subclasses were created because plaintiffs alleged that although most of the adverse information regarding EBP was disclosed on January 10, 1992, such disclosures were partial; EBP continued to disclose additional adverse information until at least October 9, 1992. Hence, those persons purchasing EBP stock on or before January 10, 1992 had no notice of EBP's alleged wrongdoing, whereas those persons purchasing stock after January 10, 1992 had some notice. Accordingly, seventy-five percent (75%) of the net settlement proceeds will be distributed on a *pro rata* basis to authorized claimants in Subclass One. [FN12] The remaining twenty-five percent (25%) of the net settlement proceeds shall be similarly distributed to authorized claimants in Subclass Two.

The Settlement Fund will be used to compensate each authorized claimant for the claimant's "Recognized Loss." The Recognized Loss will be calculated as follows:

Recognized loss is the purchase price, excluding commissions, less either (a) the sale price, excluding commissions, for those shares sold on or before October 9, 1992, or (b) $13.00 per share, the average closing price for the five days after the end of the settlement class period, for those shares held at the close of business on October 9, 1992.

Discussion
I. Plaintiffs' Motion For Final Approval of Settlement

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of class action settlements; however, Rule 23(e) does not establish any standard for determining whether a settlement should be approved.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Notwithstanding the lack of statutory guidance, judicial application of Rule 23(e) has firmly established that the issue for determination is whether the settlement is "fair, adequate and reasonable," that is, does it protect the interests of the class members, and whether the settlement is the product of fraud or collusion. _Van Horn v. Trickey_, 840 F.2d 604, 606 (8th Cir.1988); _In re Flight Transp. Corp. Sec. Litig._, 730 F.2d 1128, 1135 (8th Cir.1984), _cert. denied_, 469 U.S. 1207 (1985). Although in approving a settlement the district court need not undertake the type of detailed investigation that trying the case would involve, it must nevertheless reach well-reasoned conclusions; it may not rest its decision on "mere boilerplate." _Van Horn_, 840 F.2d at 607 (citation omitted).

In analyzing the proposed settlement, several factors must be considered, the most important factor of which is "the strength of the case for plaintiffs on the merits, balanced against the amount offered in the settlement." _Grunin v. International House of Pancakes_, 513 F.2d 114, 124 (8th Cir.), _cert. denied_, 423 U.S. 864 (1975). Other relevant factors include: (1) the complexity, length, and expense of further litigation; (2) the amount of opposition to the settlement; (3) the opinions of the participants, including class counsel, class representatives, and class members; and (4) the extent of discovery completed and the stage of the proceedings. _Van Horn_ 840 F.2d at 607; _Grunin_, 513 F.2d at 124; _Holden v. Burlington Northern, Inc._, 665 F.Supp. 1398, 1407 (D.Minn.1987). In reviewing these factors, the Court is also mindful of the general policy favoring settlement of class actions. _Holden_, 665 F.Supp. at 1405. The factors will be considered below.

*A. The Strength of Plaintiffs' Case Balanced Against the Amount Offered in the Settlement.*

*4 In evaluating this factor, the Court's task is not to reach any conclusions as to the merits of the plaintiffs' case, nor should the Court substitute its opinion for that of plaintiffs' counsel and members of the class. _Holden_, 665 F.Supp. at 1407. Rather, the determination herein generally will not go beyond "an amalgam of delicate balancing, gross approximation, and rough justice." _City of Detroit v. Grinnell Corp._, 495 F.2d 448, 468 (2d Cir.1974). In this case, because the Court has had only a brief exposure to the issues central to the litigation, its determinations necessarily will be approximations.

As discussed _supra_, Part C, the amount offered in the settlement has a face value of 10.7 million dollars, a value, when simple interest is added, of 12,064,332 million dollars, and a maximum estimated value--accepting the estimated market value of the

debenture--of over 13 million dollars. Importantly, the debenture's conversion feature not only increases the market value of the debenture, _See_ Moosburner Aff., ¶ 6, it also creates the possibility that the total amount of the Settlement could increase beyond the amounts stated herein. _Id._

Balanced against the amount of the settlement is the strength of the plaintiffs' case against EBP. In their Consolidated Complaint, the plaintiffs alleged a violation of section 10(b) of the 1934 Act, common law fraud, and negligent misrepresentation. Already, the latter two claims have been dismissed, thereby narrowing the grounds upon which the plaintiffs can recover.

The remaining federal securities law claim is both factually and legally complex, in terms of liability, causation, and recoverable damages. These complexities warrant a conclusion that the plaintiffs' case, although strong in many respects, has significant flaws which make the outcome far from certain. The vigorous defense which has been effected in opposition to the plaintiffs' remaining claim is further proof that the plaintiffs would face an arduous journey if the litigation were to continue.

In this case, the Court concludes that the strength of the plaintiffs' case, when balanced against the amount of the settlement, supports approving the settlement. In reaching this conclusion, the Court is mindful of another court's succinct statement of how to view the balance of these factors in this case:

> consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t [is] proper to take the bird in the hand instead of a prospective flock in the bush."
> _In re King Resources co. Sec. Litig._, 420 F.Supp. 610, 625 (D.Colo.1976) (citation omitted).

*B. The Complexity, Length, and Expense of Further Litigation*

The Affidavit of Vance K. Opperman establishes that the factual and legal complexities in this action are legion. Plaintiffs assert that they have a strong case, yet they concede that marshalling the necessary proof will be a long, arduous, and Byzantine process. The Court agrees and finds that it likely that the amount of time necessary to engage in discovery, motion practice, and trial would be significant.

*5 In addition to the complex nature of the claims, the defendants' aggressive--properly so--defense, as

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

evidenced by their initial motions and opposition to merits discovery, Opperman Aff., ¶¶ 24 & 28, indicates that each step of this litigation would fully litigated. [FN13] Although an adversarial tone is common and proper in this type of case, it cannot be denied that such an approach will increase both the length of the litigation and the expenses incurred therein. [FN14] Such costs include both those usually associated with litigation (for example, travel and court reporting services), and other less measurable costs, such as those incurred by EBP as its employees' time is taken up by discovery responses and other litigation-related matters. Avoiding these "costs" of litigation also supports approving the settlement.

### C. The Amount of Opposition to the Settlement

Under the terms of the March 16, 1993 Order granting preliminary approval to the settlement, the cut-off date for communicating objections to the proposed settlement was May 14, 1993. Plaintiffs represent to the Court that as of this date, not a single objection to the settlement had been received. Although the Court notes that apparently there was a delay in mailing over 90% of the Notice and Proof of Claim forms, *see* Hoyt Aff., ¶¶ 3 & 5, the continued absence of objections to the settlement indicates that the members of the Settlement Class favor approving the settlement.

### D. The Opinions of the Participants, Including Class Counsel, Class Representatives, and Class Members

The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement. *Welsch v. Gardebring,* 667 F.Supp. 1284, 1295 (D.Minn.1987). However, the Court must keep in mind that a potential conflict of interest always exists between an attorney and a class. *Grinnell,* 495 F.2d at 462; *Welsch,* 667 F.Supp. at 1295. Accordingly, the Court may not merely "rubber-stamp" counsel's opinions; rather, its duty to act as guardian of the class requires the Court to carefully consider opinions of counsel. *Welsch,* 667 F.Supp. at 1295.

Counsel for plaintiffs are experienced in the area of securities litigation. Upon careful consideration of counsel's opinion, and in light of their experience and familiarity with this Case and other securities class actions, the Court finds that Counsel's statements in favor of the settlement are credible and support granting the application for final approval of the settlement.

Further, the negotiating process was, by all accounts, conducted at arms- length, complex, and well-joined. Opperman Aff., ¶¶ 46-47. The compromise likely

emanating from such settlement negotiations further establishes counsel's credibility; intensive and contentious negotiations likely result in meritorious settlements, rather than collusive ones.

Finally, as noted *supra* Part I.C, no member of the Settlement Class has objected to the proposed settlement, nor has any Settlement Class member submitted a statement concerning same. Hence, the Court must garner class members. opinions by implication: the lack of objection to the settlement indicates that the class members approve of it.

### E. The Extent Of Discovery Completed and the Stage of the Proceedings

*6 The extent of discovery completed and the stage of the proceedings are important factors to consider because they are indicative of counsel's and the Court's ability to evaluate the merits of the plaintiffs' claims. *Welsch,* 667 F.Supp. at 1297. If the claims can be accurately evaluated, the reasonableness of the settlement can be assessed. *Id.*

Although this settlement was derived when the action was in its early stages, discovery was well under way. Counsel for plaintiffs conducted an intensive investigation into the available facts and some 100,000 pages of documentary evidence were produced by EBP and reviewed by plaintiffs' counsel. In addition, the parties engaged in an initial round of briefing and argument in connection with EBP's Motion to Dismiss However, deposition discovery, both of parties and non-parties (including experts), had not yet been conducted.

The factual investigation conducted to date is sufficiently detailed to support a conclusion that counsel and this Court are capable of evaluating the strength of plaintiffs' case. Counsel's candid admissions concerning the strengths and weaknesses of plaintiffs' claims, *see supra* Part I.A, therefore, reflect analysis and reasoning, rather than mere guess-work. Accordingly, the Court finds that the extent of discovery and the stage of the proceedings support approving the settlement.

### F. Summary of Analysis

In summary, upon careful consideration of the relevant factors, and keeping in mind the Court's duty to act as a guardian of the plaintiff class, the Court concludes that the settlement agreement is fair, just, and reasonable, and that it is the product of arms-length negotiations, rather than fraud or collusion. Accordingly, the settlement agreement will be

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

approved.

II. Application for Attorney's Fees and Costs

Concurrent with the motion to approve the settlement counsel brought an application for an award of attorney's fees and costs. Specifically, counsel seek an award of thirty-three and one-third percent (33 1/3 %) of the Settlement Fund--i.e., 33 1/3 % of the $4.2 million cash fund and a 33 1/3 % interest in the $6.5 million debenture to be issued by EBP upon entry of final judgment. [FN15] Based upon an assumption that the Settlement Fund will total at least $12,064,332 million, a fee award of 33 1/3 % of the Settlement Fund would total approximately $4 million.

As part of the process of notifying class members of the proposed settlement in this action, plaintiffs' counsel notified class members that counsel would seek an award of attorney's fees from the Settlement Fund, and that counsel would request 33 1/3 % of the total Settlement Fund. Class members were also notified of their right to object to the request for attorney's fees. No member of the Settlement Class has made any objection to the request for attorney's fees.

Plaintiffs' counsel's efforts have resulted in creation of a $10.7 million common fund, plus interest, for the benefit of the class. Under *Blum v. Stenson*, 645 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984), counsel may be awarded a reasonable fee based upon a percentage of the fund. *See In re Bulk Popcorn Antitrust Litig.*, Civ. No. 3-89-710 (D.Minn. Sept. 3, 1992); *In re Wirebound Boxes Antitrust Litig.*, File No. MDL-793 slip op., at 2 (D.Minn. May 2, 1991) (Murphy, J.); *In re Digital Sound Corp. Sec. Litig.*, File No. 90-3533-MRP (C.D.Cal. Apr. 9, 1991).

*7 Based upon a review of cases which have awarded attorney's fees under the "common fund" approach, the Court finds that an award of 33 1/3 % of the common fund is reasonable.

Based upon a careful consideration of plaintiffs' counsel's application, the Court finds that it is reasonable and will be granted. Plaintiffs' counsel have achieved a successful result in this litigation, having amassed a total settlement value of at least $10.7 million in cash and the debenture, exclusive of interest. Counsel achieved this outcome through extensive efforts, in terms of both advocacy and compromise. The Court further notes counsel's willingness to pursue this action, despite its risks, on a contingency basis.

III. Motion for Incentive Payments to Representative Plaintiffs

The parties have also applied for incentive payments of $5,000 to be paid to each of the three class representatives. No member of the Settlement Class has objected to the application.

After considering the representative plaintiffs' roles in this litigation, the public service they have rendered by seeking to enforce the federal securities laws, and the benefit that they have conferred on a large class of purchasers of EBP common stock, the Court concludes that an incentive award of $5,000 to each of the three representative plaintiffs is appropriate. Accordingly, the application for incentive payments will be granted.

Conclusion

Based on the files, records, and proceedings herein, including all materials filed in support of the instant applications, IT IS ORDERED that:

1. plaintiffs' Application for Final Approval of the Settlement (Doc. No. 71) is GRANTED. The proposed settlement shall be, and the same hereby is, approved according to the Stipulation, the definitions, terms, and conditions of which are incorporated by reference as though fully set forth herein;

2. pursuant to the Stipulation, the Litigation, *Cohen v. Employee Benefit Plans, Inc.*, Civ. No. 3-92-709, and *Strunk v. Employee Benefit Plans, Inc.*, Civ. No. 3-92-710 are DISMISSED WITH PREJUDICE and without taxation of costs in favor or against any party;

3. all members of the Settlement Class are hereby conclusively deemed to have released (a) Employee Benefit Plans, Inc., a Delaware corporation, and all and each of its predecessors, successors, assigns, direct and indirect subsidiaries, divisions, parents, affiliates and related corporations and entities, and all and each of its and their respective predecessors, successors and assigns and all and each of its and their present and former officers, directors, shareholders (other than members of the Settlement Class) partners, principals, insurers, underwriters, investment bankers, employees, auditors, accountants, attorneys and agents and their respective assigns, successors, agents, representatives, heirs, executors and administrators; and (b) William E. Sagan, Robert P. Brook, and Michael Goran, all and each of them, and all and each of their respective successors, assigns, agents, representatives, heirs, executors, administrators and insurers, with respect to any and all claims, actions, causes of action, rights or liabilities, including Unknown Claims (as defined in paragraph VI.A.11 of the Stipulation), which exist or may in the future exist against any of the defendants by reason of any matter, event, cause or thing whatsoever

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

arising out of, relating to, or in any way connected with (a) the ownership, purchase, sale or other acquisition or disposition during the Class Period of any EBP securities by a member of the Settlement Class; (b) the status of a member of the Settlement Class as a shareholder of EBP during the Class Period; and (3) any of the facts, circumstances, transactions, events, occurrences, acts, omissions or failures to act that are or could have been alleged or referred to in the Litigation, including, without limitation, the announcements made on August 8, 1991; October 15, 1991; December 9, 1991; December 16, 1991; January 9, 1992; January 15, 1992; and February 5, 1992; and the telephone and personal contacts made by personnel or other representatives of EBP, including one or more of the individual defendants, with stock market professional, analysts, money managers and other members of the securities or investment communities;

*8 3. all members of the Settlement Class are hereby permanently enjoined and barred from instituting, asserting or prosecuting, either directly, representatively, derivatively or in any other capacity, any and all claims which members of the Settlement Class, or any of them, had, have or may have in the future have against the defendants, or any of them, arising out of, based upon, or otherwise related to the claims settled under the Stipulation;

4. plaintiffs' counsel's Joint Application for an Award of Attorney's Fees and Costs (Doc. No. 72) is GRANTED. Plaintiffs' counsel shall be, and the same hereby is, awarded attorneys' fees and costs of (1) thirty three and one-third percent (33 1/3 %) of the 4.2 million cash payment made by defendants or on their behalf to the class action escrow account, plus a *pro rata* share of interest earned thereon to date of payment to plaintiffs' counsel, and (2) a 33 1/3 % interest in the $6.5 million debenture to be issued by EBP upon entry of an order of final judgment, plus a *pro rata* share of all interest earned thereon, which interest shall be distributed to plaintiffs' counsel immediately upon payment thereof. Co-lead counsel shall allocate and distribute said amounts among the firms acting as plaintiffs' counsel, pursuant to agreement among them;

5. plaintiff counsel's Application for an Award of Incentive Bonuses for the Named Plaintiffs (Doc. No. 72) is GRANTED. Each of the three named representative plaintiffs shall be, and the same hereby are, awarded five thousand dollars ($5,000) as an incentive award for bringing and assisting in the prosecution of this action on behalf of the class; this sum shall be in addition to any amount of the Settlement Fund to which the named plaintiffs may be entitled to as members of the Settlement Class;

6. TCF Savings Bank fsb, as depository agent, shall forthwith disburse the cash amounts awarded herein in accordance with the written instructions from plaintiffs' settlement counsel, Karl L. Cambronne of Chestnut & Brooks, P.A. and Stanley R. Wolfe of Berger & Montague, P.C. and in accordance with the terms of the Stipulation of Settlement filed herein on March 16, 1993; and

7. the Court hereby retains and reserves jurisdiction over (a) implementation of the settlement and any distribution to members of the Settlement Class who are Authorized Claimants (as that term is defined in paragraph VI.A.13 of the Stipulation) under the terms and conditions of the Stipulation and pursuant to further orders of this Court; (b) disposition of the Settlement Fund under the terms and conditions of the Stipulation and Notice; (c) this action, until (i) the Effective Date contemplated by paragraph VI.A.16 of the Stipulation, which will occur on the date upon which this judgment becomes not subject to further appeal or review, and (ii) each and every act agreed to be performed by the parties shall have been performed pursuant to the terms and conditions of the Stipulation, including the exhibits annexed thereto; (d) this action, for the purpose of implementing distribution to shareholders in accordance with theice; and (e) all parties, for the purpose of enforcing and administering the Stipulation and settlement.

*9 LET JUDGMENT BE ENTERED ACCORDINGLY.

FN1. Acting as counsel for plaintiffs in this action are: Chestnut & Brooks, P.A.; Berger & Montague, P.C.; Opperman, Heins & Paquin; Abbey & Ellis; Goodkind, Labaton, Rudoff & Sucharow; and Wolf, Haldenstein, Adler, Freeman & Herz. Under the terms of Pretrial Order No. 1, which was entered on March 10, 1992, Chestnut & Brooks and Berger & Montague were appointed co-lead counsel for plaintiffs. For purposes of the Court's discussion, all counsel shall be collectively referred to as "plaintiffs' counsel" or "counsel."

FN2. The three original actions were: (1) *Strunk v. Employee Benefit Plans, Inc.*, Civ. No. 3-92-20; (2) *Fecht v. Employee Benefit Plans, Inc.*, Civ. No. 4-92-41; and (3) *Cohen v. Employee Benefit Plans, Inc.*, Civ. No. 3-92-14. Each of these cases was assigned, either originally or as a related case, to Hon.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Harry H. MacLaughlin.

FN3. *See* July 27, 1992 Memorandum and Order of Hon. Harry H. MacLaughlin.

FN4. A total of 13,471 copies of both the Notice and Proof of Claim forms were mailed to shareholders and/or nominees. Hoyt Aff., ¶ 5.

FN5. The face value of the settlement, combined with the interest expected to be earned on the debenture, equals a total settlement value of $12,064,332. Based upon plaintiffs' expert valuation of the debenture's market value, *see* Moosburner Aff., the total amount of the Settlement Fund could exceed $13 million.

FN6. TCF Savings Bank fsb, is the depository agent for the escrow account.

FN7. EBP's actual obligation is to pay $1.2 million, less the amount equal to the interest accrued during the period December 16, 1992 to March 16, 1993 on $2.75 million of the insurance carrier's payment.

FN8. The debenture will be senior to EBP's currently outstanding 6 3/4 % convertible debentures.

FN9. The total amount of interest expected to be earned on the debenture is $1,364,332.

FN10. Within 120 days of an entry of an order of final judgment, EBP shall file a registration statement with the Securities & Exchange Commission and use its best efforts to register the shares of EBP common stock issuable upon conversion of the debenture.

FN11. The $40 million cap on debt excludes existing indebtedness or the replacement thereof, and any existing or future letters of credit in any amount for the benefit of EBP or its subsidiaries.

FN12. The "net" settlement proceeds are that portion of the Settlement Fund remaining after payment of plaintiffs' counsel's fees and costs, the incentive awards to the representative plaintiffs, costs for notice and claims administration, escrow fees and costs, costs of tax preparation and payment of any taxes due on the Settlement Fund.

FN13. The Court notes that Plaintiffs' out-of-pocket expenses have already reached the $60,000 plateau.

FN14. Under the pretrial order currently in place, dispositive motions may be brought on or before October 1, 1993. Given that settlement discussions have effectively terminated all discovery, the parties likely would Seek to extend the discovery and motion deadlines, which would further increase the length of the litigation.

FN15. Counsel also seeks a *pro rata* share of all interest earned on the debenture. Counsel requests that it be awarded its interest upon payment thereof; however, counsel requests that the plaintiffs' *pro rata* share be held in an interest-bearing account until the debenture matures, so as to avoid the cost of making multiple payouts to the plaintiff class.

1993 WL 330595 (D.Minn.), Fed. Sec. L. Rep. P 97,669

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

Herman Gordon, et al.,                          Civil No. 4-95-666

        Plaintiffs,

v.                                                 ORDER

American Adjustable Rate
Term Trust, et al.,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - -
Frank Donio, et al.,                            Civil No. 4-95-667

        Plaintiffs,

v.

American Adjustable Rate
Term Trust, et al.,

        Defendants.

      This matter is before the court upon plaintiffs' joint
application for the award of attorneys' fees, reimbursement of
litigation costs, award to class representatives and establishment
of a future contingency fund.  Based upon a review of the file,
record and proceedings herein, and for the reasons stated below,
the court concludes that plaintiffs' counsel is entitled to
$5,266,666.67 in attorneys' fees and $392,758.28 in litigation

expenses to date, each of the eight class representatives is entitled to $3,000 (a total amount of $24,000) and a future contingency fund is established in the amount of $50,000.

BACKGROUND

A complete recitation of the facts is unnecessary for purposes of this order. Plaintiffs filed this action in October 1994, alleging that the defendants disseminated a series of false and misleading statements regarding the Term Trusts in violation of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, the Minnesota Securities Act and Minnesota common law. Defendants denied, and continue to deny, any liability.

On September 15, 1995, plaintiffs moved the court to certify a class of investors who purchased stock of the 1996, 1997, 1998 or 1999 Term Trusts from approximately January, 1992, through October, 1994, depending on which trust stock was purchased. Defendants vigorously opposed plaintiffs' motion to certify and on September 28, 1995, moved to dismiss the complaint in its entirety.

From as early as December 1994, however, the parties engaged in extensive settlement negotiations. After postponing the hearing date on the plaintiffs' motion to certify and defendants' motion to

2

dismiss three times, an agreement in principle was reached on March 21, 1996. This preliminary agreement was reduced to a formal memorandum of understanding on April 22, 1996. The settlement agreement, dated June 18, 1996, was preliminarily approved by this court on June 24, 1996. On August 23, 1996, a hearing was held to consider plaintiffs' and defendants' joint motion for final approval of settlement. The court granted that motion by order of final judgment entered that same day.

Both parties have vigorously litigated these actions. The proceedings have included considerable formal and informal discovery, numerous motions and extensive negotiations. Nearly two years after filing their complaint, plaintiffs have settled their claims against all named defendants. Plaintiffs' counsel have secured for the benefit of their clients the considerable sum of $15,800,000 which includes $14,000,000 in principal and $1,800,000 in interest. Plaintiffs' counsel now seek an award of fees from the common fund, full reimbursement of litigation expenses, an award for class representatives and a future contingency fund.

DISCUSSION

The award of attorneys' fees lies within the sound discretion of the trial court, see In re Workers' Compensation Ins. Antitrust

3

Litig_, 771 F. Supp. 284, 287 (D. Minn. 1991), and the court has the responsibility of scrutinizing fee requests under Fed. R. Civ. P. 23(e). The burden is on counsel, however, to establish a factual basis to support an award. Johnston v. Comerica Mortgage Corp_, 83 F.3d 241, 246 (8th Cir. 1996).

It is also within the discretion of the court to utilize either of two methods to analyze a request for attorneys' fees. Id_ at 247. Under the "lodestar" method, the attorney hours expended are multiplied by a reasonable hourly rate to produce a fee amount which can be adjusted using a multiplier to reflect the complexity of a case, the quality of the work required or other individual characteristics of a given case. Id at 244. The "percentage of the benefit" is the second method and permits an award of fees that is equal to some fraction of the common fund that the attorneys successfully secured. Id_ at 244-45.

The award of fees under the percentage of benefit method "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." Boeing Co_ v. Van Gemert, 444 U.S. 472, 478 (1980). "The key element in a fund case is that fees are not assessed against the unsuccessful litigant (fee shifting), but rather are taken from the fund or damage recovery (fee

4

spreading), thereby avoiding the unjust enrichment of those who otherwise would be benefitted by the fund without sharing in the expenses incurred by the successful litigant." Court Awarded Attorney Fees, 108 F.R.D. 237 (1985).  This method, therefore, spreads the costs of the litigation among those who benefit, i.e. the recovering plaintiffs, not the defendants.

Courts have recommended that the "percentage of benefit" method be employed where a common fund has been established.  See In re General Motors Pick-Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 821 (3d Cir.), cert. denied, 116 S. Ct. 88 (1995). The settlement agreement in these actions creates a common fund. As such, plaintiffs' urge the court to apply the "percentage of benefit" method to their request for fees.

Having presided over this case, the court is in a unique position to evaluate the a claim for attorneys' fees and concludes that the "percentage of benefit" method is equitable and appropriate in these cases.  In the instant actions, plaintiffs' counsel have conferred a substantial common benefit upon the settlement class by pursuing and funding this litigation.  Further, the amount recovered is directly attributable to counsels' efforts. Finally, the common fund is large enough to support both reasonable

5

attorneys' fees and a fair settlement distribution to the members of the settlement class.

The court finds that a 33-1/3% award from the common fund is appropriate and reasonable considering the actual amount of time devoted to these cases by plaintiffs' counsel, the complexity and duration of this litigation, the experience and ability of the attorneys involved and awards in similar cases. See In re Workers' Compensation Ins. Antitrust Litig., 771 F. Supp. at 287. The court's conclusion is bolstered by the response to the class notice which explicitly provided that the attorneys' fees might be as large as one-third of the gross settlement amount, including interest. More than 100,000 notices were mailed to class members. Not a single class member, however, objected to counsel's notice request for fees or to the proposed reimbursement for litigation expenses.¹ Without the efforts of plaintiffs' counsel there would be no common fund at all. Plaintiffs were well served by their attorneys who obtained a favorable recovery for their clients. The court is satisfied that the amount represented by this percentage adequately and fairly compensates counsel for their services.

---

¹ There was also no objection to either the proposed award for the named class representatives or establishment of a reserve fund.

Plaintiffs' counsel also request reimbursement for $392,758.28 in litigation expenses incurred from the commencement of this lawsuit to date.  Expenses claimed include costs for discovery and experts' fees.  The court has carefully reviewed these expenditures and finds the amounts to be adequately documented, proper and reasonable.

Plaintiffs' further request that the court award $3,000 to eight named class representatives and that the court establish a reserve fund in the amount of $50,000 in order to equitably resolve potential future administrative contingencies or problems.  The court finds that awards to the class representatives are appropriate and reasonable based upon their role in the litigation, the time spent giving depositions and responding to discovery.  In addition, the court finds that plaintiffs' request for a reserve fund is proper and reasonable.

## CONCLUSION

Based upon the foregoing, and the court having reviewed plaintiffs counsel's detailed billing records and relying on the files and record of these cases, IT IS HEREBY ORDERED that:

1.   Plaintiffs' counsel are jointly awarded $5,266,667.67 in attorneys' fees (equal to thirty-three and one-third percent (33-

1/3%) of the gross settlement fund including interest)) and $392,758.28 in costs and expenses to be paid from the settlement fund established pursuant to the settlement approved by this court. These amounts shall be paid to the Chestnut & Brooks, P.A. Trust Account.

2.   Class representatives Herman D. Gordon, Gerald D. Cashill, Richard Harbison, Robert D. Moore, Jane Mazzagatte, James O. Chambers, Frank Donio and Myra W. Smith are each awarded $3,000 to be paid from the settlement fund established pursuant to the settlement approved by this court;

3.   A reserve in the amount of $50,000 shall be established from the settlement fund to resolve any future contingencies related to the administration of the settlement;

4.   Expenses for administering the settlement shall be paid from the settlement fund;

5.   The balance of the settlement fund shall be distributed to authorized claimants pursuant to the terms of the approved settlement.

Dated: September 3 , 1996

David S. Doty, Judge
United States District Court

Not Reported in F.Supp.2d
(Cite as: 2000 WL 1336640 (D.Minn.))

**H**

Only the Westlaw citation is currently available.


United States District Court, D. Minnesota.

Keith SNELL and Teresa Snell, On Behalf of
Themselves and All others Similarly
Situated, Plaintiffs,
v.
ALLIANZ LIFE INSURANCE COMPANY OF
NORTH AMERICA and Fidelity Union Life
Insurance Company, Defendants.

No. Civ. 97-2784 RLE.

Sept. 8, 2000.


ORDER

ERICKSON, Magistrate J.

I. *Introduction*

*1 This matter came before the undersigned United
States Magistrate Judge pursuant to the consent of the
parties, as authorized by the provisions of Title 28
U.S.C. § 636(c), upon the Motions to Intervene of Class
Members, and Objectors, Leo E. Clark ("Clark"), Susan
D. Deese ("Deese"), and John P. Willis, III ("Willis");
and upon the Plaintiffs' Motion for Final Approval of
Settlement, for a Certification of the Class, and for an
Award of Attorneys' Fees and Expenses.

A Hearing on the Motions was conducted on August
22, 2000, at which time, the Plaintiffs appeared by
Melvyn I. Weiss, John J. Stoia, Jr., Andrew W. Hutton,
and Jack L. Chestnut, Esqs.; the Defendants appeared
by James F. Jorden, Roland Goss, Paul A. Fischer, and
Timothy D. Kelly, Esqs.; Clark appeared by Charles M.
Thompson and R. Stephen Griffis, Esqs.; Deese
appeared by Benjamin E. Baker, Jr., Esq.; and Willis
appeared by Richard Stratton, Esq.

For reasons which follow, we grant the Motions to
Intervene, but only for the limited purpose of taking an
appeal, and we grant the Motions for Final Approval of
Settlement, for a Certification of the Class, and for an
Award of Attorneys' Fees and Expenses. [FN1]

FN1. By letter dated July 28, 2000, the
Chairman of the Judicial Panel on
Multidistrict Litigation advised this Court that
a Motion to Transfer, pursuant to Title 28
U.S.C. § 1407, was pending before the Panel,
but that, under Panel Rule 1.5, we were "free"
to rule on any Motion pending before us, or
we could wait until the Panel's ruling. The
letter went on to suggest, as follows:
You may want to take into account whether
the motion before you involves issues unique
to your action, or, on the other hand, raises
issues likely to arise in other actions in the
transferee district should we order transfer.
At the commencement of the Hearing, we
quoted the foregoing, and requested the
advices of all counsel as to their views on
whether the Motions before this Court should
now be heard. Counsel related that they were
involved in the referenced "actions in the
transferee district," and they saw no reason to
defer a ruling at this time. Our independent
review satisfies us that the issues involved in
the Motions now before this Court are unique
to this action and, consequently, we see no
purpose in delaying our ruling.


II. *Factual and Procedural Background*

This class action was commenced on July 3, 1997, with
the filing of a Complaint in the Superior Court of the
State of California, for the County of Los Angeles. A
Notice was filed on July 31, 1997, which removed the
action to the United States District Court for the Central
District of California and, thereafter, upon the Motion
of the Defendants, the District Court transferred the
action, by Order dated December 4, 1997, to this Court.
On January 28, 1999, this Court entered an Order which
allowed the Plaintiffs to file an Amended Class Action
Complaint, which dismissed LifeUSA Insurance
Company as a Defendant, and which added certain
other causes of action. The Defendants filed their
Answer to the Amended Complaint on April 8, 1999,
and, thereafter, the parties engaged in extensive
discovery.

A. *The Plaintiffs' Claims, and the Defendants'
Defenses.*

The Plaintiffs' First Amended Complaint alleges that
the Defendants, either knowingly or recklessly,
misrepresented: 1) that a single prepayment, or a fixed

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

limited number and/or amount of premium payments, would cover all out-of-pocket premiums due on the policies sold by Defendants throughout the Plaintiffs' lives, or for a specified period; 2) the reasonableness of, or the failure to disclose the known or potential variability of, interest crediting rates, policy charges, cash values and/or benefits, as had been illustrated or projected to the Plaintiffs; 3) the cash value and/or benefits to be realized or paid, based upon a fixed number and/or amount of cash payments; 4) the ability to achieve a rate of return on premiums paid, in excess of guarantees specified in a policy form; 5) the nature, quality, suitability, or benefits of policies sold, including whether the policies were primarily life insurance; 6) the financial impact on the policyowner of agent commissions, and sales loads assessed to the policies; and, 7) the financial impact on the policyholder of surrendering, or using loans or withdrawals of cash values, or other accumulated values, from an existing policy issued either by the Defendants, or by another insurance company, to purchase the policies. In addition to these asserted misrepresentations, the Plaintiffs have alleged that the Defendants failed to adequately supervise, educate, and train, their nationwide sales force of agents. The Defendants have vigorously denied these allegations, and any other assertions of wrongdoing, and they have interposed numerous procedural and substantive defenses.

### B. *The Categories of Class Members.*

**\*2** The Plaintiffs' First Amended Complaint categorized the asserted class members into the following four groupings according to the nature of the claims being made: 1) Limited Premium Payment Claims--a grouping that is comprised of persons who alleged that they were led to believe that their policy would be "fully paid up," or that their obligation to pay further premiums would "vanish," after a certain point in time, or after a certain level of premium payments; 2) Policy Performance Claims--a category that is composed of persons who alleged that they were promised that their policy would perform in a certain way, such as that the policy would have a certain cash flow, or policy account value, after a certain number of premium payments, or that policy charges would be maintained at a certain level; 3) Retirement Investment Claims--a category that contains persons who alleged that they were led to believe that their insurance policy was essentially a retirement or investment plan, and who were subsequently disappointed with the performance of that policy; and 4) Replacement Claims--a category that consists of persons who alleged that they were misled with respect to the replacement of one insurance policy with another. As we later detail,

this categorization of claims has significance in that the proposed settlement relief is tailored to respond to each of these groupings of claims, and they are also employed in the Claim Review Process that has been incorporated into the settlement plan.

### C. *The Parties' Settlement Negotiations.*

The settlement of class action lawsuits can be an excruciatingly laborious task. Here, the parties entered settlement discussions early in the pretrial process, but an acceptable settlement proposal eluded them, causing the negotiations to be protracted. As early as April 1, 1998, the parties were jointly requesting the Court to defer the issuance of a formal Scheduling Order for at least three additional months, during which time they would continue with their informal discovery, and document production, and would thoroughly explore settlement. See, *Minute Order of April 1, 1998* [Docket No. 33]. At a Status Conference, which was conducted on July 30, 1998, the parties again requested a deferral in the issuance of a formal Scheduling Order, in order that they could bring further focus to the settlement of this action. [FN2] See, *Order of July 30, 1998* [Docket No. 36].

> FN2. The Record reflects that the Defendants informally produced some 240,000 documents to the Plaintiffs and, apparently in recognition of the need to facilitate settlement discussions, the parties agreed to allow direct communications between their respective actuarial consultants. In addition to the document productions, the Defendants produced, at the Plaintiffs' request, "substantial additional demographic information for expert evaluation and consideration." *Joint Affidavit of Melvyn I. Weiss and John J. Stoia, Jr.,* at p. 6, ¶ 18. Following what appears to have been a forthright exchange of views on the liability and damages issues, counsel for the parties set about, in the months of 1999, to create a settlement mechanism which would fairly address the interests of all of the class members. As averred by class counsel, "[t]here were many times when it appeared that a settlement would not be consummated" but, by December of 1999, "the parties had resolved their differences and had agreed to all the material terms of the Settlement, other than the issue of attorneys' fees and expenses." *Id.* at p. 7, ¶ 23. Without contradiction in this Record, class counsel attest that "[t]he parties engaged in weeks of arms-length negotiations

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

on the remaining issue of fees and expenses," which "will be paid separately from the relief being distributed to the Class." *Id.* at p. 8, ¶ 23.

Regularly thereafter, this Court conducted Status Conferences with counsel for the parties in order to monitor the progress of a settlement, and to assess that progress against the prospect of further delay in the advancement of this action to Trial. See, *Stipulations and Orders of January 28, 1999, June 18, 1999, July 29, 1999, September 24, 1999, and October 28, 1999* [Docket Nos. 42, 46, 47, 48 and 49]. During the course of these Conferences, the Court was assured that a settlement was advancing, but that the actuarial computations, which were generated by the settlement proposals, were extremely complex and time-consuming. Ultimately, on March 20, 2000, this Court issued its Findings and Order, which preliminarily certified a class for settlement purposes, appointed lead counsel for the class, directed the issuance of notice to the class, and scheduled a Fairness Hearing for August 22, 2000. Consistent with the dimensions of this action, and the effort of the parties to thoroughly address all of the aspects of the accord they have reached, their Stipulation for Settlement totaled in excess of two hundred pages, exclusive of appendages.

D. *The Implementation of the Proposed Settlement.*

*3 Consistent with this Court's Preliminary Approval Order, the Defendants implemented a means to provide proper notice of the terms of the proposed settlement to the members of the Class, established a procedure by which Class members could exclude themselves from the Class, or could object to the settlement, and created a process by which Class members could solicit advice and information from knowledgeable consultants, or from Class counsel. As related by the parties:

Allianz hired Rust Consulting ("Rust") as settlement administrator. With Rust's assistance, the class notice package was mailed, necessary remailings have been made, the publication notice has been published, separate toll free lines have been established and operated for class members and agents, and correspondence, election forms, objections and exclusion requests have been received from class members and processed.

*Memorandum of Defendants in Support of Final Approval,* at p. 7. The following three options were afforded Class members who had questions about the settlement proposal:

First, the toll-free phone bank maintained by Rust Consulting received thousands of calls seeking information, and the personnel answering those phones were specifically trained by Class Counsel and by counsel for Allianz to provide accurate and consistent information about the settlement. Counsel regularly monitored these calls to ensure that the Rust personnel were providing appropriate and responsive answers to callers. Second, Allianz maintained a toll-free phone line which Class Members could call with more detailed questions about their policies. Third, Class Counsel was available for consultations with Class Members at no charge, and the Rust phone personnel transferred many calls to Class Counsel for no cost confidential consultations on an individualized basis. This combination of sources of information provided all Class Members with freely available and adequate resources to assist them in understanding the proposed settlement, their rights under the proposed settlement and their options under the proposed settlement.

*Id.*

According to the Record before us, "[m]ore than 252,400 Notice Packages were sent by first class mail to Class Members," from May 11 through 18, 2000. *Joint Affidavit of Melvyn I. Weiss and John J. Stoia, Jr.* ("*Joint Affidavit*"), at p. 12, ¶ 36. Notices were remailed to over 1,280 new addresses upon their return by the U.S. Postal Service. *Id.*

In addition to the individual Notice Packages, that were mailed to all of the Class Members, a Summary Notice was published, on May 30, 2000, in the national editions of *The New York Times,* and *USA Today,* and in the local editions of *The Dallas Morning News,* the *Los Angeles Times,* and the *Minneapolis Star Tribune. Id.* at ¶ 38. The Summary Notice also appeared in *The Wall Street Journal* on May 31, 2000. In addition, the parties created the "Allianz/FULICO Class Action Information Center," which was funded by the Defendants, and was jointly managed by the Defendants, and the Plaintiffs' Lead Counsel. *Id.* at 39. As averred by Class Counsel:

*4 The Allianz/FULICO Class Action Information Center also handles opt-out requests, Policy service questions and related administrative issues. Nationwide toll-free numbers were established for Class Member inquiries and a separate toll-free number was set up for hearing impaired Class Members. Translators for nearly every language were also available to speak to Class Members.

\* \* \*

The Allianz/FULICO Class Action Information Center became operational on May 12, 2000 and will remain open at least through the time Claim Files are compiled. The Allianz/FULICO Class Action Information Center is open Monday through Friday,

from 8:00 a.m. to 6:00 p.m. Central time, except legal holidays. The phone lines at the Allianz/FULICO Class Action Information Center were staffed by operators trained jointly by Plaintiffs' Counsel and Allianz before the Allianz/FULICO Class Action Information Center opened. The toll-free number was printed throughout the Notice, Question and Answer Brochures, publication notices, website notices and Election Forms. The Company also provided the number to its agents and instructed them to refer any Class Member inquiries to the Allianz/FULICO Class Action Information Center for questions about the Settlement. As of July 31, 2000 the trained operators handled over 12,800 telephone calls from Class Members.

*Id.* at p. 13, ¶¶ 39-40. [FN3]

> FN3. Subsequent to the Hearing, Rust has informed the Court that, "[a]s of the close of business on August 22, 2000, the Center had answered over 13,363 calls, including one call to the line for the hearing-impaired." *Affidavit of Richard H. Redfern of August 25, 2000*, at p. 1, ¶ 3.

The Record reveals that Plaintiffs' Counsel have been onsite, at the Information Center, so as to continuously monitor incoming calls to ensure that accurate, and complete, information is provided to Class Members. *Id.* at ¶ 41. "As of July 31, 2000, Plaintiffs' Counsel have spoken to over 3,300 Class Members and monitored over 2,000 calls," and have also responded to correspondence from Class Members. [FN4] *Id.* at p. 14, ¶ 42. The expense of this out-reach program is projected to approximate $1.2 million. *Id.* at ¶ 43.

> FN4. Following the Hearing in this matter, Rust updated its earlier statistics, and advised that, "through the date of the Fairness Hearing, Plaintiff's Counsel has handled 4,587 policyowner calls for assistance." *Affidavit of Richard H. Redfern of August 25, 2000*, at p. 2, ¶ 4.

If approved, the settlement imposes a substantial and continuing obligation on Plaintiffs' Counsel to oversee the administration of the Claims Review Process ("CRP"); to monitor the Information Center as the CRP commences; to respond to calls from Class Members concerning the settlement, the CRP, and related issues; to be responsible for responding to any appeals that may be filed from the CRP; and to handle all other post-approval proceedings. *Id.* at ¶¶ 45-46. The proposed settlement does not provide any additional compensation, to Plaintiffs' Counsel, for these significant, additional duties.

E. *The Terms of the Proposed Settlement.*

Under the proposed settlement, the Class Members will have access to two alternative forms of relief: the Contributed Insurance Benefit ("CIB"); and the CRP. According to the parties, and the Objectors have not proven to the contrary, this form of relief structure has been adopted in the settlement of other cases involving the same types of charges that the Plaintiffs have alleged, here, against the Defendants.

*5 For those Class Members who choose the CIB approach, they will receive from 24 to 60 additional months of no-cost death benefits on the life of that insured Class Member based upon a percentage of the original face amount of his or her policy. "The CIB insurance coverage (death benefit) is 5% to 10% of the original amount of insurance," and "is a function of the original amount of life insurance under the Class Member's policy and the default insured's age as of the final Settlement date." *Plaintiffs' Memorandum in Support*, at p. 10. The CIB approach also makes provision for those who have predeceased the implementation date, and those who die after the Eligibility Date of April 19, 2000, but before the Implementation Date, and the settlement allows for the designation of alternate beneficiaries. Based upon the demographics of the Class, the CIB "has a value to the Class actuarially determined to provide $43.4 million." *Id.*

The Class Members do not need to return any forms in order to receive the CIB relief; they do not have to purchase anything from the Defendants, or to make any other financial commitment in order to receive the CIB; and the terms of the CIB are simple, and straightforward to apply. As characterized by the Defendants, and not meaningfully challenged by the Objectors, "[t]he provision of free insurance as the general policy relief is particularly appropriate in a case such as this, in which the Complaint alleges that class members received less insurance than they thought they were buying, or insurance which was more expensive than they thought it would be," since "[p]roviding free insurance is the best way to try to meet the alleged expectations of class members when they purchased their policies." *Memorandum of Defendants' in Support*, at p. 9.

As an alternative to the CIB, every Class Member can participate in the CRP, which provides a cost-free,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

simplified process to resolve any complaints they may have relating to their purchase of an insurance policy form the Defendants. Upon the completion of a simple Claim Form by the Class Member, the Defendants must assemble the "Claim File," which includes information contained within their policy files, and any correspondence, and other materials, relating to the Claimant's policy. The Claimant's Representative, who "will be an experienced advocate, well-versed in life insurance, that will be selected and specially-trained by Plaintiffs' Lead Counsel on the Defendants' marketing programs, the policies, illustration practices, actuarial determinations and marketing techniques," and whose services will be provided to the Claimant at no-cost, will bring such other information, to the "Claim Review Team," which will consist of the Claimant's Representative, and the Company Representative.

Employing objective, predetermined criteria, each member of the Claim Review Team will score the Claimant's request for relief and, thereafter, will compare their scores and discuss the nature of the Claim, and the documents contained in the Claim File, in an attempt to reach an agreement on the extent of relief, if any, that should be provided. [FN5] When assigning a score to each of the claims, the Claim Review Team may, as a matter of discretion, consider a range of factors, and considerations relating to the Defendants' alleged misconduct, including such matters as worksite marketing, illustrations generated by hand-held computers, and references to the "Private Pension Plan," the "Mortgage Acceleration Plan," and the "disappearing" or "vanishing" premium concept. If the Claim Review Team is unable to agree on a score, then the Claim file automatically proceeds to an independent Arbitrator, who is chosen by the Claimant's Representative, and who reviews the Claim File, and chooses either the score presented by the Claimant's Representative, or that of the Company's Representative.

FN5. The agreed-upon scoring criteria are as follows:
A score of "4" means: (a) Documentation exists supporting the substance of the Claim; (b) the Agent admits he or she made a Misrepresentation; (c) the Applicant received a sales illustration that was altered to delete disclosures relating to Rates and charges or premium payments; or (d) the Agent executed the Applicant's signature or any Transaction Document without first obtaining consent of the Applicant or Policyowner.
A score of "3" means Documentation supporting the substance of the Claim does not

exist, and the Agent does not admit he or she made a Misrepresentation; but the information in the Claim File, considered as a whole, indicates by clear and convincing evidence that the Claim is valid.
A score of "2" means Documentation supporting the substance of the Claim does not exist, and the Agent does not admit he or she made a Misrepresentation; but:
the information in the Claim File, considered as a whole, supports the Claim; or
for a Replacement Claim, the Claim File indicates that a Replacement occurred and the Company does not demonstrate that the Replacement was in the Applicant's best interest at the time the Applicant applied for the Policy, based on information available to the Company at the time of the Replacement.
A score of "1" means the information in the Claim File, considered as a whole, does not clearly refute the Claim.
A score of "0" means the information in the Claim File, considered as a whole, clearly refutes the Claimant's Claim and establishes that the Claim is without substance or foundation.
*Stipulation, Exh. A, § 11.C.*

*6 The successful Claimant will be awarded relief designed to fully compensate for the harm suffered, and every Claimant will be awarded relief so long as the Claim has not been clearly refuted. The awarded relief will be binding on all parties, and the Defendants agree to pay all of the costs of the CRP, including the costs of the Claimant's Representative, the expense of reviewing the Claims, the cost of any relief provided, and the expenses incurred in any arbitration, inclusive of the Arbitrator's fees and costs. As do the Defendants, the Plaintiffs underscore that the relief provided by the CRP is tailored to correspond, on an individualized basis, to the Defendants' alleged wrongdoing. The Defendants have agreed to initially fund the CRP with $10 million for cash, or cash-equivalent awards, but without any cap on the total amount of funds that could be awarded under the CRP. If the total amount of the awards is under $10 million, then the remaining funds will be distributed to the Claimants to whom awards had previously been made.

Lastly, the proposed settlement will pay Plaintiffs' Counsel a total of $6.6 million in attorneys' fees and costs. Plaintiffs' Counsel report, without contradiction, that they have expended over $340,000 in costs and expenses, and that they have spent over 11,000 hours of attorney and professional time, which has an

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

approximate value of $3.2 million under a lodestar approach--that is, by multiplying the hours expended by the applicable hourly rate. In particular, Plaintiffs' counsel stress that the costs of their continued involvement, in the settlement process, by assisting Claimants in the CRP, or in generally advising them, will not be separately compensated, and they note that, in a past settlement of the same kind, they had estimated their post-settlement time and expenses as likely to approach $5 million when, in actuality, those fees and expenses exceeded $22 million. See, *Joint Affidavit*, at p. 12, n. 9.

### F. *Objections to the Proposed Settlement.*

If adjudged on the basis of the number of objections, or requests for exclusion from its coverage, the settlement proposal has been well-received. As of August 25, 2000, a total of 1,163 Class Members have been validated as requesting exclusion from the settlement, and objections have been filed, with the Court, by less than twenty policyowners. [FN6] *Affidavit of Richard H. Redfern of August 25, 2000,* at p. 2, ¶ 5. As Plaintiffs' Counsel underscore, since there are approximately 239,351 policies in the Class, the number of policyholders requesting exclusion is appreciably less than one percent of the Class, and the number advancing objections is minuscule. [FN7] Generically, the objections can be grouped into several categories:

> FN6. We note that, of these objections, one was based on religious grounds, one expressed no objection except a concern that the litigation might be wasting the Court's time, two voiced complaints about issues not involved in the settlement, and one objection--filed by a husband and wife--would be subsequently withdrawn upon the receipt of election forms for selecting either CIB or CRP relief.

> FN7. By our computation, if the number of opt-outs is 1,758, as was tabulated at the time of the Hearing, or was 1,163, as represented after the close of the Hearing, then the percentage of Class Members, who were requesting exclusion from the Class, would be either 0.73% or 0.49% respectively, and the number of objectors would not exceed 0.01% of the Class.

1. A number of Objectors would prefer cash relief, paid immediately, as an option.

2. Several Objectors felt that CIB relief was insignificant, and that CRP was unworkable because of the time that had transpired since the allegedly unlawful acts, and the time that their claims would be reviewed.

*7 3. Certain Objectors concluded that it was unfair to permit a Class Member, who should elect to pursue CRP relief, to potentially face a zero recovery if unable to prove his or her claims, and that the CRP approach was overly burdensome.

4. Objections were expressed that the total amount of the settlement could not be ascertained from the Notice documents.

5. Objections were also filed as to the amount of attorneys fees that were being proposed by the settlement.

6. Objections have also been voiced as to the allowance of a class action settlement, under the circumstances here, given the Supreme Court's holding in *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591 (1997).

At the time of the Hearing in this matter, counsel for certain of the Objectors, who here seek intervention, were afforded an opportunity to further explicate these objections, and others, and counsel for the Defendants, and for the Class, have been afforded a full opportunity to respond both orally, and in writing.

Given this factual backdrop, we turn to the Motions pending before us.

### III. *Discussion*

#### A. *The Motions to Intervene.*

While not entirely clear, since their written materials vary from their comments at the Hearing in this matter, it appears that the proposed Intervenors are requesting leave to intervene in order to preserve their right to appeal from this Court's Order, should they deem an appeal warranted. In this Circuit, however, those who seek to intervene in a class action are recognized as having an inherent right to appeal, whether intervention is allowed, or not. See, *Croyden Associates v. Alleco, Inc.,* 969 F.2d 675, 680 (8th Cir.1992) ("We express the thought that intervention to allow assertion of all objections to a class settlement, with respect to the settlement itself and adequacy of the class representation, represents a preferable method of resolving such differences."), cert. denied, 507 U.S. 908 (1993); *Sanyo Mfg. Corp. v. Int'l Union Elec.,* 69 F.3d 541, 1995 WL 644955 *1 (Table Decision) (8th Cir., November 3, 1995) ("We agree with the unions that Laird lacks standing to appeal because he did not first move to intervene in the district court."); [FN8] *Buchet v. ITT Consumer Financial Corp.,* 845 F.Supp. 684, 690 (D.Minn.1994) (recognizing that "intervention is a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

condition of appeal from the approval of a class action settlement"); *White v. National Football League*, 822 F.Supp. 1389, 1432 (D.Minn.1993) (allowing objectors to intervene "solely to preserve their rights to appeal any judgments entered by the court.").

FN8. See, *Anastasoff v. United States of America*, 223 F.3d 898, 2000 WL 1182813 *6 (8 th Cir., August 22, 2000), invalidating 8 th Cir. Rule 28A(I), which authorizes the issuance of unpublished opinions as nonprecedential, and extending precedential weight to a prior, unpublished opinion.

In order to effectuate the prudential approach directed by our Court of Appeals, we will grant the Motions to Intervene, but solely for the purpose of allowing the Intervenors to take an appeal from any Judgment that we should subsequently enter. [FN9] We find nothing to support a greater or more intrusive role by those seeking intervention. While we can concede, as do the opponents to intervention, that the proposed Intervenors have "an interest relating to the property or transaction which is the subject of the action," *Rule 24(a), Federal Rules of Civil Procedure*, we are not persuaded that the Movants are "so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect that interest." *Id.*

FN9. The opponents to intervention suggest that Deese's Motion to Intervene was untimely filed and, therefore, should be rejected out of course. We are satisfied that the Motion was not untimely filed, since it bears a docketing date, by our Clerk of Court, of July 18, 2000. Similarly, we reject the technical objections as to certain of the moving papers, that were filed by the proposed Intervenors, noting that the Motions did not comport with the applicable Rules of Civil Procedure. Our rejection should not be construed as condoning the proposed Intervenors' resort to a less than complaint approach to the filing of Motions in this District. Rather, it is a necessary result of our effort to effectuate our Court of Appeals' concern that, doing otherwise, could reek substantial judicial inefficiency by encouraging individualized collateral attacks on the same issues we here resolve..Were our analysis solely governed by the precepts of Rule 24, Federal Rules of Civil Procedure, we would be compelled to deny the Motions to Intervene on their merits.

*8 Here, the objections of the proposed Intervenors have been fully explained to the Court and, if the objections were of appreciable consequence, the Movants could elect to opt-out of the Class and pursue their own personal interests, and objections, to a finality. The Movants do not suggest that the settlement would deny them an opportunity, as non-settlers, to subsequently advance their claims against the Defendants and, absent such a showing, we do not understand how their respective interests, in vindicating any wrongs that they believe were perpetrated against them, when they purchased insurance policies from the Defendant, could be impaired or impeded by the proposed settlement. See, *Agretti v. ANR Freight Sys.*, 982 F.2d 242, 247 (7 th Cir.1992) ("[C]ourts have repeatedly held that a settlement which does not prevent the later assertion of a non-settling party's claims, although it may force a second lawsuit against the dismissed parties, does not cause plain legal prejudice to the non-settling party."); *Hirshon v. Republic of Bolivia*, 979 F.Supp. 908, 912 (D.D.C.1997) ("The sole factor in determining whether * * * a nonsettling party has standing to object to a settlement agreement is whether the agreement causes him plain legal prejudice."). More importantly, the Movants have not demonstrated any such impedance or impairment, and we are not empowered to imagine one, merely to allow full intervention.

Moreover, we are convinced that, at this late date, allowing intervention so as to permit the Movants to undertake discovery, and related pretrial pursuits, would substantially prejudice the interests of the Class. Rule 24(a) makes plain that Motions to Intervene must be timely. Here we can accept that the Movants would not have had a pressing interest to intervene until they were aware of the details of the proposed settlement, but our acceptance of that fact does not dispose of the timeliness issue. [FN10] See, *Buchet v. ITT Consumer Financial Corp.*, supra at 689 (allowing intervention on the "eve of the final [settlement] approval hearing" because intervenors had no reason to intervene until they received notice of the Amended Settlement Agreement). In *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 998 (8 th Cir.1993), the Court provided the following guidelines for determining the timeliness of a Motion to Intervene:

FN10. We are mindful of the suggestion, by certain of the Movants, that they did not have unfettered access to the discovery documents that undergird certain aspects of the settlement proposal. As best as we can tell, counsel for

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

certain of the Movants traveled to the offices of Class Counsel for a very brief visit, and then reviewed the available documents in a most cursory fashion. Counsel for one of the other Movants suggests that his efforts to advise his client, concerning the advisability of the proposed settlement, was thwarted by Class Counsel's dilatory response to his letter inquiries. We are not so persuaded. While we can understand counsel's reluctance to incur expense in traveling to a location where the documents were available for review, and then spending the requisite time to properly consider the documentary evidence, we find no showing here that counsel for the Movants were denied an opportunity to pursue such a document review, if that had been their intention.

Whether a motion to intervene is timely is determined by considering all the circumstances of the case. No ironclad rules govern this determination. In determining timeliness, factors that bear particular consideration are the reason for the proposed intervenor's delay in seeking intervention, how far the litigation has progressed before the motion to intervene is filed, and how much prejudice the delay in seeking intervention may cause to other parties if intervention is allowed.

See also, *Jenkins by Jenkins v. State of Missouri,* 78 F.3d 1270, 1273-74 (8th Cir.1996).

*9 As we have detailed, the parties to this action have expended substantial time, and resources, to reach an accord that they have presented for our review and, if warranted, our approval. Given this significant investment, allowance of a full-ranged intervention would be plainly prejudicial to the party's interests. See, *Farmland Dairies v. Comm'r of the New York State Dept. of Agric.,* 847 F.2d 1038, 1044 (2nd Cir.1988); *City of Bloomington v. Westinghouse Electric Corp.,* 824 F.2d 531, 535 (7th Cir.1987) ( "[I]ntervention at this time would render worthless all of the parties' painstaking negotiations because negotiations would have to begin again and [the intervenor] would have to agree to any proposed consent decree."); *Jones v. Caddo Parish School Bd.,* 735 F.2d 923, 935 (5th Cir.1984); *United States v. City of Chicago,* 908 F.2d 197, 199 (7th Cir.1990) ( "Litigation will have no end if every time parties resolve amicably (or drop) a point of contention, someone else intervenes to keep the ball in the air."), cert. denied, 498 U.S. 1067 (1991); see also, *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1176 (8th Cir.1995), cert. denied, 517 U.S. 1156 (1996).

Lastly, we do not overlook the opponents' effort to distinguish the Court's holding in *Croyden,* as well as their ardent concern that the Movants' efforts to intervene are solely for a mercenary purpose. As the opponents urge, both *Croyden,* and the Eleventh Circuit Court of Appeals' decision in *Guthrie v. Evans,* 815 F.2d 626 (11th Cir.1987)--upon which the Court, in *Croyden,* relied--involved proposed intervenors who did not have the right to opt-out of the class while, here, the Movants do. See, *Croyden Associates v. Alleco, Inc.,* supra at 676 ("non-opt-out class"); *Guthrie v. Evans,* supra at 629 (recognizing that "opt-outs" were not available to class members in that action). Certainly, as the opponents urge, the Movants have an additional avenue to preserve their claims against the Defendants--by opting out of the Class--that were unavailable to the movants in *Croyden* and *Guthrie,* but we do nothing here other than to allow the Movants to raise their objections to the proposed settlement, if any there should remain, to our Court of Appeals, rather than to commence other litigation to preserve those objections, or to collaterally attack the proposed settlement. Of course, in denying their Motions to Intervene, the Movants would be afforded that same right of appeal. See, *Marino v. Ortiz,* 484 U.S. 301, 304 (1988) ("We think the better practice is for such a nonparty to seek intervention for purposes of appeal; denials of such motions are, of course, appealable."). In our view, *Croyden* does little more than alert Class Members, who may object to a proposed settlement, that they must seek to intervene, if they wish to preserve those objections on appeal.

The opponents' concern about the motivation of the Movants' counsel, in advancing the objections, and in seeking to intervene for appeal purposes, is more troubling. As characterized by the opponents, the Movants are represented by "professional objectors," who are a pariah to the functionality of class action lawsuits, as they maraud proposed settlements--not to assess their merits on some principled basis--but in order to extort the parties, and particularly the settling defendants, into ransoming a settlement that could otherwise be undermined by a time-consuming appeals process. The opponents' concern has been recognized in other jurisdictions. As the Court expressed, in *Shaw v. Toshiba America Information Systems, Inc.,* 91 F.Supp.2d 942, 973-74 (E.D.Tex 2000):

*10 While some of the objections were obviously "canned" objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests, other objections contained considerable merit with respect to this particular case.

Although it gives us pause that, as illustrative of the type of objection filed by the "professional objector,"

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

the Court identified one of the law firms who here represents a Movant, see, *id.* at 973 n. 18, we are not presented with a Record that demonstrates a pressing need for our preservation of the Court processes, as a result of class action marauders. Time will tell. [FN11]

> FN11. The opponents to intervention make much of the fact that certain of the Movants' attorneys have now, and in the past, solicited objections to proposed class settlements, through aggressive advertising campaigns, and that counsel for the Movants all practice in the same general geographic area. We are aware of no applicable prohibition on lawyer advertising, where the purpose of that promotion is to assist the public in properly understanding a settlement proposal. We take Movants' counsel at their word, as *pro hac vice* officers of this Court, that their conduct here is wholly professional, and not parasitic. If our reliance has been misplaced, we have abundant recourse.

As we subsequently detail, in our considered view, the Movants have raised objections which inform that, in the parlance, they are "gnawing on a bone." This is not a hastily contrived settlement. Great expense, and careful thought, have led to its formulation by lawyers who have exceptional skill, and expertise, in such class action matters. While observers, who peer from outside the settlement process, can second-guess one detail, or another, the objections advanced here, by the Movants in particular, do not rise above the querulous. If, as the opponents fear, the Movants proceed, so as to euchre a tribute in exchange for a settlement, the Courts will not be powerless to act, and to act forcefully, so as to maintain the integrity of the judicial process, as well as the efficacy of the class action mechanism.

Accordingly, given the precedents of this Circuit, we grant the Motions to Intervene, but solely to allow the Intervenors to maintain an appeal, if that should be their choice. No other intervention would be appropriate. [FN12]

> FN12. Having allowed a limited intervention, we need not consider the Movants' arguments for permissive intervention, as a greater scope of intervention, under Rule 24(b), Federal Rules of Civil Procedure, is rejected for the reasons we have detailed under Rule 24(a).

B. *The Motion for Certification of a Class.*

In our Preliminary Approval Order of March 20, 2000, we certified the following Class for purposes of issuing a Notice of the proposed settlement, and of implementing the settlement proposal's outreach program:

> Class to consist of all persons or entities who have, as of the Eligibility Date (as defined in the Settlement Agreement), or who had at the time of the Policy's termination (where termination was prior to the Eligibility Date), or who had at the time of the Policy's absolute assignment to an insurance company under Internal Revenue Code § 1035 (where assignment occurred prior to the Eligibility Date), an ownership interest in NTrust II, NTrust IV, NTrust Pref, Legend, UL 1500, UL 3000, or Interest Sensitive Life (a .k.a. "ISL") life insurance policies issued by Allianz or FULICO ("Policies") during the period January 1, 1984 through December 31, 1996 ("Class Period"). "Policies" does not include: (a) annuities issued by the Defendants; (b) term life insurance issued by the Defendants; (c) an insurance policy canceled (with refund of premium paid, if any) in accordance with a state's "first look" or "right-to-examine" law or an insurance policy rescinded by Allianz or FULICO with a return of all premiums paid; and (d) any other whole life, universal life or other insurance policy issued by Defendants. The Class does not include the following persons or entities (unless and to the extent the persons or entities are Class Members by virtue of their ownership interest in another Policy) (a) who had, at the time of the insured's death, an ownership interest in the Policy where the insured died prior to the Eligibility Date while the Policy was in-force and a death benefit was paid or is payable; (b) who, while represented by counsel, signed a document that releases Allianz or FULICO ("Defendants") from any further claims concerning the Policy; (c) whose rights and claims respecting the Policy have been finally adjudicated in a court of law; (d) who are or were officers (vice president or above) or in-house counsel of one or both of the Defendants, or the spouse or other immediate family member thereof; (e) persons and entities who are excluded from the Class pursuant to Section VII of the Settlement Agreement; or (f) any insurance company that has or had an ownership interest in the Policy pursuant to an absolute assignment effected as part of an Internal Revenue Code § 1035 exchange.

*11 The pertinent Eligibility Date is April 19, 2000. Necessarily, we again consider the propriety of certifying the foregoing Class.

"A district court has a duty to assure that a class once

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

certified continues to be certifiable under _Fed.R.Civ.P._ _23(a)._" _Petrovic v. Amoco Oil Co.,_ 200 F.3d 1140, 1144 (8 th Cir.1999), citing _Hervey v. City of Little_ _Rock,_ 787 F.2d 1223, 1227 (8 th Cir.1986). We turn, therefore, to the prerequisites of Rule 23(a), which provides to as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is to numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

See also, _General Telephone Co. of Southwest v._ _Falcon,_ 457 U.S. 147, 156 (1982).

Of course, the Plaintiffs bear the burden of satisfying these pre-requisites, see _General Telephone Co. v._ _Falcon,_ supra at 161, and our analysis of whether that burden has been satisfied is attuned to the fact that the requirements of Rule 23(a) are intended to protect the named, and unnamed parties, as well as any unknown potential class members. _Hervey v. City of Little Rock,_ supra at 1227.

As to the element of numerosity, there can be little dispute but that a class of over 230,000 members is sufficiently numerous to warrant a class action approach. See, e.g., _Parkhill v. Minnesota Mutual Life_ _Ins. Co.,_ 188 F.R.D. 332, 337-38 (D.Minn.1999) (finding class of 290,000 policyholders sufficiently numerous for Rule 23 purposes); _In re Hartford Sales_ _Practices Litigation,_ 192 F.R.D. 592, 602-03 (D.Minn.1999) (finding an "extremely large" number of policyholders adequate for numerosity purposes). Undoubtedly, the large number of members in the Class before us would render joinder "impracticable." Therefore, we find the numerosity requirement has been satisfied.

"As a general rule, the commonality requirement imposes a very light burden on plaintiff seeking to certify a class and is easily satisfied," and "to satisfy the commonality requirement under Rule 23(a), a party need simply show that 'the legal question linking the class members is substantially related to the resolution of the litigation.' " _In re Hartford Sales Practices_ _Litigation,_ supra at 603, quoting _DeBoer v. Mellon_ _Mortgage Co.,_ supra at 1174. Stated otherwise, "[t]he interests of the various plaintiffs do not have to be identical to the interests of every class member; it is enough that they 'share common objectives and legal or factual positions.' " _Petrovic v. Amoco Oil Co.,_ supra at 1148, quoting 7A Charles Alan Wright, Arthur R.

Miller, and Mary Kay Kane, _Federal Practice and_ _Procedure: Civil 2d § 1769_ at 367 (2 nd ed.1986).

* 12 Here, the Plaintiffs' represent that "the focus of the litigation is [Defendants'] common course of conduct in developing and implementing standardized product performance assumptions to be disseminated through its nationwide sales force, and then manipulating interest crediting rates that applied companywide to all policyowners." _Plaintiffs' Memorandum in Support,_ at p. 31-32. The Plaintiffs' First Amended Complaint identifies thirty-one issues of fact and law, or of mixed fact and law, which are common to the Class Members. See, _First Amended Complaint_ [Docket No. 43] ¶ 140 at pp. 61-67. As have the Courts which have previously confronted this question, we find that these uniform issues are adequate to satisfy the commonality requirements of Rule 23(a). See, _In re Prudential Sales_ _Ins. Co. America Sales Litigation,_ 148 F.3d 283, 309-10 (3 rd Cir.1998), cert. denied, 525 U.S. 1114 (1999); _In re Hartford Sales Practices Litigation,_ supra at 603; _Parkhill v. Minnesota Mutual Life Ins. Co.,_ supra at 338.

"Typicality under Rule 23(a)(3)" means that there are 'other members of the class who have the same or similar grievances as the plaintiff." _Alpern v. Utilicorp_ _United, Inc.,_ 84 F.3d 1525, 1540 (8 th Cir.1996). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." _Id.,_ citing _Donaldson v. Pillsbury Co.,_ 554 F.2d 825, 831 (8 th Cir.1977), cert. denied, 434 U.S. 856 (1977). As the Court observed in _DeBoer v. Mellon_ _Mortgage Co.,_ supra at 1174, "[t]he burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff," and here that burden has been fully satisfied. While the policies that the Class Members held may not be entirely identical--as several different policy forms have been alleged--the theories underlying the Class claims involve a common nucleus of fact and law.

In addition, we find no inherent conflicts between the interests of the representative Plaintiffs, and of the Class Members. "In order to satisfy the adequacy requirements, the Plaintiffs must show 'that (1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously, and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge.' " _In re Hartford Sales_ _Practices Litigation,_ supra at 604, quoting _In re Potash_ _Antitrust Litigation,_ 159 F.R.D. 682, 692 (D.Minn.1995). No one has suggested that the named

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Plaintiffs, or their attorneys, would not vigorously promote the interests of the Class, although the Objectors raise some question, as to whether the named Plaintiffs can adequately represent claims, which arise from the alleged practices of the Defendants, to which they were not personally exposed. [FN13] Unfortunately for this argument, the assertion is purely conclusory and, on this Record, we have no responsible basis to infer that any Class-wide claim is at odds with a claim held by the named Plaintiffs. Accordingly, we conclude that the Plaintiffs have borne their burden of satisfying the pre-requisites of Rule 23(a), and we turn our analysis to the requirements of Rule 23(b)(3), Federal Rules of Civil Procedure.

FN13. Under closely paralleling circumstances, the Court of Appeals for the Third Circuit recognized that the named plaintiffs, in that litigation, were adequate to represent the interests of those who, finitely, had factual claims which were distinct from theirs. As the Court reasoned:

As discussed, the crux of this class action is the allegation that Prudential engaged in a scheme to defraud policyholders by means of company-wide deceptive sales practices. The named parties, like the members of the class, would need to establish this scheme in order to succeed on any of the claims in the Second Amended Consolidated Complaint. Even those class members with "other" claims share in the common task of demonstrating the existence and implementation of this scheme. Consequently, we believe the proposed class satisfied the adequacy of representation requirement of Rule 23(a).
In re Prudential Ins. Co. America Sales Litigation, 148 F.3d 283, 313 (3rd Cir.1998), cert. denied, 525 U.S. 1114 (1999).
No one has offered any cogent reason to depart from the analysis, and holding, in In re Prudential.

*13 Rule 23(b)(3) provides as follows:
An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

* * *

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient

adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

In addressing the predominancy issue, we are mindful that two Courts within this District have denied class certification, on this precise question, which involved some of the same genre of claims that are involved here. See, In re Hartford Sales Practices Litigation, supra; Parkhill v. Minnesota Mut. Life Ins. Co., supra.

Both of those cases, however, considered the issue in a different context, as neither Court was confronted with a settlement proposal which, under Rule 23(e), Federal Rules of Civil Procedure, requires "the approval of the court." We do not raise this distinction to suggest that a different standard of review should apply--for it does not--but to highlight the fact that the certification question, which was before those Courts, was hotly contested and, as a result, the Record presented by the respective parties was markedly different than that which confronts us here. Both Courts acknowledged that the issue of predominance was fact-driven, and that no "bright-line" could govern its disposition. See, In re Hartford Sales Practices Litigation, supra at 604; Parkhill v. Minnesota Mut. Life Ins. Co., supra at 340. Illustrative of that fact is the extent to which the Court, in Parkhill, relied upon Affidavits which highlighted individualized factual determinations which fragmentized any commonality that would otherwise be presented by the class issues. See, Parkhill v. Minnesota Mut. Life Ins. Co., supra at 340-41. We have been presented with no such Affidavits, and the allegations of the First Amended Complaint, as we have previously detailed, reflect an alleged course of conduct, on the part of the Defendants, which has accentuated the uniformity of the Defendant's dealings with prospective insureds, and has minimized any individualized claims of fraud or misrepresentation. Accordingly, the Record we confront is distinctly different from that presented in Parkhill and, because the allegations of the pleadings, in Hartford, were not fully recited, we are unable to definitively address whether the Court, there, would have reached the same absence of predominance finding, if it were faced with the pleadings we are obliged to here consider.

*14 When presented with the same mix of claims, as

have been raised in this action, the Court of Appeals for the Third Circuit was persuaded that common issues predominated over individualized claims, and the Court affirmed the certification of a class, much larger than that involved here, for settlement purposes. In so holding, the Court reasoned as follows:

> As the Supreme Court noted in Amchem, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws * * * [e]ven mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement." Amchem, 521 U.S. at ---, 117 S.Ct. at 2250 (citing Adv. Comm. Notes, 28 U.S.C.App., p. 697). This case, involving a common scheme to defraud millions of life insurance policy holders, falls within that category. The district court's opinion sets forth a litany of common issues which the class must demonstrate in order to prevail. See supra § IV.B.1 and n. 47-48. While individual questions may arise during the course of this litigation, we agree with the district court that the presence of individual questions does not per se rule out a finding of predominance. In particular, the "presence of individual questions as to the reliance of each investor does not mean that the common questions of law and fact do not predominate." Eisenberg v. Gagnon, 766 F.2d 770, 786 (3rd Cir.1985).

*In re Prudential Ins. Co. America Sales Litigation,* supra at 314-15.

Given the similarity of allegations, as contained in the First Amended Complaint, with those addressed in *In re Prudential,* we conclude that, under these circumstances, the Plaintiffs have met the predominance requirement of Rule 23(b)(3). Necessarily, our finding is limited to the Record before us, and we draw no bright-line demarcation which, generically, would be applicable, in future lawsuits, without regard to the specific content of the pertinent pleadings.

With respect to the other considerations enumerated in Rule 23(b)(3), we have been presented with no showing that the presentation of individualized claims, in separate proceedings, would be superior to the vehicle of a class action. In apparent recognition of that fact, the settlement proposal does allow a cost-free mechanism for the resolution of separate claims, which would allow them to be fully litigated, notwithstanding the relatively modest recoveries that those claims would likely generate. We think this provision speaks eloquently to the unlikelihood that any policy-holder would endure the cost of litigating a claim, in his or her own Court action, with the unlikely prospect of any generous recovery.

We are not aware of any litigation, elsewhere, that would tend to undermine the certification being requested by the Class, and this District would appear to be a uniquely appropriate forum for the resolution of the policyowners' claims. The Defendants are either incorporated under Minnesota law and do business here, or they are wholly-owned subsidiaries of Minnesota corporations. The propriety of Minnesota, as the forum District, is amply corroborated by the independent decision of the United States District Court, for the Central District of California, which transferred this action to this venue. [FN14]

> FN14. With respect to the issue of manageability, we draw our guidance from the following observation of the Supreme Court, in *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620 (1997): Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.
> Here, the trial of the parties' respective claims would be challenging, indeed, but it would not be managerially insurmountable.

*15 Lastly, we are aware of the concern, by certain of the Intervenors, that the Class, which is proposed for certification, runs afoul of the Supreme Court's pronouncements in *Amchem Products, Inc. v. Windsor,* supra, because the Class is not sufficiently "cohesive," and therefore, in their view, should be divided into subclasses. The same argument was raised, and rejected, in *Petrovic v. Amoco Oil Co.,* supra at 1145-46, as follows:

> Amchem, 521 U.S. at 601-02, 117 S.Ct. 2231, and Ortiz [v. Fibreboard Corp., 527 U.S. 815, 119 S.Ct. 2295] at 2305 [ (1999) ], each involved a situation in which the parties agreed upon a class definition and a settlement before formally initiating litigation, and then presented the district court with the complaint, proposed class, and proposed settlement. The difficulty inherent in such a situation is that the district court "lack[s] the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem, 521 at 620, 117 S.Ct. 2231. In our case, however, the parties engaged in more than three years of extensive discovery and preparation for trial, and the class was certified under Fed. R.Civ.P. 23(b)(3) many months before the parties reached the settlement. Indeed, the settlement was reached on the eve of trial.

The difficulties associated with settlements like those in Amchem and Ortiz-- the possibility of "collusion between class counsel and the defendant * * * [and] the need for additional protections when the settlement is not negotiated by a court designated class representative," Hanlon v. Chrysler Corporation, 150 F.3d 1011, 1026 (9 th Cir 1998)--are therefore not present here.

* * *

If the objectors mean to maintain that a conflict of interest requiring subdivision is created when some class members receive more than other class members in a settlement, we think that the argument is untenable. It seems to us that almost every settlement will involve different awards for various class members. Indeed, even if every class member were to receive an identical monetary award in settlement, the true compensation would still vary from member to member since risk tolerance varies from person to person (i.e., a more risk-averse class member would place a greater premium on the certainty of a settlement award than a less risk-averse class member would).

We also do not believe, as the objectors suggest, that the stark conflicts of interest that the Supreme Court discerned in Amchem and Ortiz are present here. In those cases the Court found that a conflict existed between class members who already had asbestos-related injuries (and who would want to maximize immediate payout) and class members who might develop asbestos-related injuries in the future (and who would want to maximize testing, protection from inflation, and future fund size). See Amchem, 521 U.S. at 626, 117 S.Ct. 2231, and Ortiz, 119 S.Ct. at 2319-20. We note that the injuries involved in those cases were extraordinarily various, both in terms of the harm sustained and the duration endured. Our case, on the other hand, involves a discrete and identified class that has suffered a harm the extent of which has largely been ascertained.

*16 We think the very same may be said here and, considering the Record before us as a whole, we believe, as the Court did in In re Prudential Ins. Co. America Sales Litigation, supra at 317, quoting Amchem Products, Inc. v. Windsor, supra at 621, that the "proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives."

In sum, having closely examined the factors that must be satisfied, even for settlement-only classes, we find and conclude that the proposed Class should be certified, and we grant the Plaintiff's Motion in that respect.

C. The Motions for Final Approval of Settlement, and for an Award of Attorneys' Fees.

To be approved, under Rule 23, a class action settlement agreement must be "fair, reasonable, and adequate." Petrovic v. Amoco Oil Co., supra at 1148, citing In re Flight Trans. Corp Sec. Litig., 730 F.2d 1128, 1135 (8th Cir.1984), cert. denied, 469 U.S. 1207 (1985); see also, DeBoer v. Mellon Mortg. Co., supra at 1176. "To determine whether a settlement satisfies these standards, the Court must consider: the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." In re Airline Ticket Comm'n Antitrust Litig., 953 F.Supp. 280, 282 (D.Minn.1997), quoting Van Horn v. Trickey, 840 F.2d 604, 607 (8 th Cir.1988). Of these, "[t]he most important consideration * * * is " 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.' " ' Petrovic v. Amoco Oil Co., supra at 1150, quoting Grunin v. Int'l House of Pancakes, 513 F.2d 114, 124 (8 th Cir.1975), cert. denied, 423 U.S. 864 (1975).

As is always the case, settlements bring a certainty to the resolution of disputes that a Trial cannot, until the Trial, and any subsequent appeals, are concluded. Fairly appraised, the Plaintiffs' claims are ineluctably subject to a number of procedural and substantive defenses which would be formidable, if not legally insurmountable, as to significant portions of the Class. As the Defendants emphasize, they do not admit liability, and they regard their defenses, based upon the applicable statutes of limitations, as well as the considerable substantive hurdles to a finding of liability, to be insuperable. No one, including the Intervenors, so much as intimates to the contrary. The expense of proving the Class Members' claims would be an extremely costly endeavor, and the ultimate resolution of the action, following a Trial and all possible appeals, could well extend into the distant future, particularly if Trial-error were found, such as to warrant a re-trial, and renewed appeal. Such temporal realities counsel a careful examination of any resolution that incurs less, unavoidable, delay. The delay in implementing this proposed settlement would be inappreciable.

*17 We have no reason to believe that the Defendants are not financially able to bear any resultant Verdict--if one were forth-coming--but the Record has not been fully developed in that respect. We are certain, however, that the Defendants' have sufficient wherewithal to mount the form of arduous defense that their papers predict. The prospect of intractable

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

litigation, when the amounts in controversy, as considered on an individual basis, are fairly modest, counsels an amicable resolution of this dispute.

The proposed settlement assures that all Class Members, if that should be their election, will receive a recovery under the CIB or, if they believe that they have compelling claims that warrant greater relief, they may resort to the CRP, where full compensatory damages are recoverable, without any cap to the totality of the Class claims. Under this mechanism, one Class Member does not compete with others such that one Members recovery from the Class pool will lessen the potential recovery by others. Of course, the CRP requires proof, and the probative weight of the proof will dramatically affect the recovery that could be claimed. If, as would appear to be likely, the passage of time, or a statute of limitation, would diminish the potential of a recovery, the Class Member is not without relief, as he or she need only apply under the CIB program. We think the settlement mechanism is both fair and workable, and it entails no further legal expense on the part of Class Members.

Of course, resolving this case, amicably, has not been without its detractors. As we have previously observed, however, the opposition that has been generated is both scant, and insubstantial. While the "amount of opposition to the settlement" is one factor to consider, the relative absence of objection is not dispositive. Nevertheless we may not ignore the near absence of objection, and the absence of substantial opposition to a proposed settlement may be considered as supporting approval of that accord. *DeBoer v. Mellon*, supra at 1178 ("The fact that only a handful of class members objected to the settlement similarly weighs in its favor."). More importantly, however, we find the opposition to the proposed settlement to be token, at best.

Some of the Movants, and Objectors, take exception to the amount of compensation that would be awarded under the CIB, or they would prefer cash payments, as opposed to additional insurance coverage for a designated period of time. As the Court observed, in *In re Airline Ticket Comm'n Antitrust Litig.*, supra at 282:

A settlement sum is, in virtually every case, less than the claimed loss. A settlement is, necessarily, a compromise between plaintiffs, who did not win their case, and defendants, who did not lose theirs. These settlements, like all others, reflect each side's considered view of the risks of an adverse judgment and the value of buying peace. The Court finds the parties' views in this regard to be reasonable.

*18 So do we. While at least one of the Movants takes exception to the prospect that a Class Member, who elects to proceed with the CRP, as opposed to accepting CIB relief, could ultimately receive no recovery--suggesting to that Movant, that the CIB relief should be a floor, and that Class Members should be allowed to proceed with the CRP process in addition to the CIB relief--such a proposal is wholly unrealistic. [FN15] As the Defendants emphasize, without contra-diction from the Plaintiffs, many of the Class Members have claims which could be unprovable, due to the passage of substantial periods of time since the claim accrued, or because they would be barred, in all probability, by an applicable statute of limitations. [FN16] In contrast to the Movant's charitable approach, few choices in life are without some consequence, and we doubt that any settlement could persist--at least with comparable benefits for all Class Members--if the Movant's approach were accepted. We exist in the real world, and not in a realm in which every decision is guaranteed a benefit.

FN15. In one objection, the concern is raised that, under one scenario, the CIB relief would only be awarded if the Class Member should die, thereby activating the insurance coverage. Under the life insurance at issue here, however, that is the precise benefit for which coverage was originally secured. Other Objectors have complained that the total value of the settlement package had not been disclosed in the settlement Notice. While true, we do not understand how that omission could prejudice any specific Class Member, who was at liberty to elect to remain in the Class, or to opt-out, and who could select the avenue of relief that best suited his or her needs, based upon the specific disclosures in the Notice, and the attached documentation. Whether the total value of the settlement is adequate, and whether the attorneys' fees being requested are consonant with that value, are questions far removed from the Class Members decision as to whether the proffered relief should meet his or her needs.

We can understand how certain Objectors would not comprehend the full liability exposure to which the Defendants are actuarially exposed--as a result of their extending additional coverage for determined periods of time, but that misapprehension does not diminish the real value of the settlement proposal. Here the Plaintiffs have demonstrated, as corroborated by the experts of the Defendant, that the value of the settlement can be properly estimated at approximately $53.4 million dollars, with

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

$43.4 million being attributable to the CIB relief, and a minimum of $10 million arising from the CRP program. We conclude that the settlement has real value, and that it provides a real benefit to those Class Members who elect to participate in its coverage. The settlement, in our judgment, is fair and adequate.

Lastly, in various *pro forma* objections, criticisms are directed at the adequacy, or clarity, of the Notice sent to Class Members. We find the Notice suitable in informing the Class of the essentials of the settlement proposal and, in particular, we note that any further information was available to the Class by virtue of a commendably comprehensive outreach program.

FN16. Notably, the Defendants have waived the limitations period for purposes of the CRP, a significant benefit to Class Members that, by every appearance, would not be otherwise available to them.

Several other technical objections have been filed, including that the CRP is burdensome, or that it should allow *de novo* review upon appeal to an Arbitrator. The alternative dispute mechanism has been well-considered, but it, like any other human endeavor, is not immune to criticism. Nonetheless, we find the amendments proposed by the Objectors provide no superiority in benefits, to the Class Members, than the approach that the parties have agreed-upon. The CRP providently incorporates a cost-free opportunity for a Class Member to litigate his or her claim, with the assistance of legal representation that is provided at the expense of the Defendants. Even if we were to assume, for these purposes, that a Class Member would have to carefully read the settlement proposal, so as to understand his or her right to pursue the CRP approach, we would not expect less of any litigant. Under the proposal here, if a Class Member has questions about any aspect of the settlement agreement, inclusive of the CRP, or about the advisability of following one avenue of relief as opposed to another, the Class Member has ready access to an ombudsman, who is appropriately trained, and who is available by telephone, at no cost to the Class Member, in order to address the Class Member's individually-tailored issues and concerns. If yet unsatisfied, the Class Member can directly inquire of Class Counsel--again without incurring any expense. We find this mode of outreach, as coupled with alternative dispute resolution, to be commendable and, in the context of other class settlements, to be enviable.

Nor do we find any superior benefit to be provided by allowing an Arbitrator, who is selected by Class Counsel, and funded by the Defendants, to have full authority to decide an issue, without regard to the positions taken by the respective parties. Arbitrations are frequently employed with "high-low" parameters, because the parties are desirous of some degree of certainty in the result to be reached. Since the Arbitrator's ultimate decision is final, we see nothing unacceptable in the procedures that the parties have formulated for the resolution of CRP disputes.

*19 In sum, we have closely examined the concerns of the Objectors, and of the Intervenors, and we find them substantively wanting. We are obligated to consider a settlement in the context of contested litigation, whose result is uncertain--seldom, if ever, is a settlement the equivalent, as the Objectors seem to imply, of a "wish list" tendered by the victorious litigant. While the Movants understandably want more from the settlement, they offer no assurance that, under the circumstances presented, a greater recovery could be secured at Trial. Having settled, through Court-assisted mediation, far more complex class action matters than the one presented here, we find the settlement agreement consistent with an exercise of good business judgment by all concerned.

Finally, we must consider the propriety of the Plaintiffs' request for attorneys' fees and costs in the amount of $6.6 million. Given the liberal access, that Plaintiffs' Counsel has extended to the Class Members, and that allows the Class Members to consult, without cost, with Class Counsel on any matter relevant to the implementation of this settlement, and given the effort that Class Counsel expended in securing the settlement agreement, that we now review, we are fully satisfied that the requested award of attorneys' fees is both reasonable, and deserving. Class Counsel have secured a favorable recovery for the Class Members, and they should be commensurately rewarded for that recovery. Our acceptance of the fee request is facilitated by the fact that the fee amount was independently negotiated by the settling parties, and comes from a source that does not impact upon the total settlement fund that is available to the Class. The Intervenors, and Objectors, do not so much as suggest, let alone establish, that the fee award has detracted, in any measurable way, from the relief the Class can expect from the settlement that we now approve.

While the requested attorneys' fees exceed the value of the attorneys' time, as computed by a lodestar approach, we find the request reasonable in view of the benefits afforded the Class by the settlement that Class Counsel have secured. Class Counsel funded the prosecution of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

the Plaintiffs' claims, and expended thousands of hours of legal effort, which could otherwise have been billed to litigation that competes with this one for counsels' time. As a percentage of the total value of the settlement secured, the amount of the requested fees is strikingly small, at least in the milieu of class action lawsuits. Realistically, counsel assumed responsibility for litigating claims that less dedicated attorneys would have ignored, or abandoned, and the fees and costs being requested are, in all things, reasonable. We are also impressed by the fact that Class counsel assume the risk of being obligated, under the Settlement Agreement, to provide legal services, without recompense, for as long as they are needed, in the settlement process, by the Class.

*20 Therefore, given the entirety of the Record before us, we grant the Motion to Approve the Settlement, and we award the attorneys' fees, and costs, that have been requested by the Class.

NOW, THEREFORE, It is--

ORDERED:

1. That the Motions to Intervene of Leo E. Clark [Docket No. 171], Susan D. Deese [Docket No. 240], and John P. Willis, III [Docket No. 251], are GRANTED, but solely for the purpose of instituting an appeal from the Orders of this Court, which resolve the Class Settlement issues, and any Judgment entered thereon.

2. That the Motions for Final Approval of Settlement, for Certification of the Class, and for an Award of Attorneys' Fees are GRANTED, and Plaintiffs' are awarded attorneys' fees and costs in the amount of $6.6 million.

2. That the Court will separately enter an Order Approving Class Action Settlement, which will address, and resolve, any remaining ministerial issues.

3. That Final Judgment shall be entered, consistent with our disposition of this action.

2000 WL 1336640 (D.Minn.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# EXHIBIT C

1

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP
BLAIR A. NICHOLAS   (Bar No. 178428)
blairn@blbglaw.com
NIKI L. MENDOZA   (Bar No. 214646)
nikim@blbglaw.com
BENJAMIN GALDSTON   (Bar No. 211114)
beng@blbglaw.com
JON F. WORM   (Bar No. 248260)
jonw@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323

BERMAN DeVALERIO
JOSEPH J. TABACCO, JR. (Bar No. 75484)
jtabacco@bermandevalerio.com
NICOLE LAVALLEE (Bar No. 165755)
nlavallee@ bermandevalerio.com
KRISTIN J. MOODY (Bar No. 206326)
kmoody@bermandevalerio.com)
JULIE J. BAI (Bar No. 227047)
jbai@ bermandevalerio.com
One California Street, Suite 900
San Francisco, CA 94111
Tel:   (415) 433-3200
Fax:   (415) 433-6382

NOTE: CHANGES MADE BY THE COURT

*Attorneys for Co-Lead Plaintiffs*
*General Retirement System of the City of Detroit*
*and Massachusetts Laborers' Pension Fund*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| IN RE INTERNATIONAL RECTIFIER CORPORATION SECURITIES LITIGATION | Case No. CV 07-02544-JFW (VBKx)<br><br>**ORDER AWARDING ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**<br><br>**Date:  February 8, 2010**<br>**Time:  1:30 p.m.**<br>**Courtroom:  16** |
|---|---|

1       Lead Counsel's Application For Attorneys' Fees And Reimbursement Of

2  Litigation Expenses ("Fee And Expenses Application") duly came before the Court

3  for hearing on February 8, 2010.  The Court has considered the Fee And Expense

4  Application and all supporting and other related materials, including any objections

5  and all matters presented at the February 8, 2010 hearing.  Due and adequate notice

6  having been given to the Class as required by the Court's Order Preliminarily

7  Approving Settlement And Providing For Notice (Docket No. 293), and the Court

8  having considered all papers filed and proceedings had herein and otherwise being

9  fully informed in the proceedings and good cause appearing therefor;

10      NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

11      1.    This Order incorporates by reference the definitions in the Stipulation,

12  and all capitalized terms used, but not defined herein, shall have the same

13  meanings as in the Stipulation.

14      2.    This Court has jurisdiction over the subject matter of the Consolidated

15  Action and over all parties to the Consolidated Action, including all members of

16  the Class.

17      3.    The Fee And Expense Application filed in connection with the

18  Settlement is hereby GRANTED.

19      4.    The objections to the Fee And Expenses Application are overruled.

20      5.    The Court hereby awards attorneys' fees of $22,329,915.24 (25% of

21  the $90,000,000 Settlement Fund net of expenses), payable to Lead Counsel.  The

22  Court also grants Lead Counsel's request for reimbursement of litigation expenses

23  in the amount of $680,339.03.

24      6.    Pursuant to Paragraph 17 of the Stipulation, the attorneys' fees and

25  expenses awarded herein shall be paid to Lead Counsel from the Settlement Fund

26  immediately upon entry of this Order, notwithstanding the existence of any timely

27  filed objections thereto, or potential for appeal therefrom, or collateral attack on

28  the Settlement or any part thereof.

7.     The Court finds that an award of attorneys' fees of 25% of the net Settlement Fund is consistent with the Ninth Circuit's "benchmark," and is fair and reasonable in light of the following factors, among others:  the contingent nature of the case; the quality of the legal services rendered; the benefits derived by the Class; the institutional Lead Plaintiffs' support of the Fee And Expense Application; and the reaction of the Class.

8.     The Court further finds that the request for reimbursement of litigation expenses is reasonable in light of Lead Counsel's prosecution of this action against the Defendants on behalf of the Class.

9.     There is no just reason for delay in the entry of this Order, and immediate entry of this Order by the Clerk of the Court is expressly directed.

IT IS SO ORDERED.

DATED: February 8, 2010

THE HONORABLE JOHN F. WALTER
UNITED STATES DISTRICT COURT JUDGE

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT Of MINNESOTA

---

Daryl L. Cooper, on behalf of himself
and all others similarly situated,

Court File No. 02-CV-1236 RHK/AJB

Plaintiff,

v.

Miller Johnson Steichen Kinnard, Inc.,

Defendant and Counterclaimant,

v.

Daryl L. Cooper, on behalf of himself
and all others similarly situated (the
"Counterclaim Defendant Class"),

Counterclaim Defendants.

---

## FINAL ORDER APPROVING AWARD OF
## ATTORNEYS' FEES AND COSTS TO CLASS COUNSEL

On the 22nd day of July, 2003, the matter of the attorneys' fees and costs sought by

Class Counsel came before the Court for consideration.  Appearing on behalf of Plaintiff and

the Class were Karl L. Cambronne and Jeffrey D. Bores, Chestnut & Cambronne, P.A., 3700

Campbell Mithun Tower, 222 South Ninth Street, Minneapolis, MN 55402; and Jan

Stuurmans, Law Offices of Jan Stuurmans, P.A., 1008 Plymouth Building, 12 South Sixth

Street, Minneapolis, MN 55402 ("Class Counsel").  Appearing on behalf of Defendant Miller

Johnson Steichen Kinnard, Inc. were Ted S. Meikle and F. Chet Taylor, Meikle & Taylor,

P.A., 4000 Campbell Mithun Tower, 222 South Ninth Street, Minneapolis, MN 55402.

Other appearances were as noted on the record.

1

WHEREAS, in accordance with the Notice disseminated to the Potential Members of the Class, a hearing was held on July 22, 2003, at which all interested persons were given an opportunity to be heard; and

WHEREAS, the Court has entered a separate Order decreeing that all provisions and terms of the Stipulation of Settlement (including the Stephenson Agreement attached thereto as Exhibit A) and the settlement embodied therein are fair, reasonable, and adequate as to the Members of the Class and Plaintiff, and approving in all respects all provisions and terms of the Stipulation of Settlement (including the Stephenson Agreement attached thereto as Exhibit A) and the settlement embodied therein. The issue remaining before the Court is the award of attorneys' fees and costs sought by Class Counsel.

NOW, THEREFORE, the Court having read and considered all submissions made in connection with the request for an award of attorneys' fees and costs to Class Counsel, and having reviewed and considered the files and records herein, finds and concludes as follows;

A.   Class Counsel have applied to the Court for an award of attorneys' fees and costs in connection with their representation of Plaintiff and the Class and their settlement of the Action. Pursuant to the Notice approved by the Court, and upon notice to all parties, a hearing was held before this Court on July 22, 2003, to consider the proposed settlement of the Action, including the matter of the attorneys' fees and costs sought by Class Counsel.

B.   Three objections have been filed. The objections do not challenge the settlement on the basis that it is not fair, reasonable, and adequate under the circumstances, nor do they criticize in any way the services rendered by Class Counsel. Instead, the objections raise generalized concerns over the amount of attorneys' fees sought by Class Counsel.

2

C.     The Court finds that Class Counsel have rendered exemplary service in their representation of Plaintiff and the Class and in their settlement of the Action, and that attorneys' fees of 25% of the Settlement Fund plus interest thereon, and reimbursable costs in the amount of $8,303.12, are fair, reasonable, and fully justified in light of all the circumstances.

NOW, THEREFORE, GOOD CAUSE APPEARING, IT IS ORDERED, ADJUDGED AND DECREED THAT:

1.     The Court possesses jurisdiction over the subject matter of this Action, Plaintiff, Members of the Class, Defendant, and the Released Persons.

2.     The Court orders that Class Counsel shall receive attorneys' fees of 25% of the Settlement Fund (which totals $5.65 million plus accumulated interest) so that the award of fees shall be in the amount of $1,412,500 (plus 25% of the accumulated interest), along with reimbursable costs in the amount of $8,303.12.

**LET JUDGMENT BE ENTERED ACCORDINGLY FORTHWITH.**

Dated:     7/22, 2003
        St Paul, Minnesota

_____
The Honorable Richard H. Kyle
United States District Court Judge

M2:20558323.01

3

EXHIBIT E

ORIGINAL

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| IN RE SELECT COMFORT CORPORATION SECURITIES LITIGATION | ) | Master File No. |
| | ) | 99-884 (DSD/JMM) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) | |
| | ) | |

## ORDER AND FINAL JUDGMENT

On the 28th day of February, 2003, a hearing was held before this Court to determine: (1) whether the terms and conditions of the Stipulation and Agreement of Settlement dated November 12, 2002 (the "Stipulation of Settlement") are fair, reasonable and adequate for the settlement of all claims asserted by the Class against the Settling Defendant in the Complaint now pending in this Court under the above caption, including the release of the Settling Defendant and the Released Parties, and should be finally approved; (2) whether judgment should be entered dismissing the Complaint with prejudice in favor of the Settling Defendant and as against all persons or entities who are members of the Class herein who have not requested exclusion therefrom; (3) whether to approve the Plan of Allocation as a fair and reasonable method to allocate the settlement proceeds among the members of the Class; and (4) whether and in what amount to award Plaintiffs' Counsel fees and reimbursement of expenses. The Court having considered all matters submitted to it at the hearing and otherwise; and it appearing that a notice of the hearing substantially in the form approved by the Court was mailed to all persons or entities reasonably identifiable, who (i) purchased Select Comfort Corporation ("Select Comfort") common stock issued under and/or traceable to the company's registration statement and prospectus dated December 4, 1998, which was declared effective by the Securities and Exchange Commission ("SEC") on December 3, 1998 and filed in connection with Select Comfort's initial public offering ("IPO"); or (ii) purchased Select

Comfort common stock in the open market during the period December 4, 1998 through June 7, 1999, as shown by the records of Select Comfort's transfer agent, at the respective addresses set forth in such records, except those persons or entities excluded from the definition of the Class or who previously excluded themselves from the Class, and that a summary notice of the hearing substantially in the form approved by the Court was published in the national edition of The Wall Street Journal and on the Internet over the BusinessWire news service pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and expenses requested; and all capitalized terms used herein having the meanings as set forth and defined in the Stipulation of Settlement.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    The Court has jurisdiction over the subject matter of the Action, the Plaintiffs, all Class Members, and the Settling Defendant.

2.    Notice of the proposed Settlement was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the of the terms and conditions of the Settlement met the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. 78u-4(a)(7) as amended by Private Securities Litigation Reform Act of 1995 (the "PSLRA"), due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

3.    The Settlement is approved as fair, reasonable and adequate, and the parties are directed to consummate the Settlement in accordance with the terms and provisions of the Stipulation.

510043-1                                                  - 2 -

4.     The Complaint, which the Court finds was filed on a good faith basis in accordance with the PSLRA and Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information, is hereby dismissed with prejudice and without costs, as provided in the Stipulation.

5.     Each Plaintiff and each Class Member who did not submit a timely and proper request for exclusion from the Class, and the successors and assigns of any of them, are hereby conclusively deemed to have released the Defendants from, and are hereby permanently barred and enjoined from instituting, commencing or prosecuting, either directly or in any other capacity, any and all claims, including "Unknown Claims" (as defined below), demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, whether or not concealed or hidden, asserted or that might have been asserted directly or indirectly, including, without limitation, claims for negligence, gross negligence, breach of duty of care and/or breach of duty of loyalty, fraud, breach of fiduciary duty, or violations of any state or federal statutes, rules or regulations, by any Representative Plaintiff or Class Member against the Released Parties arising out of, based upon or related to: (i) any of the facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act which were alleged in the Action, or (ii) any of the facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act which were or could have been alleged in the Action in connection with the purchase of Select Comfort common stock (aa) during the period December 3, 1998 through June 7, 1999, or (bb) issued under and/or traceable to Select Comfort's registration statement and prospectus, dated December 4, 1998 which was declared effective by the Securities and Exchange Commission on December 3, 1998 and filed in connection with Select Comfort's initial public offering (the "Settled Claims") against the Settling

310044- 1                                    - 3 -

Defendant. its past or present officers. directors, subsidiaries, parents, successors and predecessors. agents, employees. attorneys, auditors, accountants. underwriters. insurers. co-insurers, reinsurers, assigns. spouses. heirs and any person. firm, trust, corporation. officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any Defendant, and the legal representatives, heirs, successors in interest or assigns of any Defendant (the "Released Parties"). The Settled Claims are hereby compromised, settled, released. discharged and dismissed as against the Released Parties with prejudice by virtue of the proceedings herein and this Order and Final Judgment.

6.      The Settling Defendant and its successors and assigns are hereby permanently barred and enjoined from instituting, commencing or prosecuting, either directly or in any other capacity, any and all claims. rights or causes of action or liabilities whatsoever, whether based on federal, state. local, statutory or common law or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in the Action or any forum by Settling Defendant or its successors and assigns against any of the Plaintiffs. Class Members or their attorneys. which arise out of or relate in any way to the institution, prosecution, or settlement of the Action except claims relating to the enforcement of the settlement of the Action (the "Settled Defendants' Claims") against any of the Plaintiffs, Class Members or their attorneys. The Settled Defendants' Claims are hereby compromised, settled, released. discharged and dismissed with prejudice by virtue of the proceedings herein and this Order and Final Judgment.

7.      "Unknown Claims" means (i) any and all Settled Claims which any Plaintiff or Class Member does not know or suspect to exist in his. her or its favor at the time of the release of the Released Parties. which if known by him, her or it might have affected his, her or its settlement with

and release of the Released Parties, or might have affected his, her or its decision not to object to this

Settlement, and (ii) any and all Settled Defendant's Claims which Settling Defendant does not know

or suspect to exist in its favor, which if known by it might have affected its decision to release all

Settled Defendant's Claims.  With respect to any and all Settled Claims and Settled Defendant's

Claims, the settling parties stipulate and agree that upon the Effective Date, the Plaintiffs and

Settling Defendant shall expressly, and each Class Member shall be deemed to have, and by

operation of the Judgment shall have, expressly waived any and all provisions, rights and benefits

of California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to
> exist in his favor at the time of executing the release, which if known by him must have
> materially affected his settlement with the debtor.

The Plaintiffs and Settling Defendant shall expressly, and each Class Member shall be deemed to

have, and by operation of this Judgment shall have, expressly waived any and all provisions, rights

and benefits conferred by any law of any state or territory of the United States, or principle of

common law, which is similar, comparable and equivalent to California Civil Code § 1542.  The

Plaintiffs, Settling Defendant and Class Members may hereafter discover facts in addition to or

different from those which he, she or it now knows or believes to be true with respect to the subject

matter of the Settled Claims or the Settled Defendant's Claims, but the Plaintiffs and Settling

Defendant shall expressly, and each Class Member, on the Effective Date, shall be deemed to have,

and by operation of this Judgment shall have, fully, finally and forever settled and released any and

all Settled Claims and Settled Defendant's Claims, whether known or unknown, suspected or

unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist,

or heretofore have existed, upon any theory of law or equity now existing or coming into existence

in the future, including, but not limited to conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Plaintiffs and Settling Defendant acknowledge, and the Class Members shall be deemed by operation of this Judgment to have acknowledged, that the foregoing waiver was separately bargained for and was a key element of the Settlement of which this release is a part.

8.      Neither this Order and Final Judgment, the Stipulation, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein shall be:

(a) offered or received against the Settling Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by the Settling Defendant with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that had been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing of the Settling Defendant;

(b) offered or received against the Settling Defendant as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Settling Defendant, or against the Plaintiffs and the Class as evidence of any infirmity in the claims of Plaintiffs and the Class;

(c) offered or received against the Settling Defendant or against the Plaintiffs or the Class as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the

parties to the Stipulation, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; provided, however, that the Settling Defendant may refer to the Stipulation to effectuate the liability protection granted them thereunder:

(d)  construed against the Settling Defendant or the Plaintiffs and the Class as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; or

(e)  construed as or received in evidence as an admission, concession or presumption against Plaintiffs or the Class or any of them that any of their claims are without merit or that damages recoverable under the Complaint would not have exceeded the Settlement Fund.

9.    The Plan of Allocation is approved as fair and reasonable, and Plaintiffs' Counsel and the Claims Administrator are directed to administer the Stipulation in accordance with its terms and provisions.

10.   The Court finds that all parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

11.   Plaintiffs' Counsel are hereby awarded __33-1/3__% of the Gross Settlement Fund in fees, which the Court finds to be fair and reasonable, and $ __414,633.19__ in reimbursement of expenses, which expenses shall be paid to Plaintiffs' Co-Lead Counsel from the Settlement Fund with interest from the date such Settlement Fund was funded to the date of payment at the same net rate that the Settlement Fund earns. The award of attorneys' fees shall be allocated among Plaintiffs' Counsel in a fashion which, in the opinion of Plaintiffs' Co-Lead Counsel, fairly compensates Plaintiffs' Counsel for their respective contributions in the prosecution of the Action.

310044-1                                    - 7 -

12.     Exclusive jurisdiction is hereby retained over the parties and the Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order and Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the members of the Class.

13.     Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

14.     There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54 (b) of the Federal Rules of Civil Procedure.

Dated: _____, 2003

THE HONORABLE DAVID S. DOTY
UNITED STATES DISTRICT COURT JUDGE

# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------

IN RE E.W. BLANCH HOLDINGS,
INC. SECURITIES LITIGATION

Civil File No. 01-258 (JNE/JGL)

------------------------------------------------

## ORDER FOR FINAL JUDGMENT

**WHEREAS**, the parties to the above-described class action (the "Action")

entered into a Settlement Agreement dated as of April 14, 2003 (the "Settlement"); and

**WHEREAS**, on April, 16, 2003, the Court entered an Order Preliminarily

Approving Settlement, which, <u>inter alia</u>:  (i) preliminarily approved the Settlement;

(ii) determined that, for purposes of the Settlement only, the Action should proceed as a class

action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on

behalf of a class consisting of all persons, including EWB employees, who purchased any

common stock of E.W. Blanch Holdings, Inc. ("EWB") during the period beginning April

20, 1999 through March 20, 2000, inclusive, except the defendants, any member of the

immediate family of any individual defendant, any entity in which any defendant has a

controlling interest, and any legal representative, heir, controlling person, successor,

predecessor in interest or assign of any defendant ("Settlement Class"); (iii) approved the

forms of notice of the Settlement to members of the Settlement Class ("Class Members");

(iv) directed that appropriate notice of the Settlement be given to the Settlement Class; and

(v) set a hearing date for final approval of the Settlement; and

FILED
RICHARD D. SLETTEN, CLERK

WHEREAS, notice of the Settlement was mailed to Class Members on April 25, 2003, and thereafter. The summary notice of the Settlement was published in the national edition of The Wall Street Journal on May 2, 2003; and

WHEREAS, on June 16, 2003, at 10:30 a.m., at the United States District Court for the District of Minnesota, Warren E. Burger Federal Building, 316 North Robert Street, St. Paul, Minnesota 55101, The Honorable Joan N. Ericksen held a hearing on whether the Settlement was fair, reasonable, adequate, and in the best interests of the Settlement Class ("Settlement Hearing"); and

WHEREAS, based on the foregoing, having heard the statements of counsel for the parties and of such persons as chose to appear at the Settlement Hearing, having considered all of the files, records, and proceedings in the Action, and being otherwise fully advised,

## THE COURT HEREBY FINDS AND CONCLUDES that:

A.      This Court has jurisdiction over the subject matter of the Action.

B.      The form, content, and method of dissemination of the notice given to the Settlement Class, including both published notice and individual notice to all Class Members who could be identified through reasonable effort, was adequate and reasonable, and constituted the best notice practicable under the circumstances.

C.      The notice, as given, complied with the requirements of 15 U.S.C. §78u-4(a)(7) and of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth therein.

D.     The Settlement set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

E.     The plan of distribution described in the notice to Class Members is fair and reasonable.

F.     The Representative Plaintiff has fairly and adequately represented the interests of the Class Members in connection with the Settlement.

G.     The Representative Plaintiff and the Class Members, and all and each of them, are hereby bound by the terms of the Settlement set forth in the Settlement Agreement.

H.     The provisions of the Settlement Agreement, including definitions of the terms used therein, are hereby incorporated by reference as though fully set forth herein.

I.     All parties and counsel appearing herein have complied with their obligations under Rule 11(b) of the Federal Rules of Civil Procedure.

**NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED** that:

1.     The Settlement set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class, and it shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

1.     Judgment shall be, and hereby is, entered dismissing the Action with prejudice, on the merits, and without taxation of costs in favor of or against any party.

2.     The Representative Plaintiff and all Class Members are hereby conclusively deemed to have released E.W. Blanch Holdings, Inc., now known as Benfield

Blanch Holdings Inc., Benfield Greig PLC, Benfield Group Ltd., E.W. Blanch Co., Benfield

Blanch Inc., Edgar W. Blanch, Jr., Chris L. Walker, Frank S. Wilkinson, Jr., Ian D. Packer,

and Rodman Fox, all and each of them, and all and each of their respective past and present

parent, subsidiary, and affiliated corporations and entities, the predecessors and successors in

interest of any of them, and all of their respective past and present officers, directors,

employees, agents, partners, representatives, spouses, heirs, executors, administrators,

insurers, attorneys, and assigns (collectively the "Settling Defendants"), with respect to any

and all claims, actions, causes of action, rights or liabilities, whether arising out of state or

federal law, including Unknown Claims, which exist or may exist against any of the Settling

Defendants by reason of any matter, event, cause or thing whatsoever arising out of, relating

to, or in any way connected with: (a) the purchase or sale of any EWB common stock;

(b) any claims that they have had as shareholders of EWB; (c) any of the facts,

circumstances, transactions, events, occurrences, acts, omissions or failures to act that have

been alleged or referred to in any pleading or other paper filed with the Court in this Action;

and (d) any facts, circumstances, transactions, events, occurrences, acts, omissions or failures

to act that could have been alleged in the Action and that relate to the Class Member's

investment or potential investment in EWB (all of the above are "Settled Claims").

      3.    The Representative Plaintiff and all Class Members are hereby barred

and permanently enjoined from instituting, asserting or prosecuting, either directly,

representatively, derivatively or in any other capacity, any and all claims which they or any

of them had or may have against the Settling Defendants, or any of them, arising out of,

based upon, or otherwise related to the Settled Claims.

4.     The Court appoints Karl L. Cambronne and the law firm of Chestnut & Cambronne, P.A. as Plaintiff's Lead Counsel for purposes of administration of the Settlement.

5.     The plan of distribution of the Settlement Fund as described in the notice to Class Members is hereby approved, subject to modification by further order of this Court.  Any order or proceedings relating to the plan of distribution or amendments thereto shall not operate to terminate or cancel the Settlement Agreement or affect the finality of this Order approving the Settlement Agreement.

6.     The Court hereby decrees that neither the Settlement Agreement nor this Final Judgment nor the fact of the Settlement is an admission or concession by any Settling Defendant of any liability or wrongdoing.  This Final Judgment is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action. Neither the Settlement Agreement nor this Final Judgment nor the fact of Settlement nor the settlement proceedings nor the settlement negotiations nor any related documents shall be offered or received in evidence as an admission, concession, presumption or inference against any Settling Defendant in any proceeding, other than such proceedings as may be necessary to consummate or enforce the Settlement Agreement.

7.     The parties to the Settlement Agreement, their agents, employees, and attorneys, and the Escrow Agent, shall not be liable for anything done or omitted in connection with these proceedings, the entry of this Final Judgment, or the administration of the payments to Authorized Claimants as provided in the Settlement Agreement, the Escrow Agreement, and this Order, except for their own willful misconduct.

8.    Class Counsel are awarded attorneys' fees in the amount of

$6,666,666.67 (one third of the gross settlement amount) and reimbursement of expenses,

including experts' fees and expenses, in the amount of $185,719.33, such amount to be paid

from out of the Settlement Fund.  Lead plaintiffs are awarded $25,000. for reimbursement of

their time expended on the Action, such amount to be paid out of the Settlement Fund.

Payment is to be made to Plaintiff's Lead Counsel on behalf of lead plaintiffs and all Class

Counsel.

9.    The Court hereby retains and reserves jurisdiction over:

(a) implementation of this Settlement and any distribution to Authorized Claimants under the

terms and conditions of the Settlement Agreement and pursuant to further orders of this

Court; (b) disposition of the Settlement Fund under the terms and conditions of the

Settlement Agreement; (c) the Action, until (i) the Effective Date contemplated by Paragraph

V(A)(17) of the Settlement Agreement, which will occur on the date upon which the

judgment entered pursuant to this Order becomes final and not subject to further appeal or

review, and (ii) each and every act agreed to be performed by the parties shall have been

performed pursuant to the terms and conditions of the Settlement Agreement, including the

exhibits appended thereto; and (d) all parties, for the purpose of enforcing and administering

the Settlement Agreement and this Settlement.

10.    There being no just reason for delay, the Clerk of Court is hereby

directed to enter final judgment forthwith pursuant to Rule 54(b) of the Federal Rules of

Civil Procedure.

11.    In the event that this judgment does not become Final in accordance

with Paragraph V(A)(17) of the Settlement Agreement, then the final judgment shall be

rendered null and void to the extent provided by and in accordance with the Settlement

Agreement, and this Order for Final Judgment shall be vacated.  In such event, all orders

entered and releases delivered in connection with the Settlement shall be null and void,

except to the extent provided by and in accordance with the Settlement Agreement.  In such

event, the Action shall return to its status prior to execution of the Settlement Agreement.

### LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: _____, 2003.
St. Paul, Minnesota

_____
Joan N. Ericksen
United States District Judge

M2.20528628.04

- 7 -

# EXHIBIT G

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

KK MOTORS and
CHECKMATE BOATS, INC.,

                   Plaintiffs,

v.

BRUNSWICK CORPORATION,

                   Defendant.

Civil No. 98-2307 (JRT/RLE)

**ORDER AND JUDGMENT
GRANTING FINAL APPROVAL OF
SETTLEMENT, AWARDING
ATTORNEYS' FEES AND
DISMISSING THE ACTION**

---

Charles N. Nauen, LOCKRIDGE GRINDAL NAUEN, 100 Washington
Avenue South, Suite 2200, Minneapolis, MN 55401-2179; and K. Craig
Wildfang and Brooks Poley, WINTHROP & WEINSTINE, 3000 Dain
Rauscher Plaza, 60 South Sixth Street, Minneapolis, MN 55402, for plaintiffs.

John D. French, FAEGRE & BENSON, 2200 Norwest Center, 90 South
Seventh Street, Minneapolis, MN 55402-3901; and Gordon C. Atkinson,
COOLEY GODWARD, One Maritime Plaza, 201 Floor, San Francisco, CA
94111, for defendant.


This matter is before the Court for final approval of the settlement agreement and

counsel's request for attorney fees. The Court has reviewed the pleadings, the Agreement

of Settlement entered into among the parties dated December 20, 1999, the Notice of

Pendency and Settlement of Class Action, which was previously approved by this Court by

Order dated January 7, 2000, and the parties' submissions, including the sole objection filed

by a class member. The Court also heard the arguments of counsel with respect to this

FILED      MAR 0 6 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD.   MAR 1 5 2000
DEPUTY CLERK

objection and to final approval of the settlement and the petition for attorney fees and reimbursement of expenses at a hearing on March 2, 2000. For the reasons set forth below, the Court overrules the objection and approves the settlement and petition for attorney fees and expenses.

### A.   Settlement

The parties in this antitrust class action have reached a $30 million settlement. While one class member, Godfrey Conveyor Co. ("Godfrey"), has objected to the attorney fees, no class member has objected to the settlement, and indeed, counsel for Godfrey indicated that he thought this settlement represents the best deal his client could obtain. Other class members have had similarly favorable comments regarding the settlement. Based upon a review of the materials described above and the argument of counsel, the Court finds that the settlement is fair, reasonable, and adequate, and should be finally approved. First, the settlement amount balanced against the substantial risks of continued litigation strongly supports the settlement. Second, the settlement is recommended by the favorable opinions of case participants which are reflected both in counsel's strong endorsement of the settlement and the lack of objections and opt-outs from class members, many of whom are large commercial enterprises with substantial claims. Third, absent settlement, protracted and complex future litigation activity appears to be a certainty. Fourth, because counsel were involved in *Concord Boat Corp. v. Brunswick Corp.*, No. 95-751 (E.D. Ark.), a fully litigated parallel case, they are highly familiar with the strengths and weaknesses of the case and,

-2-

therefore, were able to complete a fully informed evaluation of settlement merits. Finally, it is apparent that defendant is a formidable adversary and that the settlement is not the product of collusion. Accordingly, the settlement is approved.

### B.   Attorney Fees and Expenses

Counsel request an award of fees and costs in the amount of one-third of the settlement fund, and also request reimbursement of $42,466.82 in expenses. In making attorneys' fee awards, it is the overwhelming trend among courts to apply the percentage approach in common fund situations. Indeed, "it is well established in this circuit that a district court may use the 'percentage of the fund' methodology to evaluate attorneys' fees in common fund settlements." *Petronic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). A review of other cases of this kind, where class counsel undertook the representation on a contingent basis in a complex and risky case, demonstrates that a one-third fee recovery is fair and reasonable compensation. *See, e.g., In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 286 (D. Minn. 1997). Furthermore, in the *Concord* case, Judge Moody of the United States District Court for the Eastern District of Arkansas awarded total fees and expenses in excess of $9 million, which approximates the fee award in this case. Although it is true that counsel in this case have the benefit of the earlier litigation and favorable judgment, it is far from certain that they could have used offensive collateral estoppel to establish liability in this case because some class members, including Godfrey, had ample opportunity to join in the *Concord* action and consciously chose otherwise. *See Parkland*

*Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979) (stating that offensive collateral estoppel should not be used when the plaintiff could have joined in the earlier action). The Court thus finds that the favorable judgment in *Concord* does not diminish the reasonableness of counsel's requested fee in this case.

Godfrey, the sole objecting class member, is a member of Independent Boat Builders, Inc. ("IBBI"), which was one of the plaintiffs in the *Concord* case. Godfrey chose not to join in that action, but as a member of IBBI it paid approximately $104,398 in litigation fees.[1] Although at the hearing Godfrey attacked the reasonableness of the overall fee, Godfrey's only requested relief is that its recovery not be reduced by any amount for counsel fees. At the outset, the Court notes that this requested relief is individual to Godfrey, and is not an objection on behalf of the class. As such, Godfrey had a more appropriate remedy; it could have opted out of the class. Since it has not done so, it is apparent that Godfrey views the settlement as in its best interests.

More importantly, however, Godfrey paid counsel fees in the earlier action as a result of its choice to be a member of IBBI, and the Court can only conclude that Godfrey made a conscious business decision that the benefits of membership in that organization are worth such dues and fees as it is required to pay. Thus, although Godfrey will not share in any of the possible recovery in that case (a circumstance which is of Godfrey's own making), it

---

[1] The *Concord* case is currently on appeal before the Eighth Circuit. Class counsel point out that IBBI will reimburse Godfrey should it prevail on appeal or recover through settlement. Because it is not certain that Godfrey will be reimbursed, however, the Court has not taken this circumstance into consideration.

would seem that Godfrey has nevertheless received something of value in return for its payments. In addition, counsel are entitled to recover from the class fund because their work conferred a benefit on the class. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This principle is as applicable to Godfrey as it is to the remainder of the class; without counsel's effort in this case, Godfrey would recover nothing. Godfrey's payment amounts to just over 1% of the total fees and costs that the court awarded in *Concord,* which is not a substantial amount in comparison both to the amount of work counsel undertook and the benefit Godfrey stands to receive in this case. The Court therefore concludes that requiring Godfrey to share responsibility for counsel fees in this case is not unreasonable or unfair. Accordingly, Godfrey's objection is overruled, and the Court approves an attorney fee award in the amount of one-third of the settlement fund in addition to reimbursement for expenses.

## ORDER

Based on the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The settlement is finally approved as being fair, reasonable, and adequate:

2. The proposed Plan for Settlement Fund Allocation, Contingent Incentive Awards, and Claim Perfection, attached hereto as Exhibit "A" is approved;

3. Attorney fees and costs in the amount of one-third of the Settlement Fund are awarded to Plaintiffs' counsel;

4.      Expenses in the amount of $42,466.82 are awarded to Plaintiffs' counsel as reimbursement of costs incurred;

5.      The Settlement Administrator, in consultation with Plaintiffs' attorneys, is authorized and directed to take all steps necessary to effectuate the terms of the settlement and to cause the distribution thereunder to be made;

6.      The Court has jurisdiction over this subject matter hereof and the parties herein;

7.      The definitions and terms set forth in the Settlement Agreement are hereby incorporated in this Order and Judgment;

8.      The Court confirms its previous preliminary findings in the Settlement Notice and Hearing Order, and hereby finds that the Action meets all the prerequisites of Rule 23(b)(3), Fed. R. Civ. P., including numerosity, ascertainability, community of interest, predominance of common issues, superiority, and typicality;

9.      Plaintiffs and their counsel are adequate representatives of the Settlement Class;

10.     The Settlement Class is hereby certified for settlement purposes;

11.     This Order and Judgment has been entered without any admission by any of the parties as to the merits of any of the allegations in the Complaint and shall not constitute a finding of either fact or law as to the merits of any of those claims or a finding as to any obligations of Defendant to take any action agreed to be done or avoided herein as necessary to bring it into compliance with the law;

- 6 -

12.     The Action is hereby dismissed on the merits, with prejudice, and without cost (except as otherwise provided in the Settlement Agreement);

13.     Upon the Effective Date, each Settlement Class Member, for good and sufficient consideration, shall be deemed to have, and by operation of this Order and Judgment, will have, fully, finally and forever released, relinquished and discharged all Released Claims (including "Unknown Claims") against the Released Parties;

14.     In accordance with the provisions of the Settlement Agreement, for good and sufficient consideration, the receipt of which is hereby acknowledged, upon the Effective Date: (a) Defendant shall be deemed to have, and by operation of this Order and Judgment shall have, fully, finally and forever released, relinquished and discharged Plaintiffs and their counsel in the Action from any claims (including "Unknown Claims"), for abuses of process, malicious prosecution or any other claim arising out of, relating to, or in any way connected with the institution, prosecution, assertion or resolution of this Action; and (b) each Settlement Class Member shall be deemed to have, and by operation of the Order and Judgment shall have, fully, finally and forever released, relinquished and discharged the Defendant and its counsel in the Action from any claims (including "Unknown Claims"), for abuses of process, malicious prosecution or any other claim arising out of, relating to, or in way connected with, the defense or resolution of the Action;

15.     Having held the March 2, 2000 Settlement Hearing, and having considered the evidence submitted by the parties, the Court hereby finds that the Settlement Agreemeent was entered into in good faith between Plaintiffs, the Settlement Class Members and Defendant;

- 7 -

16.    Plaintiffs, all Settlement Class Members, and all Released Parties are permanently barred and enjoined from asserting, commencing, prosecuting or continuing any of the Released Claims or any of the claims described in paragraph 14 of this Order and Judgment against any of the Plaintiffs, Settlement Class Members, and all Released Parties, including Defendant;

17.    Without affecting the finality of this Order and Judgment in any way, this Court hereby reserves continuing jurisdiction over: (a) implementation of the Settlement; (b) the Action until this Order and Judgment becomes final and each and every act agreed to be performed by the parties has been performed pursuant to the Settlement Agreement; (c) all matter relating to the administration and consummation of the Settlement Agreement and all exhibits thereto; and (d) all parties to the Action for the purpose of implementing, enforcing, monitoring, ensuring compliance, effectuating, administering and interpreting the provisions of both the Settlement Agreement and this Order and Judgment.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March  **6** , 2000.

JOHN R. TUNHEIM
United States District Judge

# EXHIBIT A

## Plan for Settlement Fund Allocation, Contingent Incentive Awards and Claim Perfection

### I. Settlement Fund Allocation

Two basic approaches exist by which the Settlement Fund theoretically could be distributed to Class Members. The Settlement Fund may be distributed: (a) based on the unit volume of qualifying engines purchased during the class period (the "Unit Method"); or (b) based on the dollar volume of qualifying engines purchased during the class period (the "Dollar Method").

Under the Unit Method, each Class Member's distribution from the Settlement Fund could be calculated as a percentage by dividing the Class Member's number of qualifying engine units by the total number of qualifying engines purchased by all Class Members. Thus, assuming total Class engine units during the Class Period of 54,000, a Class Member with 1,080 qualifying engine purchases during the Class Period would be entitled to 2% of the Net Settlement Fund (i.e., the Settlement Fund minus attorneys' fees and costs as approved by the Court).

Under the Dollar Method, each Class Member's distribution from the Settlement Fund could be calculated as a percentage by dividing the Class Member's dollar volume of qualifying engines by the total dollar volume of qualifying among all Class Members. Thus, assuming total Class engine dollar volume during the Class Period of $390,000,000, a Class

Member with $7,800,000 in qualifying engine purchases during the Class Period would be entitled to 2% of the Net Settlement Fund.

Recognizing that each method is arguably a reasonable method to use, but also that different Class Members are relatively advantaged depending on which of the distribution methods is utilized, the Court determines that ½ weight will be allocated to each methodology (the "Blended Method"). Because the Blended Method, which shall be followed, attributes ½ weight to the Unit Method and ½ weight to the Dollar Method, it yields the most equitable result.

## II. Contingent Incentive Awards

The Court approves contingent incentive awards to the representative Plaintiffs, KK Motors and Checkmate Boats, Inc. Such awards will compensate the representative Plaintiffs for their contributions to the action including, *inter alia*, document productions, being deposed, evaluating the progress of the litigation and its settlement, and accepting the business risk of confronting the major supplier to boatbuilders. The Court approves contingent incentive awards pursuant to which each of the representative Plaintiffs may receive a total amount from the Settlement Fund equal to the amount each would receive if the distribution were based exclusively on the methodology most advantageous to them. Such incentive awards will be funded only by and limited to amounts unperfected by Class Members. Thus, for example, the amount of an incentive award to KK Motors will be calculated by subtracting KK Motors' distribution under the Blended Method from the distribution which KK Motors would receive under the Unit Method. Such incentive awards

will be paid only to the extent that claims are not perfected thereby leaving available funds. The balance of any unperfected funds, in excess of any needed to pay the contingent incentive awards, will become part of the Net Settlement Fund to be distributed to Class Members who properly perfect their claim(s).

### III.  Claim Perfection

In order to perfect their claims, Class Members must only return to the Settlement Administrator a completed form from the bottom of the letter previously furnished to them with the Class Notice (*see* Exhibit 1 to the Declaration of the Settlement Administrator) and provide their correct name, address, and taxpayer identification number.  For those Class Members who have not yet returned the completed form, the following additional efforts will be undertaken to encourage and assist Class Members in perfecting their claim(s):

(a)     On or before March 8, 2000: a mailing will be sent out to all Class Members whose claim is unperfected advising of the need to perfect their claim on or before April 10, 2000;

(b)     On or before March 22, 2000: another mailing will be sent to all Class Members whose claim is unperfected advising of the need to perfect their claim on or before April 10, 2000;

(c)     On or before March 29, 2000: telephone calls will be placed to the best available telephone number(s) for all Class Members whose claim is unperfected advising of the need to perfect their claim on or before April 10, 2000; and

(d)     On or before April 5, 2000: telephone calls will be placed to the best available telephone number(s) for all Class Members whose claim is unperfected advising of the need to perfect their claim on or before April 10, 2000.

RECEIVED ... 0 9 1999

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------

IN RE ANCOR COMMUNICATIONS,
INC. SECURITIES LITIGATION

MASTER FILE NUMBER
97-CV-1696 ADM/JGL

------------------------------------

# ORDER FOR FINAL JUDGMENT

WHEREAS, the parties to the above-described class action
(the "Litigation") entered into a Stipulation of Settlement as of
November 5, 1998 (the "Stipulation" or "Settlement"); and

WHEREAS, on November 6, 1998, the Court preliminarily
certified the following class in this action:

> All persons who purchased or otherwise
> acquired shares of Ancor common stock during
> the period May 15, 1996, through March 14,
> 1997, inclusive. Excluded from the class are
> defendants, members of the immediate family
> of any of the Individual Defendants, any
> entity in which any defendant has or had a
> controlling interest and the legal
> representatives, heirs, successors or assigns
> of any defendant;

and

WHEREAS, Ancor Communications, Inc. ("Ancor"), the
Individual Defendants and the Plaintiff Class (collectively, the
"Parties") in the Litigation, applied for an Order pursuant to
Rule 23(e) of the Federal Rules of Civil Procedure preliminarily
approving a proposed settlement of the class action in accordance
with the Stipulation. The Stipulation was preliminarily approved
by the Court by Order dated November 6, 1998. That Order also
approved the form of notice of the Settlement to Plaintiff Class

1

FILED_____
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD____FEB 0 5 1999

Members, directed that appropriate notice of the settlement be given to Plaintiff Class Members and set a hearing date for final approval of the Settlement; and

WHEREAS, notice of the Settlement was mailed to Plaintiff Class Members on December 10, 1998, and a summary notice of the Settlement was published in the Legal Monday Section of USA Today on December 14, 1998; and

WHEREAS, on February 5, 1999, at 9:00 a.m., at the United States District Court, District of Minnesota, United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, the Court held a hearing on whether the Settlement was fair, reasonable, adequate and in the best interests of the Plaintiff Class (the "Settlement Hearing"); and

WHEREAS, based upon the foregoing, having heard the statements of counsel for the Parties and of such persons as chose to appear at the Settlement Hearing; having considered all of the files, records and proceedings in the Litigation, the benefits to the Plaintiff Class under the Settlement and the risks, complexity, expense and probable duration of further litigation and being fully advised in the premises,

THE COURT HEREBY FINDS AND CONCLUDES that:

A.   This Court has jurisdiction over the subject matter of the Litigation.

B.   The Plaintiff Class defined below should be certified for the purposes of the Settlement and this Judgment:

All persons who purchased or otherwise acquired shares of Ancor common stock during the period May 15, 1996,

2

through March 14, 1997, inclusive.  Excluded from the class are defendants, members of the immediate family of any of the Individual Defendants, any entity in which any defendant has or had a controlling interest and the legal representatives, heirs, successors or assigns of any defendant.

C.   With respect to the Plaintiff Class: (i) the members of the Plaintiff Class are so numerous that joinder of all members is impracticable; (ii) there are questions of law and fact common to the Plaintiff Class; (iii) the claims of the Representative Plaintiffs are typical of the claims of the Plaintiff Class; (iv) in negotiating the Settlement and entering into the Stipulation, the Representative Plaintiffs and their counsel fairly and adequately represented and protected the interests of the Plaintiff Class; (v) questions of law and fact predominate over any questions affecting only individual class members; and (vi) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

D.   The form, content and method of dissemination of the notices given to Plaintiff Class Members, including both published notice and individual notice to all Plaintiff Class Members who could be identified through reasonable effort, were adequate and reasonable and constituted the best notice practicable under the circumstances.

E.   The notices, as given, complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and the requirements of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-

3

4(7)(A)-(F), and constituted due and sufficient notice of the matters set forth therein.

F.   The Settlement and Plan of Distribution set forth in the Notice of Class Action Settlement and of Hearing is fair, reasonable, adequate and in the best interests of the Plaintiff Class and the defendants.

G.   The Representative Plaintiffs and the Plaintiff Class Members, and all and each of them, are hereby bound by the terms of the Settlement set forth in the Stipulation.

H.   The Class Settlement Fund shall be and is hereby deemed a "qualified settlement fund" as that term is defined by Treasury Regulation 1.468B-1.

I.   The provisions of the Stipulation, including definitions of the terms used therein, are hereby incorporated by reference as though fully set forth herein.

NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that:

1.   The following class is certified as a class for these settlement proceedings:

All persons who purchased or otherwise acquired shares of Ancor common stock during the period May 15, 1996, through March 14, 1997, inclusive. Excluded from the class are defendants, members of the immediate family of any of the Individual Defendants, any entity in which any defendant has or had a controlling interest and the legal representatives, heirs, successors or assigns of any defendant.

2.   The Settlement and Plan of Distribution set forth in the Notice of Class Action Settlement and of Hearing is fair, reasonable, adequate and in the best interests of the Plaintiff

4

Class and the defendants, and it shall be consummated in accordance with the terms and provisions of the Stipulation.

3.    Judgment shall be, and hereby is, entered dismissing the Litigation with prejudice, on the merits and without taxation of costs in favor of or against any party in full and final discharge of any and all claims asserted or that could have been asserted in the Litigation.  Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to any application for or award of attorneys' fees, costs or expenses shall in no way delay or preclude the judgment from becoming Final.

4.    Each Representative Plaintiff and each Class Member as defined in the Stipulation who has not submitted a timely and proper request for exclusion from the Class is hereby conclusively deemed to have released

(a)    Ancor Communications, Inc., a Minnesota corporation, and all and each of its predecessors, successors, subsidiaries, parents, affiliates and related corporations and entities, and all and each of its and their present, former and future officers, directors, shareholders (other than members of the Plaintiff Class), employees, agents, attorneys, representatives, assigns, partners, principals and insurers; and

(b)    Stephen O'Hara, Lee B. Lewis and Dale Showers, all and each of them, and all and each of their respective assigns, successors, attorneys, accountants, agents,

5

trusts, trustees, representatives, heirs, executors, administrators and insurers

with respect to any and all claims and causes of action, rights or liabilities, whether at law or equity, based on federal, state, local, statutory or common law or any other law, rule or regulation, including both known, unknown, foreseen and unforeseen claims which were or could have been brought individually or on a class basis in the Litigation including, but not limited to, claims which relate directly or indirectly to any of the facts, transactions, events, occurrences, acts and all Settled Claims (the "Released Claims") or omissions mentioned or referred to in the Class Action Complaint.

5.   All Plaintiff Class Members who have not submitted a timely and proper request for exclusion from the class are hereby permanently enjoined and barred from instituting, asserting or prosecuting, either directly, representatively, derivatively or in any other capacity, any and all claims which the Plaintiff Class Members, or any of them, had, have or may in the future have against the defendants, or any of them, arising out of, based upon or otherwise related to the Released Claims.

6.   Counsel for Representative Plaintiffs are hereby awarded a fee from the Class Settlement Fund created by the Settlement in this matter equal to THIRTY-THREE AND ONE/THIRD (33-1/3%) percent of the gross Settlement funds, including interest earned on said funds.  Additionally, counsel for the Representative Plaintiffs are hereby awarded costs and expenses

6

in the amount of $66,195.38.  These amounts are to be paid to the Chestnut & Brooks, P.A. Trust Account for further distribution as Plaintiffs' Lead Counsel may determine.

Expenses of administering this Settlement shall be paid from the Class Settlement Fund.  A reserve to handle future contingencies shall be established in the amount of $40,000.00.

7.    Neither the Settling Defendants nor AESIC shall have responsibility of any kind with respect to the distribution of the Court-approved Class notice or the processing of claims against the Class Settlement fund or otherwise with respect to the administration of this settlement or the Class Settlement Fund nor shall the Settling Defendants have any responsibility for allocation of the attorneys' fees, costs or expenses, if any, which may be awarded by the Court.

8.    The Court, without affecting the finality of this Order for Final Judgment, hereby retains and reserves jurisdiction over (a) implementation of the Settlement and any distributions to Authorized Claimants under the terms and conditions of the Stipulation and pursuant to further orders of this Court; (b) disposition of the Class Settlement Fund under the terms and conditions of the Stipulation and notices; (c) the Litigation, until (i) the Effective Date contemplated by Paragraph I(I) of the Stipulation, which will occur on the date upon which this judgment becomes not subject to further appeal or review, and (ii) each and every act agreed to be performed by the Parties shall have been performed pursuant to the terms and conditions of

the Stipulation, including the exhibits annexed thereto; (d) the
Litigation, for the purposes of implementing distribution to
shareholders in accordance with the notice; and (e) all Parties,
for the purpose of enforcing and administering the Stipulation
and Settlement.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: _February 5_, 1999          _____
                                   The Honorable Ann D. Montgomery
                                   United States District Judge

# EXHIBIT H

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION
4-95-CV-631

In re                          )
LaserMaster Technologies, Inc. )          ORDER
Securities Litigation          )
                               )

WHEREAS, the parties to the above-described class action (the "Litigation") entered into a Stipulation of Settlement as of July 11, 1997 (the "Stipulation" or "Settlement"); and

WHEREAS, on December 5, 1996, the Court ordered that this action proceed as a class action with the following certified class:

All persons or other entities who purchased LaserMaster Common Stock on the open market during the period December 2, 1993, through December 8, 1994, inclusive, and who suffered damage thereby. Excluded from the Class are the defendants herein, members of the immediate family of each of the Individual Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which defendants have a controlling interest or which is related to or affiliated with either the Individual Defendants or LaserMaster, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded party;

and

WHEREAS, LaserMaster Technologies, Inc. ("LaserMaster"), the Individual Defendant directors and officers and the Plaintiff Class (collectively, the "Parties") in the Litigation, applied for an Order pursuant to Rule 23(e) of the Federal Rules of Civil Procedure preliminarily approving a proposed settlement of the class action in accordance with the Stipulation. The Stipulation was preliminarily approved by the Court by Order dated July 21, 1997. That Order also approved the plan of allocation and the forms of notice of the settlement to Plaintiff Class Members, directed that appropriate notice of the settlement be given to Plaintiff Class Members and set a hearing date for final approval of the settlement; and

WHEREAS, notice of the Settlement was mailed to Plaintiff Class Members on August 11, 1997, and a summary notice of the Settlements was published in the Legal Monday Section of *USA Today* on August 18, 1997; and

WHEREAS, on October 6, 1997, at 3:00 p.m., at the United States District Court, District of Minnesota, United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, the Court held a hearing to determine whether the Settlement was fair, reasonable, adequate and in the best interests of the Plaintiff Class and to consider the Joint Application for

2

Attorneys' Fees filed by counsel for the Plaintiff Class; and

WHEREAS, Attorney Lawrence Schonbrun, on behalf of purported class member, Wilfred George, filed an objection and notice of intention to appear at the October 6, 1997 hearing; and

WHEREAS, neither Attorney Schonbrun nor Wilfred George appeared at the hearing and therefore, the Court indicated that it would hold in abeyance its order for 24 hours from the time of the scheduled hearing to give Attorney Schonbrun or Wilfred George an opportunity to contact the Court regarding their objection to the settlement and Joint Application for Attorneys' Fees; and

WHEREAS, neither Attorney Schonbrun, Wilfred George, nor any other Class Members have contacted the Court in the 24 hours since the October 6, 1997 hearing to register any objections to the settlement or the Joint Application for Attorneys Fees; and

WHEREAS, having heard the statements of counsel for the parties and of such persons as chose to appear at the October 6, 1997 hearing and having considered all of the files, records and proceedings in the Litigation, the benefits to the Class under the settlement and the risks, complexity, expense and probable duration of further litigation and being fully advised in the premises,

THE COURT HEREBY FINDS AND CONCLUDES that:

A.    This Court has jurisdiction over the subject matter of

3

the Litigation.

B.    The form, content and method of dissemination of the notices given to Plaintiff Class Members, including both published notice and individual notice to all Plaintiff Class Members who could be identified through reasonable effort, were adequate and reasonable and constituted the best notice practicable under the circumstances.

C.    The notices, as given, complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process and constituted due and sufficient notice of the matters set forth therein.

D.    The Settlement set forth in the Stipulation is fair, reasonable, adequate and in the best interests of the Plaintiff Class and the defendants.

E.    The Representative Plaintiffs and their counsel fairly and adequately represent the interests of the Plaintiff Class Members in connection with the Settlement.

F.    The Representative Plaintiffs and the Plaintiff Class Members, and all and each of them, are hereby bound by the terms of the Settlement set forth in the Stipulation.

G.    The provisions of the Stipulation, including definitions of the terms used therein, are hereby incorporated by reference as

4

though fully set forth herein.

NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that:

1.    The Notice of Objection and of Intention to Appear at Hearing on Proposed Settlement and Award of Attorneys' Fees and Declaration in Support Thereof filed by Attorney Schonbrun is stricken upon the Court's own motion.   It has, however, been accepted as a Court Exhibit, subject to the terms set forth on the record.

2.    The Settlement set forth in the Stipulation is fair, reasonable, adequate and in the best interests of the Plaintiff Class and the defendants, and it shall be consummated in accordance with the terms and provisions of the Stipulation.

3.    Judgment shall be, and hereby is, entered dismissing the Litigation with prejudice, on the merits and without taxation of costs in favor of or against any party.  Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to any application for or award of attorneys' fees, costs or expenses shall in no way delay or preclude the judgment from becoming Final.

4.    Each Representative Plaintiff and each Plaintiff Class Member who has not submitted a timely and proper request for exclusion from the Class is hereby conclusively deemed to have

released (a) LaserMaster Technologies, Inc., a Minnesota corporation, and all and each of its predecessors, successors, subsidiaries, parents, affiliates and related corporations and entities, and all and each of its and their present, former and future officers, directors, shareholders (other than members of the Plaintiff Class), employees, agents, attorneys, representatives, assigns, partners, principals and insurers; and (b) Melvin L. Masters, Robert J. Wenzel and Lawrence J. Lukis, all and each of them, and all and each of their respective assigns, successors, attorneys, accountants, agents, trusts, trustees, representatives, heirs, executors, administrators and insurers with respect to any and all claims which any of them had arising out of, relating to or in any way connected with (a) the purchase during the Class Period of any LaserMaster securities by a Plaintiff Class Member; and (b) any of the facts, circumstances, transactions, events, occurrences, acts, omissions or failures to act that are alleged or referred to in the Litigation.

5. This Court previously dismissed, without prejudice, defendant Ralph Rolen from the litigation. This Court's Order is now amended to provided that Mr. Rolen is dismissed, with prejudice, from this litigation, each party to pay its own costs.

6. All Plaintiff Class Members are hereby permanently

enjoined and barred from instituting, asserting or prosecuting, either directly, representatively, derivatively or in any other capacity, any and all claims which the Plaintiff Class Members, or any of them, had, have or may in the future have against the defendants, or any of them, arising out of, based upon or otherwise related to the Settled Claims.

7.  Plaintiffs' counsel are hereby awarded $66,702.29 as reimbursement for costs and expenses incurred in the litigation of this matter, and such reimbursement shall be made in full, out of the cash portion of the Settlement Fund, no sooner than 31 days after the date of this Order;

8.  Plaintiffs' counsel are hereby ordered to reimburse Princeton Venture Research, Inc. in the amount of $66,929.02 for expert fees and expenses incurred in the litigation of this matter; said payment shall be made out of the cash portion of the Settlement Fund no sooner than 31 days after the date of this Order;

9.  Each of the named plaintiffs in this matter is hereby awarded $2,000.00 as an incentive award for bringing and assisting in the prosecution of this action on behalf of the class; this sum is in addition to any amount of the Settlement Fund to which the named plaintiffs may be entitled as class members; said incentive

7

awards shall be paid out of the cash portion of the Settlement Fund no sooner than 31 days after the date of this Order;

10.  Plaintiffs' counsel are hereby awarded attorneys' fees in the amount of 33 1/3% of $2,330,368.69 from the cash portion of the Settlement Fund to be paid no sooner than 31 days after the date of this Order.  In addition, plaintiffs' counsel are hereby awarded attorney's fees in the amount of 33 1/3% of the LaserMaster Contribution to the Settlement Fund, said contribution to be made by defendant LaserMaster Technologies, Inc. in February 1998, pursuant to the terms of the Stipulation of Settlement on file with the Court, whether said payment be made in cash or in stock.

11.  Plaintiffs' counsel are authorized to establish a $25,000 reserve fund out of the cash portion of the Settlement Fund to be used to resolve unforseen problems with administration and other future contingencies.

12.  The Court, without affecting the finality of this Order, hereby retains and reserves jurisdiction over (a) implementation of the Settlements and any distributions to Authorized Claimants under the terms and conditions of the Stipulations and pursuant to further orders of this Court; (b) disposition of the Class Settlement Fund under the terms and conditions of the Stipulation and notices; (c) the Litigation, until (I) the Effective Date

8

contemplated by Paragraph I(H) of the Stipulation, which will occur on the date upon which this judgment becomes not subject to further appeal or review, and (ii) each and every act agreed to be performed by the Parties shall have been performed pursuant to the terms and conditions of the Stipulations, including the exhibits annexed thereto; (d) the Litigation, for the purposes of implementing distribution to shareholders in accordance with this notice; and (e) all Parties, for the purpose of enforcing and administering the Stipulation and Settlement.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:    October   9, 1997

JAMES M. ROSENBAUM
United States District Judge

9

# EXHIBIT I

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FIRST PRESBYTERIAN CHURCH OF          CIVIL FILE NO. 3-94-1024
MANKATO, MINNESOTA and
KIRSTEN ORVICK,

        Plaintiffs.

v.

JOHN G. KINNARD & COMPANY,
INCORPORATED and GARY LEFKOWITZ,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## ORDER FOR FINAL JUDGMENT

WHEREAS, the parties to the above-described class action (the "Litigation") executed a Settlement Agreement on September 29, 1995 (the "Settlement Agreement"); and

WHEREAS, on October 16, 1995, the Court ordered that this action proceed as a class action with the following certified Settlement Class:

> All persons and entities who purchased limited partnership interests and/or interests in First Secured Mortgage Investors ("FSMI") programs sponsored by Citi-Equity Group, Inc. ("CEG") and/or CEG affiliates between September 1, 1987, and May 6, 1994, inclusive. Excluded from the Settlement Class are (i) John G. Kinnard and Company, Incorporated ("JGK"), Kinnard Investments, Inc. ("KINNARD"), Gary Lefkowitz, any affiliates or subsidiaries of JGK, any

1

DEC 1 2 1995

Exhibit 7

affiliates or subsidiaries of CEG, the
officers and directors of JGK ("Excluded
Persons"); (ii) any entity in which any
Excluded Person has a controlling interest;
(iii) any legal representatives, heirs,
successors and assigns of any of the
foregoing persons, except that the employees
of JGK who are not officers or directors of
JGK may participate in this settlement; and
(iv) any other parties to any of the Lawsuits
except the members of the Settlement Class;

and

WHEREAS, John G. Kinnard and Company, Incorporated ("JGK")
and the Plaintiff Class (collectively, the "Parties") in this
Litigation, applied for an Order pursuant to Rule 23(e) of the
Federal Rules of Civil Procedure preliminarily approving a
proposed settlement of the class action in accordance with the
Settlement Agreement entered into by the Parties as of September
29, 1995. The Settlement Agreement was preliminarily approved by
the Court by Order dated October 16, 1995. That Order also
approved the plan of allocation and the forms of notice of the
settlement to Plaintiff Class Members, directed that appropriate
notice of the settlement be given to Plaintiff Class Members and
set a hearing date for final approval of the settlement; and

WHEREAS, notice of the settlement was mailed to Plaintiff
Class Members on or before October 20, 1995; and

WHEREAS, on December 5, 1995, at 4:00 p.m., at the United
States District Court, District of Minnesota, Federal Building,
316 North Robert Street, St. Paul, Minnesota 55101, the Court
held a hearing on whether the settlement was fair, reasonable,

adequate and in the best interests of the Plaintiff Class, and JGK (the "Settlement Hearing"); and

WHEREAS, Plaintiffs' counsel filed with the Court a list of Citi-Equity investments sold through JGK and a revised estimate of the loss (expressed in terms of a percentage) based on the best current information available, which will be used in calculating the recovery claimants will receive; and

WHEREAS, based upon the foregoing, having heard the statements of counsel for the Parties and of such persons as chose to appear at the Settlement Hearing; having considered all of the files, records and proceedings in the Litigation, the benefits to the Class under the settlement and the risks, complexity, expense and probable duration of further litigation and being fully advised in the premises,

THE COURT HEREBY FINDS AND CONCLUDES that:

A.    This Court has jurisdiction over the subject matter of the Litigation.

B.    The form, content and method of dissemination of the notices given to Plaintiff Class Members who could be identified through reasonable effort, were adequate and reasonable and constituted the best notice practicable under the circumstances.

C.    The notices, as given, complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process and constituted due and sufficient notice of the matters set forth therein.

3

D.   The settlement set forth in the Settlement Agreement is fair, reasonable, adequate and in the best interests of the Plaintiff Class and JGK.

E.   The Representative Plaintiffs and their counsel fairly and adequately represent the interests of the Plaintiff Class Members in connection with the settlement.

F.   The Representative Plaintiffs and the Plaintiff Class Members, and all and each of them, are hereby bound by the terms of the settlement set forth in the Settlement Agreement.

G.   The provisions of the Settlement Agreement, including definitions of the terms used therein, are hereby incorporated by reference as though fully set forth herein.

NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that:

1.   The settlement set forth in the Settlement Agreement is fair, reasonable, adequate and in the best interests of the Plaintiff Class and the defendants, and it shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

2.   Judgment shall be, and hereby is, entered dismissing the Litigation between the Plaintiff Class and each of the Representative Plaintiffs on the one hand and JGK on the other hand, with prejudice, on the merits and without taxation of costs in favor of or against any party.  Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to any application for or award of attorneys' fees, costs or

expenses shall in no way delay or preclude the judgment from becoming Final.

3.     Each Representative Plaintiff and each Plaintiff Class Member who has not submitted a timely and proper request for exclusion from the Class is hereby conclusively deemed to have released (a) John G. Kinnard and Company, Incorporated, a Minnesota corporation, and all and each of its predecessors, successors, subsidiaries, parents, affiliates and related corporations and entities, and all and each of its and their current and former officers, directors, shareholders (other than members of the Plaintiff Class), employees, agents, registered representatives, attorneys, representatives, assigns, partners, principals and insurers; and (b) Kinnard Investments, Inc., its affiliated corporations, direct and indirect subsidiaries (including but not limited to JGK), current and former employees, agents, representatives, officers, directors, attorneys and "controlling persons" as that term or concept is used in the Securities Act of 1933 or in the Securities and Exchange Act of 1934 or in any state securities laws or regulations, with respect to any and all claims which any of them had arising out of, relating to or in any way connected with (a) the purchase during the Class Period of any Citi-Equity interests by a Plaintiff Class Member; and (b) any of the facts, circumstances, transactions, events, occurrences, acts, omissions or failures to act that are alleged or referred to in the Litigation.  A list of

those who have timely excluded themselves from the Class is attached to this Order as Exhibit A.

4.   All Plaintiff Class Members are hereby permanently enjoined and barred from instituting, asserting or prosecuting, either directly, representatively, derivatively or in any other capacity, any and all claims which the Plaintiff Class Members, or any of them, had, have or may in the future have against the defendants, or any of them, arising out of, based upon or otherwise related to the Settled Claims.

5.   Counsel for Representative Plaintiffs are hereby awarded a fee from the Settlement Fund created by the settlement in this matter equal to thirty-three and one-third (33.33%) percent of the gross settlement funds received from each of the payments of cash, MCA Certificates and Warrants, including interest earned on said funds.  Additionally, counsel for the Representative Plaintiffs are hereby awarded expert fees, costs and expenses in the amount of $82,319.84.  These amounts are to be paid to the Chestnut & Brooks, P.A. Trust Account for further distribution as Settlement Counsel and Plaintiffs' Lead Counsel may determine.

The following named Plaintiff Class Representatives are hereby awarded from the Settlement Fund the sum of $2,000.00 each as compensation for their time and service as Class Representatives: First Presbyterian Church of Mankato, Minnesota; Kirsten Orvick; Charles Fischer; Bernice Fischer; Community Bank

of Cleveland; David Levi; Mabel Levi; James Klasse; Margaret Klasse; Charles A. Schmid; Lloyd Harris; Francine Harris; Lynn Sternitzke; Thomas Binger; William D. Sell; Althea M. Sell; John P. Graham; Shirley M. Graham; Harley Dunham; Shirley Dunham; L, M & R Investors; James G. Olexa; Irv Hansen and Dale Palm..

Expenses of administering this settlement shall be paid from the Settlement Fund.  A reserve to handle future contingencies shall be established in the amount of $25,000.00.

6.   The Court, without affecting the finality of this Order for Final Judgment, hereby retains and reserves jurisdiction over (a) implementation of the settlement and any distributions to Authorized Claimants under the terms and conditions of the Settlement Agreement and pursuant to further orders of this Court; (b) disposition of the Settlement Fund under the terms and conditions of the Settlement Agreement and notices; (c) the Litigation, until (i) the Effective Date contemplated by Paragraph B.4 of the Settlement Agreement, which will occur on the date upon which this judgment becomes not subject to further appeal or review, and (ii) each and every act agreed to be performed by the Parties shall have been performed pursuant to the terms and conditions of the Settlement Agreement, including the exhibits annexed thereto; (d) the Litigation, for the purposes of implementing distribution to shareholders in accordance with the notice; and (e) all Parties, for the purpose of enforcing and administering the Settlement Agreement and settlement.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: _Dec 11_, 19 _95_

The Honorable Michael J. Davis
United States District Judge

# EXHIBIT A

List of Exclusions from

Plaintiff Class

## Citi-Equity Settlement Opt-Outs

| Name | Investment |
| --- | --- |
| Aberdeen TV & Appliance | FSM XI |
| Assmus, Vincent & Shirley | Citi-Central Plains Partners |
| Assmus, Vincent & Shirley | Citi-Parkview Partners |
| Assmus, Vincent & Shirley | FSM V |
| Assmus, Vincent & Shirley | FSM VIII |
| Assmus, Vincent & Shirley | FSM XVII |
| Block, Gregory S. | Citi-Minneapolis Partners IX |
| Block, Michael L. | Citi-Minnesota Partners II |
| Chamberlain Water Company, Inc. | Citi-Westport Partners |
| Duch, George, Estate of | FSM XIV |
| Estabrook Ranch Inc. | Citi-Central Plains Partners III |
| Estabrook, David & Ruth | FSM V |
| Harry K Chevrolet | Citi-Westport Partners |
| Knust, H. Douglas & Judith | Citi-Westport Partners |
| Knust, Harold & Patricia | Citi-Westport Partners |
| Kusler, Hiram and Lorraine | FSM V |
| Kusler, Hiram and Lorraine | FSM VI |
| Kusler, Hiram and Lorraine | FSM XI |
| Lake Country State Bank | FSM VIII |
| Murray, Mathilda | FSM X |
| NCS Investments | Citi-Central Plains Partners III |
| Peterson, Kim & Cheryl | Citi-Westport Partners |
| Rogers, Roy L., Estate of | FSM V |
| State Bank of Ceylon | FSM VIII |
| State Bank of Long Lake | FSM VIII |

Westlaw.

Not Reported in F.Supp.2d
2003 WL 297276 (D.Minn.)
(Cite as: 2003 WL 297276 (D.Minn.))

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
In re MONOSODIUM GLUTAMATE ANTITRUST
LITIGATION
**No. CIV. 00MDL1328PAM.**

Feb. 6, 2003.

MEMORANDUM AND ORDER

MAGNUSON, District Court J.

*1 This matter is before the Court on Plaintiffs' Application for Attorneys' Fees. In that Application, Plaintiffs' counsel asks for fees in the amount of 1/3 of the settlement fund, and costs of slightly less than $2 million. The settlement fund stands at $81.4 million plus interest. According to Plaintiffs' counsel, the total fee award they seek is $27.1 million.

The notice to the class about the proposed settlement distribution stated that the attorneys would seek no more than 1/3 of the settlement fund. No class members have objected to the proposed fee award.

DISCUSSION

Determining the amount of an award of attorneys' fees is a matter committed to the discretion of the Court. _Blum v. Stetson,_ 465 U .S. 886, 896-97 (1984). The general rule is that "a litigant or a lawyer who recovers a common fund for the benefit of person other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." _Boeing Co. v. Van Gemert,_ 444 U.S. 472, 478 (1980). Because there is a conflict of interest between the attorneys and the class

members with respect to apportionment of the settlement fund, a fee request is subject to heightened judicial scrutiny. _In re Flight Transp. Corp. Sec. Litig.,_ 685 F.Supp. 1092, 1094 (D.Minn.1987) (Weiner, J.). The theory behind attorneys' fees awards in class actions is not merely to compensate counsel for their time, but to award counsel for the benefit they brought to the class and take into account the risk undertaken in prosecuting the action.

The _Manual for Complex Litigation_ notes that, in common fund cases, attorneys' fees are generally awarded as a percentage of the fund. _See Manual for Complex Litigation,_ § 24.121 at 188 (3rd ed.1985). The Eighth Circuit has specifically upheld this approach. _Petrovic v. Amoco Oil Co.,_ 200 F.3d 1140, 1157 (8th Cir.1999). Courts may also use a lodestar approach, first set forth by the Third Circuit. _See Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.,_ 487 F.2d 161 (3d Cir.1973); _see also Grunin v. Int'l House of Pancakes,_ 513 F.2d 114 (8th Cir.1975) (adopting _Lindy_ method of calculating fees). The _Manual_ points out that the Supreme Court has never adopted the lodestar method, and that "[i]n recent years, the trend has been toward the percentage of the fund method." _Manual_ § 24.121 at 189.

A. Percentage of the Fund

Most courts applying the percentage-of-the-fund approach award fees in the 25% to 30% range, adjusting up or down for the circumstances of the case. _Id._ The _Manual_ notes that, where the fund is unusually large, a percentage approach may result in a windfall to counsel. _Id._ In those cases, courts often determine the fees based on a sliding scale approach, the lodestar, or some combination of lodestar and percentage.

Factors to be considered when determining the amount of the fee award include:
  . the size of the fund created and the number of persons benefited [sic];
  *2 . the presence or absence of substantial objections by members of the class to the settlement terms

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 297276 (D.Minn.)
(Cite as: 2003 WL 297276 (D.Minn.))

and/or fees requested by counsel;
. the skill and efficiency of the attorneys involved;
. the complexity and duration of the litigation;
. the risk of nonpayment;
. the amount of time devoted to the case by plaintiffs' counsel; and
. the awards in similar cases.

*Id.* at 190. In this case, the size of the fund is substantial. Indeed, the settlements received from several of the Defendants are more than Plaintiffs' expert's estimate of that Defendants' liability. As noted above, there have been no objections to the settlement or to the fees requested.

The attorneys prosecuted this case very skillfully, often under difficult circumstances. The attorneys took depositions throughout Asia and dealt with highly uncooperative foreign Defendants. The issues in the case are fairly complex antitrust issues, and the case has been pending for almost three years. The Court has been impressed throughout this litigation with the quality of advocacy on both sides. Plaintiffs' counsel points out that, thus far, the class lawyers have spent almost $2 million in expenses in this action, a substantial investment that carried with it the risk that it would never be repaid. Finally, it is clear that the attorneys for the class invested a substantial amount of time on this matter, a fact that is confirmed by the affidavit appended to the Application. Attorney time alone totaled almost 32,000 hours.

The Court is convinced that Plaintiffs' counsel is entitled to a substantial award in the form of a percentage of the settlement fund. In order to determine the proper percentage, however, the Court asked Special Master John Borg to inquire into the figures behind the lodestar calculations in the affidavit. *See, e.g., Petrovic,* 200 F.3d at 1157. The lodestar approach is outlined below.

### B. Lodestar

"As with percentage fees. An award ... under the lodestar method should fairly compensate the attorney for the reasonable value of the services beneficially rendered, based on the circumstances of the particular case." *Manual* § 24.122 at 191. The lodestar calculation

first multiplies the number of hours expended with a reasonable hourly rate. *Id.* The result may then be adjusted either up or down to account for the circumstances of the case. *Id.* at 192. Some factors courts consider in adjusting the lodestar amount include "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, the risk of nonpayment, and the delay in payment." *Id.*

Here, Plaintiffs' counsel has submitted an affidavit summarizing the time spent by each law firm participating in the case. Attorneys spent 31,923.85 hours on the case, paralegals 11,823.35 hours. (Gustafson and Bruckner Aff. ¶ 45.) According to the affidavit, the lodestar for these hours totals $13,960,274.85.

*3 Special Master Borg, at the Court's request, conducted a "spot check" of these numbers. He concluded that the hours billed are reasonable given the complexity of the case and the extensive travel involved. He also concluded that the hourly rates used in calculating the lodestar were not unreasonable, although he noted that some of the rates were on the high end of the scale. Finally, he examined the number of partner hours billed compared with the number of associate and paralegal hours billed, and determined that the breakdown of hours was reasonable. The Court adopts these conclusions and finds that the lodestar claimed by counsel is reasonable. Under the lodestar method, the total fee award requested amounts to using a multiplier of slightly less than 2 for the lodestar. This multiplier is within the range of multipliers that courts typically use. Thus, the total award requested is reasonable.

### C. The Award

The question then becomes what amount will fairly compensate counsel for the time and effort they have invested in this case over the past three years. After careful consideration of the materials submitted, the Court concludes that an award of 30% of the settlement fund is reasonable in this matter. Thus, the Court finds that Plaintiffs' counsel are entitled to an award of $24,420,000, plus the costs claimed in the Application.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 297276 (D.Minn.)
**(Cite as: 2003 WL 297276 (D.Minn.))**

Page 3

CONCLUSION

   Accordingly, IT IS HEREBY ORDERED that
Plaintiffs' Application for Attorneys' Fees (Clerk Doc.
No. 350) is GRANTED as set forth above.

   2003 WL 297276 (D.Minn.)

   **Motions, Pleadings and Filings (Back to top)**

. 0:00MD01328 (Docket)
                          (Mar. 03, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT J

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

------------------------------------

IN RE CONTROL DATA CORPORATION
SECURITIES LITIGATION

MASTER FILE NO. 3-85-1341

(This Order also relates
to File No. 3-85-1269)

------------------------------------

## ORDER FOR FINAL JUDGMENT

WHEREAS, the parties to the above-described class action and derivative litigation (the "Litigation") entered into Stipulations of Settlement as of February 19, 1993, and July 11, 1994 (the "Stipulations" or "Settlements"); and

WHEREAS, on December 1, 1986, the Court ordered that this action proceed as a class action with the following certified class:

> To the extent that they have claims under federal law, all persons or entities who purchased common stock of Control Data Corporation in the open market during the period beginning January 7, 1985, and ending August 6, 1985, excluding defendants, subsidiaries and affiliates of the corporate defendant, members of the immediate families of the individual defendants and the successors or assigns of any of the defendants;

and

WHEREAS, Ceridian Corporation, formerly known as Control Data Corporation ("CDC"), the Individual Defendant directors and officers, and the Plaintiff Class and Derivative Plaintiffs

Exhibit 15

FILED   SEP 2 3 1994
FRANCIS E. DOSAL, CLERK
Judgment Ent'd. SEP 2 3 199

(collectively, the "First Parties") in the Litigation, applied for an Order pursuant to Rules 23(e) and 23.1 of the Federal Rules of Civil Procedure preliminarily approving a proposed partial settlement of the class and derivative actions in accordance with a Stipulation of Settlement (the "First Stipulation" or "First Proposed Settlement") entered into by the First Parties on February 19, 1993.  The First Stipulation was preliminarily approved by the Court by Order dated February 25, 1993; and

WHEREAS, KPMG Peat Marwick, formerly known as Peat Marwick Main & Co. ("PMM") and the Plaintiff Class and Derivative Plaintiffs (collectively, the "Second Parties") in the Litigation applied for an Order pursuant to Rules 23(e) and 23.1 of the Federal Rules of Civil Procedure preliminarily approving a proposed partial settlement of the class and derivative actions in accordance with a Stipulation of Settlement (the "Second Stipulation" or "Second Proposed Settlement") entered into by the Second Parties on July 11, 1994.  The Second Proposed Settlement was preliminarily approved by the Court by Order dated July 12, 1994.  That Order also approved as to both the First and Second Proposed Settlements the plan of allocation and the forms of notice of the settlements to Plaintiff Class Members and current shareholders of Ceridian Corporation, directed that appropriate notice of settlements to be given to Plaintiff Class Members and current shareholders of Ceridian Corporation and set a hearing date for final approval of the settlements; and

WHEREAS, for the purposes of this Order, the First and Second Parties will be referred to herein collectively as the "Parties" and the First and Second Stipulations or the First and Second Proposed Settlements will be referred to herein collectively as the "Stipulations" or "Settlements;" and

WHEREAS, notice of the Settlements was mailed to Plaintiff Class Members and current shareholders of Ceridian Corporation on July 19 and July 26, 1994, respectively, and a summary notice of the Settlements was published in the national edition of The Wall Street Journal on July 29, 1994; and

WHEREAS, on September 21, 1994, at 9:30 a.m., at the United States District Court, District of Minnesota, 110 South Fourth Street, Minneapolis, Minnesota 55401, the Court held a hearing on whether the Settlements were fair, reasonable, adequate and in the best interests of the Plaintiff Class, CDC and PMM (the "Settlement Hearing"); and

WHEREAS, based upon the foregoing, having heard the statements of counsel for the Parties and of such persons as chose to appear at the Settlement Hearing; having considered all of the files, records and proceedings in the Litigation and being fully advised in the premises,

THE COURT HEREBY FINDS AND CONCLUDES that:

A.    This Court has jurisdiction over the subject matter of the Litigation.

B.    The form, content and method of dissemination of the notices given to Plaintiff Class Members and current shareholders of Ceridian Corporation, including both published notice and individual notice to all Plaintiff Class Members and current

shareholders of Ceridian Corporation who could be identified through reasonable effort, were adequate and reasonable and constituted the best notice practicable under the circumstances.

C.   The notices, as given, complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process and constituted due and sufficient notice of the matters set forth therein.

D.   The Settlements set forth in the Stipulations are fair, reasonable, adequate and in the best interests of the Plaintiff Class, CDC and PMM.

E.   The Representative Plaintiffs and their counsel fairly and adequately represent the interests of the Plaintiff Class Members and Derivative Plaintiffs in connection with the Settlements.

F.   The Representative Plaintiffs, Derivative Plaintiffs and the Plaintiff Class Members, and all and each of them, are hereby bound by the terms of the Settlements set forth in the Stipulations.

G.   The provisions of the Stipulations, including definitions of the terms used therein, are hereby incorporated by reference as though fully set forth herein.

NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that:

1.   The Settlements set forth in the Stipulations are fair, reasonable, adequate and in the best interests of the Plaintiff Class and Derivative Plaintiffs, CDC and PMM, and they shall be consummated in accordance with the terms and provisions of the Stipulations.

2.    Judgment shall be, and hereby is, entered dismissing the Litigation with prejudice, on the merits and without taxation of costs in favor of or against any party.

3.    All Plaintiff Class Members and Derivative Plaintiffs are hereby conclusively deemed to have released (a) Ceridian Corporation, formerly known as Control Data Corporation, a Delaware corporation, and all and each of its predecessors, successors, subsidiaries, parents, affiliates and related corporations and entities, and all and each of its and their present, former and future officers, directors, shareholders (other than members of the Plaintiff Class), employees, agents, attorneys, representatives, assigns, partners, principals and insurers; (b) William C. Norris, Robert M. Price, Marvin G. Rogers and Norbert R. Berg, all and each of them, and all and each of their respective assigns, successors, agents, representatives, heirs, executors, administrators and insurers; and (c) KPMG Peat Marwick, formerly known as Peat Marwick Main & Co., a partnership, and all and each of its partners, officers, directors, predecessors, successors, subsidiaries, parents, affiliates and related entities, with respect to any and all claims, known or unknown, suspected or unsuspected, fixed or contingent, and whether or not concealed or hidden (as defined in Paragraphs VIII(B) and X of the First Stipulation and Paragraphs VII(B) and IX of the Second Stipulation), which exist or may in the future exist against any of the Defendants by reason of any matter, event, cause or thing whatsoever arising out of, relating to or in any way connected with (a) the ownership, purchase, sale

or other acquisition or disposition during the Class Period of any CDC securities by a Plaintiff Class Member; (b) the status of a Plaintiff Class Member or Derivative Plaintiff as a shareholder of CDC during the Class Period; and (c) any of the facts, circumstances, transactions, events, occurrences, acts, omissions or failures to act that are or could have been alleged or referred to in the Litigation.  This release is intended to be a "Pierringer" release that allows the released parties to enter into this final settlement with the knowledge and peace of mind that the amount hereby paid to the Settlement Fund is the total amount which the released parties will ever pay, either to the Settlement Fund (on behalf of Plaintiffs and the Class, as stipulated), or to any other person including, without limitation, as contribution or indemnification with respect to the Settled Claims, and enables the released parties to seek and obtain final dismissal as any kind of party defendant (including third-party defendants, defendant in cross-claim or defendant in any action for contribution or indemnification), with respect to any settled claim.

4.   All Plaintiff Class Members and Derivative Plaintiffs are hereby permanently enjoined and barred from instituting, asserting or prosecuting, either directly, representatively, derivatively or in any other capacity, any and all claims which the Plaintiff Class Members or Derivative Plaintiffs, or any of them, had, have or may in the future have against the Defendants, or any of them, arising out of, based upon or otherwise related to the Settled Claims.

5.    Counsel for Representative Plaintiffs are hereby awarded a fee from the Class Settlement Fund created by the Settlements in this matter equal to $2,957,267.00 (36.96%) percent of the gross settlement funds, including interest, to be distributed to Plaintiff Class Members.  Additionally, counsel for the Representative Plaintiffs are hereby awarded expert fees, costs and expenses in the amount of $1,042,733.00.  These amounts are to be paid to the Chestnut & Brooks, P.A. Trust Account for further distribution as Plaintiffs' Lead Counsel may determine.

The listed Plaintiff Class Representatives John Page, Bill Randall, William Steiner and A. David Weisgal are hereby awarded from the Class Settlement Fund the sum of $5,000.00 each as incentive compensation.

Expenses of administering these Settlements shall be paid from the Class Settlement Fund.  A reserve to handle future contingencies shall be established in the amount of $50,000.00.

6.    The Court hereby retains and reserves jurisdiction over (a) implementation of the Settlements and any distributions to Authorized Claimants under the terms and conditions of the Stipulations and pursuant to further orders of this Court; (b) disposition of the Class Settlement Fund under the terms and conditions of the Stipulations and notices; (c) the Litigation, until (i) the Effective Date contemplated by Paragraph I(11) of the First Stipulation and Paragraph I(H) of the Second Stipulation, which will occur on the date upon which this judgment becomes not subject to further appeal or review, and (ii) each and every act agreed to be performed by the Parties shall have been performed pursuant to the terms and conditions of

the Stipulations, including the exhibits annexed thereto; (d) the Litigation, for the purposes of implementing distribution to shareholders in accordance with the notice; and (e) all Parties, for the purpose of enforcing and administering the Stipulations and Settlements.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 4th, 1994

_____
The Honorable James M. Rosenbaum
United States District Judge